BP/TPW: USAO 2016R00037

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2017 SEP 11 P 2:45

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * CRIMINAL NO. PX17cr472 |
| | * |
| DAWN J. BENNETT, | * (Bank Fraud, 18 U.S.C. § 1344; False |
| | * Statements on Loan Application, 18 |
| Defendant | * U.S.C. § 1014; Aiding and Abetting, 18 |
| | * U.S.C. § 2; Forfeiture, 18 U.S.C. §§ 981 |
| | * and 982, 21 U.S.C. § 853, and 28 U.S.C. |
| | * § 2461) |
| | * |
| | * |

*******

## INDICTMENT

### COUNT ONE
### (Bank Fraud)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Indictment:

### Introduction

1.      Defendant **DAWN J. BENNETT** ("**BENNETT**") was a resident of Maryland.

**BENNETT** was the Chief Executive Officer of DJB Holdings, LLC, doing business as

DJBennett.com.

2.      DJBennett.com was an internet retail business that sold sports apparel.

DJBennett.com's offices were located in Washington, D.C.

3.      DJBennett.com was owned by a holding company called DJB Holdings, LLC.

**BENNETT** was the 100% owner of DJB Holdings, LLC.

4.      Employee #1 was the Chief Financial Officer of DJBennett.com.

5.      Eagle Bancorp, Inc. ("EagleBank") was a financial institution within the meaning

of Title 18, United States Code, Section 20, and had its deposits insured by the Federal Deposit Insurance Corporation ("FDIC").  EagleBank had locations in Maryland, Virginia, and Washingon, D.C., including in Bethesda, Maryland.

6. **BENNETT** had sole signatory authority for at least the following bank accounts:

   a. United Bank account ending in 2054 in **BENNETT's** name ("United 2054 Account");

   b. EagleBank account ending in 2656 in the name of DJB Holdings, LLC ("EagleBank 2656 Account"); and

   c. First Republic Bank account ending in 2861 in the name of DJB Holdings, LLC ("FRB 2861 Account").

7. Between at least in or about December 2014 and in or about July 2017, **BENNETT** and others known and unknown to the Grand Jury recruited individuals to invest in DJBennett.com.  **BENNETT** made numerous misrepresentations to these individuals in order to entice them to invest in her business, and promised them high rates of return, typically around 15% per annum.

8. Between at least in or about November 2014 and in or about March 2017, **BENNETT** and Employee #1 attempted to obtain loans on behalf of DJB Holdings, LLC and DJBennett.com.

9. In or about May 2015, EagleBank extended a $750,000 line of credit to borrower DJB Holdings, LLC, with **BENNETT** as guarantor, with a loan date of May 19, 2015, and a maturity date of May 19, 2016.  According to the Business Loan Agreement, dated May 19, 2015, and signed by **BENNETT**, DJB Holdings agreed to "[u]se all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in

writing." According to a Disbursement Request and Authorization, also dated May 19, 2015, and also signed by **BENNETT**, the primary purpose of the loan was "business (including real estate investment)." The specific purpose of the loan was "short term working capital."

## The Scheme to Defraud

10. Between at least in or about November 2014 and in or about July 2017, in the District of Maryland and elsewhere, the defendant,

**DAWN J. BENNETT,**

and others known and unknown to the Grand Jury, knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud EagleBank and to obtain money, funds, and credits under the custody and control of EagleBank by means of materially false and fraudulent pretenses, representations, and promises ("the scheme to defraud").

## Manner and Means

11. It was part of the scheme to defraud that **BENNETT** and Employee #1 obtained and attempted to obtain loans from financial institutions in order to repay DJBennett.com investors and lenders.

12. It was further part of the scheme to defraud that **BENNETT** and Employee #1 applied for and obtained a $750,000 line of credit from EagleBank on behalf of DJB Holdings, LLC.

13. It was further part of the scheme to defraud that **BENNETT** and Employee #1 made materially false and fraudulent representations to EagleBank in support of this loan. The materially false statements, included, among other things, that **BENNETT** had a brokerage account with a net portfolio value of over $4 million. In fact, **BENNETT**'s brokerage account had a net portfolio value of approximately $35.

3

14.     It was further part of the scheme to defraud that **BENNETT** obtained money and property that was under the custody and control of EagleBank, including $250,000 on or around May 20, 2015 and $500,000 on or around May 27, 2015.

15.     It was further part of the scheme to defraud that, after the loan was approved, **BENNETT** and Employee #1 deposited or caused to be deposited the loan proceeds into the EagleBank 2656 Account, which was controlled by **BENNETT**. **BENNETT** and Employee #1 then transferred or caused to be transferred significant portions of the loan proceeds into the FRB 2861 Account and the United 2054 Account.

16.     It was further part of the scheme to defraud that, after the loan proceeds were transferred into the FRB 2861 Account and the United 2054 Account, **BENNETT** used the money to repay **BENNETT**'s investors and to pay **BENNETT**'s personal expenses.

17.     It was further part of the scheme to defraud that, after EagleBank declared the loan in default, **BENNETT** made further false representations to EagleBank as to why the loan had not been repaid, including that **BENNETT** had been overseas in China, when in fact she had not been in China.

## **The Charge**

18.     On or about May 19, 2015, in the District of Maryland and elsewhere, the defendant,

### **DAWN J. BENNETT,**

did knowingly and willfully execute and attempt to execute, and aid and abet the execution of, the scheme to defraud EagleBank by using false documentation to obtain a loan for DJB Holdings, LLC.

18 U.S.C. § 1344
18 U.S.C. § 2

## COUNT TWO
### (False Statements on a Loan Application)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 17 of Count One are incorporated here.

2. On or about April 27, 2015, in the District of Maryland and elsewhere, the defendant,

**DAWN J. BENNETT,**

knowingly made and caused to be made, and aided and abetted the making of, false statements for the purpose of influencing in any way the actions of EagleBank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, that is, **BENNETT** made and caused to be made, and aided and abetted the making of, materially false statements regarding her assets in an email submitted to EagleBank for the purpose of securing a loan.

18 U.S.C. § 1014
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981 and 982 and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on Counts One through Two of this Indictment.

### Bank Fraud Forfeiture

2. As a result of the offense set forth in Count One, the defendant,

**DAWN J. BENNETT,**

shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A), any property, constituting, or derived from, proceeds traceable to or obtained, directly or indirectly, as the result of such violations.

3. The property to be forfeited includes, but is not limited to, at least $750,000 in United States currency and all interest and proceeds traceable thereto, in that such sum, in aggregate, constitutes proceeds obtained, directly or indirectly, as a result of such violation.

### False Statements Forfeiture

4. As a result of the offense set forth in Count Two, the defendant,

**DAWN J. BENNETT,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c), any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from the offense.

5.      The property to be forfeited includes, but is not limited to, at least $750,000 in United States currency and all interest and proceeds traceable thereto, in that such sum, in aggregate, constitutes proceeds obtained, directly or indirectly, as a result of such violation.

### Substitute Assets

6.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third person;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or,

      e.   has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property, pursuant to 21 U.S.C. § 853(p), up to the value of the forfeitable property, that is, at least $750,000.

18 U.S.C. § 981
18 U.S.C. § 982
21 U.S.C. § 853
28 U.S.C. § 2461(c)

_Stephen M. Schenning_ /EBP
Stephen M. Schenning
Acting United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date:   September 11, 2017