**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **Criminal No. PX-17-0472** |
| **DAWN J. BENNETT** | * | |

\* \* \* \* \* \* \* \* \* \* \*

## MOTION TO DISMISS WIRE FRAUD CHARGE
## AND TO STRIKE CRIMINAL COMPLAINT

The defendant, Dawn J. Bennett, by and through her undersigned counsel, respectfully moves this Honorable Court to enter an Order dismissing the charge of wire fraud set forth in the criminal complaint and striking from the record the complaint and supporting affidavit.   In support of this motion, Ms. Bennett states the following.

## PROCEDURAL BACKGROUND

On August 24, 2017, the government obtained a criminal complaint charging Ms. Bennett with three felony offenses: wire fraud (18 U.S.C. § 1343); bank fraud (18 U.S.C. § 1344); and false statements on a bank loan application (18 U.S.C. § 1014).  Dkt. No. 1.  The complaint was signed by U.S. Magistrate Judge Charles B. Day and accompanied by a 36-page sworn affidavit of Special Agent Keith Custer of the FBI.  Dkt. No. 2.

On August 25, 2017, Ms. Bennett was arrested in New Mexico, where she had an initial appearance on the criminal complaint before a federal magistrate judge.   Ms. Bennett was directed to return to Maryland to appear in this District, which she did.  On August 29, 2017, an initial appearance was held before U.S. Magistrate Judge Thomas DiGirolamo.

On September 11, 2017, a federal grand jury returned an indictment.  Dkt. No. 15.  The indictment charged Ms. Bennett with two counts: bank fraud (18 U.S.C. § 1344), and false

statements on a bank loan application (18 U.S.C. § 1014).   Notably, the indictment did not charge Ms. Bennett with wire fraud, which was the lead charge in the preceding complaint.   The government has indicated that it is continuing to investigate Ms. Bennett for wire fraud. However, no indictment charging that offense has been brought to date.

## ARGUMENT

### I.   The Speedy Trial Act Requires Dismissal of the Wire Fraud Charge.

The Speedy Trial Act requires the Court to dismiss a charge brought by criminal complaint if an indictment is not filed within 30 days of the defendant's arrest.   Title 18 U.S.C. § 3161(b) sets forth the 30-day time limit for filing an indictment:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

Section 3162(a)(1) sets forth the remedy of mandatory dismissal for violations of § 3161(b):

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint ***shall be dismissed or otherwise dropped***. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(1) (emphasis added).

Courts have made clear that dismissal is the required remedy for violations of § 3161(b). The Supreme Court has observed that "the statute admits no ambiguity in its requirement that when such a violation has been demonstrated, 'the information or indictment shall be dismissed

on motion of the defendant.'"  *United States v. Taylor*, 487 U.S. 326, 332 (1988) (quoting 18

U.S.C. § 3162(a)(2)).  The Fourth Circuit has similarly emphasized the mandatory nature of the

remedy of dismissal:

> The Speedy Trial Act provides, in relevant part, that "[a]ny information or
> indictment charging an individual with the commission of an offense shall be filed
> within thirty days from the date on which such individual was arrested or served
> with a summons in connection with such offense." 18 U.S.C.A. § 3161(b). If the
> Government fails to comply with this requirement, the "complaint shall be
> dismissed or otherwise dropped." 18 U.S.C.A. § 3162(a)(1). We have interpreted
> this language to provide that the Government must charge a defendant by
> indictment or information within 30 days of his "federal arrest upon a federal
> charge" or face the prospect of dismissal. *United States v. Thomas*, 55 F.3d 144,
> 148 (4th Cir. 1995) (quoting *United States v. Lee*, 818 F.2d 302, 305 (4th Cir.
> 1987)). The Act "is intended to mandate an orderly and expeditious procedure for
> federal criminal prosecutions by fixing specific, mechanical time limits within
> which the various progressions in the prosecution must occur." *United States v.
> Iaquinta*, 674 F.2d 260, 264 (4th Cir. 1982).

*United States v. Woolfolk*, 399 F.3d 590, 594 (4th Cir. 2005)

In this case, the government has plainly failed to meet the 30-day time limit for charging

Ms. Bennett by indictment with the offense of wire fraud.  The criminal complaint charging her

with wire fraud was issued on August 24.  The 30-day clock started running the following day,

August 25, when Ms. Bennett "was arrested … in connection with such offense."  18 U.S.C. §

3161(b).  Because the government failed to obtain an indictment charging Ms. Bennett with wire

fraud within 30 days thereafter (i.e., by September 25, 2017), the Court must dismiss that charge.

**II.     The Court Should Dismiss the Wire Fraud Charge with Prejudice.**

The charges against Ms. Bennett are the product of a nearly two-year-old criminal

investigation by the FBI, piggybacking on an earlier-initiated Securities and Exchange

Commission (SEC) investigation.  *See* Dkt. No. 2 (Affidavit of SA Custer), at ¶ 4.  The

government has now pored over Ms. Bennett's business and personal finances.  They have

reviewed the contents of her email correspondence on multiple occasions, pursuant to search

warrants.  *Id.* at ¶¶ 17, 23.  They have physically searched her offices and her residence, pursuant to search warrants.  They have seized and searched her cell phone and computers.  They have interviewed numerous employees and business associates, as well as personal friends and family members.  They have convened a grand jury, issued subpoenas, and taken testimony from many of these same people.  The government has had ample time, tools, and resources at its disposal to thoroughly investigate Ms. Bennett and to charge her accordingly.

The government should not be permitted to continue indefinitely down this path.  A continuing criminal investigation has real consequences – physical, emotional, financial, and otherwise – for the human being who is under the lens.  If the government has not, by now, been able to charge Ms. Bennett by indictment, the count of wire fraud in the complaint should be dismissed with prejudice.

Courts have recognized that "the decision to dismiss with or without prejudice [is] left to the guided discretion of the district court," and "neither remedy [is] given priority."  *United States v. Taylor*, 487 U.S. 326, 335 (1988).  In deciding "whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice."  18 U.S.C. § 3162(a)(1).  "In addition, although not specifically enumerated among the four factors in section 3162(a)(1), the legislative history of the Speedy Trial Act leaves 'little doubt' that 'the presence or absence of prejudice to the defendant' is a 'relevant [factor] for a district court's consideration.'"  *United States v. Scott*, 743 F. Supp. 400, 404 (D. Md. 1990) (quoting *Taylor*, 487 U.S. at 334).  "The government 'bears the initial burden

of explaining why the [speedy trial] violation occurred.'" *Id.* (quoting *United States v. May*, 819 F.2d 531, 533 (5th Cir. 1987)).

Here, the enumerated factors weigh in favor of dismissal with prejudice. With respect to the first factor, the seriousness of the offense, wire fraud – like any federal felony – is a serious offense. However, after a lengthy and fulsome investigation, the government has failed to establish probable cause to charge that offense here. The criminal complaint references financial "activity consistent with a Ponzi scheme and misappropriation of investor funds" (Dkt. No. 2, at ¶ 8), but it stops short of identifying any fraudulent misrepresentations or other misconduct that would actually establish a factual basis for charging Ms. Bennett with operating a Ponzi scheme. And the grand jury, for its part, failed to return an indictment that includes such a charge. Accordingly, this factor should be given minimal weight.

The second factor, the facts and circumstances leading to dismissal, favors dismissal with prejudice. Dismissal is warranted here exclusively because of conduct attributable to the government. The government elected to proceed by complaint – instead of seeking an indictment – notwithstanding that it had empaneled a grand jury to investigate Ms. Bennett long before charges were filed. This is not a situation in which a complaint was the only available option to bring charges in a timely fashion; on the contrary, a grand jury was at the government's disposal. The government knew (or surely should have known) when it chose to file the complaint that it would have only 30 days to follow up with an indictment. Its failure to do so is grounds for dismissal with prejudice.

The third factor, the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice, also weighs in favor of dismissal with prejudice. To allow the government to charge Ms. Bennett anew with wire fraud would render the dismissal

remedy meaningless and "frustrate the very purpose of the Speedy Trial Act and the administration of justice." *United States v. Harden*, 10 F. Supp. 2d 556, 561 (D.S.C. 1997), *aff'd*, 155 F.3d 562 (4th Cir. 1998).  As one court has explained:

> The Act was designed to implement and enforce the Sixth Amendment right to a speedy trial. To accomplish that purpose, the Act establishes specific, mechanical time limits within which the various stages of a prosecution must occur. The Act is therefore more stringent than the Sixth Amendment which permits a more flexible approach based largely on the prejudice sustained by a defendant because of delays in prosecution.

*Id.* (citing *United States v. Iaquinta*, 674 F.2d 260, 264 (4th Cir. 1982)).  Here, the remedy of dismissal with prejudice for the government's failure to comply with statutory time limits is consistent with the purpose of the Speedy Trial Act.

The final factor, prejudice to the defendant, also favors dismissal with prejudice.  Ms. Bennett's entire life has been upended by this proceeding.  Her personal and professional life are in shambles.  While she is not currently detained pending trial, she is under the most stringent set of release conditions conceivable.  At age 55, she has had to return to living with her parents.  She is forbidden from leaving her parents' residence except for legal or medical purposes.  She is prohibited from talking to dozens of personal and professional associates, including some of her closest friends and family members who she has known for decades.  She is prohibited from going into her office, which makes it impossible to effectively operate or adequately supervise her business.  She is barred from engaging in financial transactions or opening lines of credit.  Her phone calls and text messages are subject to inspection by her Pretrial Services officer.  For a 55-year-old businesswoman who is accustomed to being independent, these restrictions are punishing.  Every aspect of the life that she built for herself has been removed from her reach.

This is precisely the type of harm that speedy trial protections are intended to mitigate.  The Supreme Court has explained:

Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

*United States v. Marion*, 404 U.S. 307, 320 (1971).  This is exactly what Ms. Bennett is experiencing here.

In sum, these factors favor dismissing the wire fraud charge with prejudice.

## III.    The Complaint and Supporting Affidavit Should Be Stricken from the Record.

In addition to dismissing the wire fraud charge, the Court should strike the criminal complaint and Agent Custer's supporting affidavit from the public record.  As noted above, the government made the unusual choice to charge Ms. Bennett initially by complaint in this case, notwithstanding that a grand jury was empaneled and that Ms. Bennett had been under investigation since at least December 2015.  The decision to proceed by complaint appears to have been calculated, at least in part, to provide a vehicle to publicly air allegations that extend far beyond the scope of the criminal conduct charged in the indictment.

More than half of the 36-page complaint affidavit consists of allegations alluding to a wire fraud scheme; however, essential factual elements, including fraudulent misrepresentations to investors, are conspicuously lacking.  Another section of the complaint – under the thinnest guise of alleging "consciousness of guilt" – throws in all manner of irrelevant material, including color photographs of the contents of Ms. Bennett's closets and freezers, and allegations that Ms. Bennett practices "hoodoo."

Federal Rule of Criminal Procedure 3 provides that "[t]he complaint is a written statement of ***the essential facts*** constituting the offense charged."  Fed. R. Crim. P. 3 (emphasis

added).  The far-flung and extraneous allegations stuffed into Agent Custer's 36-page affidavit cannot plausibly be characterized as "essential" to the offenses charged.

The rule on indictments similarly provides: "The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged…."  Fed. R. Crim. P. 7(c)(1).  Rule 7 also expressly provides that they court may strike "surplusage" from the indictment upon the defendant's motion.  Fed. R. Crim. P. 7(d).   "The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment, or not essential to the charge, or unnecessary, or inflammatory."   *United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979) (citations omitted).

The point is that the charging document is not to be used as a vehicle to publicize allegations that are salacious, damaging, and irrelevant to any of the charged conduct.  However, that is precisely what has happened here.  The government has placed color photos of Ms. Bennett's personal possessions on public display for the apparent purpose of shaming her.  They have referenced a supposed interest in "hoodoo" for the apparent purpose of tarring her credibility.  Those allegations are irrelevant and inappropriate, and they should be stricken from the public record.

**CONCLUSION**

For the foregoing reasons, we respectfully request that the Court dismiss the charge of wire fraud in the complaint and strike the complaint and supporting affidavit (Dkt. Nos. 1 & 2) from the record.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

            /s/
ELIZABETH G. OYER #95458
DEBORAH L. BOARDMAN #28655
Assistant Federal Public Defenders
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland  21201
Phone: (410) 962-3962
Fax: (410) 962-0872
Email: Liz_Oyer@fd.org
        Deborah_Boardman@fd.org