# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | Crim. No. PX-17-0472 |
| **DAWN J. BENNETT** | * | |

\* \* \* \* \* \* \* \* \* \* \*

## MOTION TO AMEND NO-CONTACT ORDER

The defendant, Dawn J. Bennett, by and through her undersigned counsel, respectfully moves this Honorable Court to amend the no-contact order first adopted by the District Court in New Mexico. In support of this motion, Ms. Bennett states the following.

## BACKGROUND

At a hearing on November 9, 2017, this Court found Ms. Bennett in violation of her release conditions; specifically, the condition that prohibits her from having any contact with 40 individuals that the government alleges are victims and/or potential witnesses in this case. The Court found that Ms. Bennett violated her release conditions by having email communications with individuals on the no-contact list. The Court also found that Ms. Bennett violated the same condition previously, by having telephone contact with individuals on the no-contact list. As a result of her second violation of that restriction, the Court revoked her release and ordered her detained pending trial.

However, the Court left open the possibility of reconsideration of that order, if the defense can demonstrate that the no-contact order was improperly adopted and/or propose a modified set of release conditions. The defense has separately filed a motion to release Ms. Bennett from custody on a revised set of release conditions. The instant motion requests that the

1

Court review and amend the no-contact order, to prohibit only case-related contact with the referenced individuals.

Amendment of the no-contact order is appropriate for the following reasons. First, this Court has the authority to review and amend the no-contact provision originally adopted by the magistrate judge in New Mexico and incorporated by reference here. Second, no factual showing has ever been made that the sweeping no-contact order in this case is the "least restrictive condition" necessary to accomplish the purposes of the Bail Reform Act. Third, the sweeping no-contact order, which cuts off all communication between Ms. Bennett and 40 individuals, including longtime friends and business associates, is overbroad and unconstitutionally infringes the First Amendment rights of Ms. Bennett and others. Fourth, Ms. Bennett lacked a meaningful opportunity to challenge the no-contact order in New Mexico, nor has such a challenge been previously entertained by this Court. Fifth, a restriction on case-related contact between Ms. Bennett and potential witnesses is sufficient to accomplish the government's legitimate objectives while preserving Ms. Bennett's legal and constitutional rights. We submit that none of Ms. Bennett's conduct to date would violate this more carefully tailored and appropriate restriction.

**ARGUMENT**

I. **The No-Contact Order Adopted by the Magistrate Judge in New Mexico Is Subject to Review by This Court.**

As this Court is well aware, release pending trial is governed by the Bail Reform Act of 1984, which "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required" and the safety of the community. *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985); 18 U.S.C. § 3142(c)(1)(B). "The Fifth and Eighth Amendments' prohibitions of

deprivation of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected." *Motamedi*, 767 F.2d at 1405.

Release conditions set by a magistrate judge are subject to review by the district court, upon the request of the defendant. The pertinent section of the Bail Reform Act states:

> Review of a Release Order.—If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court—
>
> * * * *
>
> the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release.
>
> The motion shall be determined promptly.

18 U.S.C. § 3145(a)(2); *see also United States v. Spilotro*, 786 F.2d 808, 813-15 (8th Cir. 1986) (affirming broad authority of trial court to amend release conditions set by another court).

The no-contact condition imposed by the magistrate judge in New Mexico has not yet been substantively reviewed by this Court. That provision was simply incorporated by reference into the release conditions set by this Court, without real discussion or objection by the parties. Ms. Bennett is now requesting that the Court examine the necessity of such a broad restriction under the Bail Reform Act and the propriety of such a restriction under the U.S. Constitution. *Cf. United States v. Simon*, 760 F. Supp. 495, 496 (D. V.I. 1990) (reversing magistrate judge's order of detention based on risk of witness tampering, and noting that "in light of the highest priority accorded in this society to freedom from government restraints prior to trial and conviction of a crime, it is vital that the government's authority to place individuals in pretrial detention be strictly construed and meticulously applied").

## II. The Broad No-Contact Order Is Unlawful Under the Bail Reform Act.

A sweeping prohibition on all contact between Ms. Bennett and the 40 individuals on the no-contact list is unlawful under the Bail Reform Act, because is not the "least restrictive condition" that would accomplish the Act's legitimate objectives. The Bail Reform Act authorizes restrictions on contact with victims and witnesses (§ 3142(c)(1)(B)(v)), but only if that condition is "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).

Even courts that have upheld restrictions on contact with potential witnesses or victims have emphasized this limitation: "The Bail Reform Act empowers trial courts to restrict a defendant's contact with potential witnesses *if the condition is the "least restrictive" avenue* for avoiding witness tampering." *United States v. Vasilakos*, 508 F.3d 401, 411 (6th Cir. 2007) (emphasis added). In *Vasilakos*, the Court affirmed a restriction that prevented the defendants from personally interviewing the government's witnesses about their anticipated trial testimony, where there was no evidence that their counsel's preparation was inhibited by the restriction. *See id.* at 410-11.

Here, there is no factual basis for the Court to make the finding required by the Bail Reform Act: that a restriction on all contact with the 40 named individuals is the least restrictive avenue for avoiding witness tampering. There are two basic problems. First, the government has provided no factual support for the scope of the list – i.e., the 40 names included. We submit that the government should have to individually justify the inclusion of each name on the list. Second, the government has shown no necessity for a restriction on non-case-related conduct with the named individuals.

With respect to the scope of the list, no showing has been made that would enable the Court to make the required finding. The government has offered no individualized justification for including each of these 40 names on the no-contact list. Rather, they have asserted generally that all 40 individuals are noteholders and/or potential witnesses, and therefore contact with Ms. Bennett should be categorically prohibited. The court in New Mexico adopted the government's list wholesale, without requiring any individualized showing of necessity. This one-size-fits-all approach is not what the Bail Reform Act demands, to support such a sweeping restriction.

This is especially true here, where the list in question includes friends, family, and business associates whose relationships with Ms. Bennett run far deeper and longer than the scope of this criminal case. To take just one example, Jeff Lazurri testified before this Court on November 13. Mr. Lazurri testified that he has known Ms. Bennett for decades. He testified that they have a longstanding business relationship as well as a close personal friendship. He testified that they communicated frequently prior to the imposition of the no-contact order about business as well as personal topics. Mr. Lazurri also testified that he does not wish to be on the no-contact list and that he wishes to be able to continue to communicate with Ms. Bennett, particularly about business matters.

With respect to the broad prohibition on all contact, there is similarly no factual basis for the Court to make the finding required by the Bail Reform Act. This is not a case, like *Vasiliakos*, in which Ms. Bennett is seeking to interview potential witnesses about their testimony. She is not seeking to have any case-related contact with the named individuals. Rather, she simply wishes to be able to continue routine business-related and personal communications with individuals including longtime friends, family, and business associates. Such contact is essential to the continued operation of her business, as well as to her mental and

emotional well-being. As it stands, she is completely cut off from many of her closest and most trusted personal friends, on whom she relies for support during difficult times such as this.

A restriction on case-related contact with potential witnesses and victims would suffice to accomplish the objective of "avoiding witness tampering." There is no basis in fact, however, to prohibit Ms. Bennett from having *any* contact with any of the 40 individuals on the government's list. No finding has been or can be made that such a sweeping prohibition is the "least restrictive" condition that will accomplish the objectives of the Bail Reform Act.

### III. The No-Contact Order Is an Unconstitutional Restraint on the First Amendment Rights of Ms. Bennett and Others.

The broad no-contact order adopted in New Mexico is unlawful for the separate reason that it unconstitutionally restricts the speech and associational rights of Ms. Bennett and others. Although the Bail Reform Act authorizes restrictions on association, such restrictions are subject to First Amendment scrutiny. *See, e.g.*, *United States v. Belair*, 2017 WL 4758964, at *2 (D. Kan. Oct. 20, 2017) (recognizing "the need to balance associational rights with other equally compelling interests" under the Act). Thus, in *Belair*, the court determined that a restriction that allowed the moving defendant to have telephone contact with a codefendant – but not in-person contact – appropriately balanced the defendants' First Amendment rights with the government's interests in maintaining the integrity of the judicial process.

Numerous courts have recognized the need for this type of balancing in fashioning release conditions under the Bail Reform Act. Thus, "'incidental limitations on First Amendment freedoms' can be sustained only if justified by 'a sufficiently important governmental interest' which is 'unrelated' to the affected first amendment freedom and 'no greater than is essential to the furtherance of that interest.'" *United States v. Spilotro*, 786 F.2d 808, 816 (8th Cir. 1986) (quoting *United States v. O'Brien*, 391 U.S. 367, 376-77 (1968)). In

*Spilotro*, the court of appeals remanded for reconsideration an order declining to modify a restriction on association with felons, noting that the magistrate judge "did not state any reasons why the association condition was necessary to reasonably assure appellant's appearance as required." *Id.* The court noted that while the government had a compelling interest in effective management of the criminal justice system, "any condition restricting association should be limited to only that necessary to assure the individual defendant's appearance when required in the district court." *Id.* at 817.

In *United States v. Arzberger*, 592 F.Supp.2d 590 (S.D.N.Y. 2008), the court found facially unconstitutional a provision of the Adam Walsh Amendments to the Bail Reform Act requiring a prohibition on contact with potential witnesses in cases involving minor victims. The court observed that "an order forbidding [the defendant] from having contact with any witness[] implicates the First Amendment right of association." *Id.* at 603. Emphasizing the importance of that right, the court noted that "one of the foundations of our society is the right of individuals to combine with other persons in pursuit of a common goal by lawful means." *Id.* (quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 933 (1982)). In light of the substantial protectable liberty interest at stake, and the likelihood of erroneously depriving the defendant of that interest "in the absence of an individualized determination of the need for a no-contact order," the court denied the government's request to impose such a restriction. *See id.* at 603-04.

In this case, a blanket prohibition of any contact between Ms. Bennett and the 40 individuals on the government's list unconstitutionally interferes with her fundamental associational rights. In adopting the no-contact order, the court in New Mexico did not conduct the required First Amendment balancing analysis. As a result, it adopted a restriction that is highly intrusive and far broader than necessary to accomplish the intended objective of

7

maintaining the integrity of the criminal justice system. As noted earlier, the no-contact list includes close personal friends, relatives, and associates of Ms. Bennett. She has longstanding relationships with many of these individuals that substantially precede the timeframe of the indictment. The no-contact order cuts her off completely from her network of support and friendship in personal matters. It also deprives her of professional associations that are vital to the operation of her business. These are consequences that far exceed the legitimate objectives of the Bail Reform Act and that are intolerable under the First Amendment.

We respectfully submit that a more carefully tailored restriction on <u>case-related</u> contact between Ms. Bennett and potential witnesses would have been sufficient to accomplish the government's legitimate objectives while preserving Ms. Bennett's legal and constitutional rights.

**IV. Ms. Bennett Lacked Meaningful Access to Counsel in Connection with the Adoption of the No-Contact Order.**

The no-contact order is invalid for the additional reason that Ms. Bennett lacked meaningful access to counsel during the proceeding in which it was adopted. "The right to counsel is, without question, a fundamental right of criminal defendants." *Perry v. Leeke*, 832 F.2d 837, 839 (4th Cir. 1987) (en banc). The right to counsel applies at any detention hearing under the Bail Reform Act. *See* 18 U.S.C. § 3142(f); *U.S. v. Salerno*, 481 U.S. 739, 751 (1987). An essential aspect of the right to counsel is the opportunity to confer privately with counsel before and during the proceedings. "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." *Geders v. United States*, 425 U.S. 80, 88–89 (1976) (quoting Powell v. Alabama, 287 U.S. 45, 68-69 (1932)). Courts including the Fourth Circuit have recognized that a "barrier to consultation might thus amount to a fundamental denial of the right to counsel." *Perry*, 832 F.2d at 840.

Ms. Bennett's counsel was not present in person when the court in New Mexico adopted the no-contact order. As the court docket reflects, Ms. Bennett engaged counsel only after her initial appearance and before her detention hearing in that District. *See* Exhibit A (hearing minutes). She had no opportunity to consult privately with her counsel before or during the hearing. She was therefore unable to assist counsel in developing the relevant facts and appropriate objections to the no-contact order. Because this essential aspect of meaningful representation by counsel was lacking, the no-contact order was not validly adopted.

### V.  Had the Court Appropriately Restricted Only Case-Related Conduct, the Prior Violations Could Have Been Avoided.

Ms. Bennett has now twice been found in violation of the no-contact order; first, based on telephone contacts with prohibited individuals, and again, based on email communications with prohibited individuals. No finding was made, however, that any of these communications related to the criminal charges against Ms. Bennett. Indeed, the email communications put before the Court related to business matters of Ms. Bennett's retail sportswear business, DJBennett.

Had the no-contact order been validly implemented in the first instance, we respectfully submit that it would have restricted only case-related contact with the prohibited individuals. And had that more narrowly tailored restriction been in place, none of Ms. Bennett's conduct to date would have run afoul of her release conditions.

We acknowledge that Ms. Bennett exercised poor judgment in having these communications, rather than appealing to the Court to amend the no-contact order. Her poor decision-making was exacerbated by a lack of continuity in counsel. We are not asking the Court to excuse her failure to proceed appropriately, but we are asking the Court to examine the validity of the order that she violated.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court amend the no-contact order, as adopted by the magistrate judge in New Mexico, to restrict only case-related contact between Ms. Bennett and potential witnesses in this matter.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

/s/
ELIZABETH G. OYER #95458
DEBORAH L. BOARDMAN #28655
Assistant Federal Public Defenders
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland  21201
Phone: (410) 962-3962
Fax: (410) 962-0872
Email: Liz_Oyer@fd.org
Deborah_Boardman@fd.org