**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **Criminal No. PX-17-0472** |
| **DAWN J. BENNETT** | * | |

\* * * * * * * * * * *

**SUPPLEMENTAL MOTION TO DISMISS WIRE FRAUD AND**
**WIRE FRAUD CONSPIRACY CHARGES AND TO STRIKE CRIMINAL COMPLAINT**

The defendant, Dawn J. Bennett, by and through her undersigned counsel, respectfully renews and supplements her previously filed Motion to Dismiss Wire Fraud Charge and to Strike Criminal Complaint (Dkt. No. 78). Ms. Bennett moves this Honorable Court to dismiss all wire fraud charges in the Superseding Indictment (Dkt. No. 110) – specifically, Counts Six through Fifteen – for the reasons set forth in Dkt. No. 78 as well as the additional reasons set forth herein. In addition, Ms. Bennett herein renews her request that the Court strike the Complaint (Dkt. No. 1) and Affidavit in Support of Criminal Complaint (Dkt. No. 2) from the record, for the reasons set forth in Dkt. No. 78 and herein.

**PROCEDURAL BACKGROUND**

On August 24, 2017, the government obtained a criminal complaint charging Ms. Bennett with three felony offenses: wire fraud (18 U.S.C. § 1343); bank fraud (18 U.S.C. § 1344); and false statements on a bank loan application (18 U.S.C. § 1014). Dkt. No. 1. The complaint was signed by U.S. Magistrate Judge Charles B. Day and accompanied by a 36-page sworn affidavit of Special Agent Keith Custer of the FBI. Dkt. No. 2.

1

On September 11, 2017, a federal grand jury returned an indictment. Dkt. No. 15. The indictment charged Ms. Bennett with only two counts: bank fraud (18 U.S.C. § 1344), and false statements on a bank loan application (18 U.S.C. § 1014). The indictment did not charge Ms. Bennett with wire fraud, which was the lead charge in the preceding Complaint.

On November 1, 2017, Ms. Bennett moved the Court to dismiss the wire fraud charge as time-barred under the Speedy Trial Act, and to strike the affidavit of Agent Custer from the record as irrelevant and unfairly prejudicial. Dkt. No. 78. The government sought an extension of time to respond to Ms. Bennett's motion, pending the return of a superseding indictment by a grand jury. The Court granted the government's motion over Ms. Bennett's objection, and indicated that that Ms. Bennett could supplement her motion following the return of the anticipated superseding indictment. Dkt. No. 101.

On November 29, 2017, a federal grand jury returned a superseding indictment. Dkt. No. 110. The superseding indictment contained the charges of bank fraud and false statements on a bank loan application, and added the following charges: conspiracy to commit securities fraud (18 U.S.C. § 371), four substantive counts of securities fraud (15 U.S.C. §§ 78j(b) and 78ff(a), 17 C.F.R. § 240.10b-5), conspiracy to commit wire fraud (18 U.S.C. § 1349), and nine substantive counts of wire fraud (18 U.S.C. § 1343).

## ARGUMENT

**I.      The Speedy Trial Act Requires Dismissal of the Wire Fraud and Wire Fraud Conspiracy Charges.**

Under the Speedy Trial Act, all charges related to wire fraud (Counts Six through Fifteen) are time barred and must be dismissed. The Speedy Trial Act requires the Court to dismiss a charge brought by criminal complaint if an indictment is not filed within 30 days of the

2

defendant's arrest. Title 18 U.S.C. § 3161(b) sets forth the 30-day time limit for filing an indictment:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

If an individual is charged by complaint and no indictment or information is filed within 30 days, "such charge against that individual contained in such complaint ***shall be dismissed or otherwise dropped***." 18 U.S.C. § 3162(a)(1) (emphasis added). The clear language of the statute requires dismissal when the government violates the Speedy Trial Act. *United States v. Taylor*, 487 U.S. 326, 332 (1988); *see also United States v. Woolfolk*, 399 F.3d 590, 594 (4th Cir. 2005) ("[T]he Government must charge a defendant by indictment or information within 30 days of his 'federal arrest upon a federal charge' or face the prospect of dismissal.").

### A. The Substantive Wire Fraud Charges Must Be Dismissed Because the Government Did Not Charge Ms. Bennett Within 30 Days of her Arrest.

In this case, the government has plainly failed to meet the 30-day time limit for charging Ms. Bennett by indictment with the offense of wire fraud. The criminal complaint charging her with wire fraud was issued on August 24, 2017. The 30-day clock started running the following day, August 25, when Ms. Bennett "was arrested . . . in connection with such offense." 18 U.S.C. § 3161(b). Thus, to pursue wire fraud charges against Ms. Bennett, the government was required to obtain an indictment charging her with those offenses by September 25, 2017. The government did not obtain the superseding indictment charging her with wire fraud until November 29, 2017, well outside the 30-day window. Thus, the wire fraud charges must be dismissed.

### B. The Wire Fraud Conspiracy Charge Must Be Dismissed As Well.

The wire fraud conspiracy charge also must be dismissed. Ms. Bennett was arrested "in connection with" wire fraud, which encompasses both the substantive wire fraud offense and wire fraud conspiracy, on August 25. *See* 18 U.S.C. § 3161(b) (requiring an indictment charging an individual with the commission of an offense to be filed within 30 days from the date of arrest "***in connection with such charges***") (emphasis added).

The affidavit filed in support of the criminal complaint and arrest warrant makes clear that Ms. Bennett was arrested "in connection with" wire fraud conspiracy, as it contains allegations of a wire fraud conspiracy between Ms. Bennett and "Employee #1." Employee #1 is Bradley Mascho, who has been charged as Ms. Bennett's co-conspirator in the superseding indictment. Specifically, the affidavit describes an agreement between Ms. Bennett and Employee #1 to engage in a wire fraud scheme: "BENNETT and Employee #1 utilized email to communicate with each other in the execution of the scheme." Dkt. No. 2 (Affidavit of SA Custer), at ¶ 21. The affidavit further states that Ms. Bennett and Employee #1 worked together to effect the wire transfers: "Employee #1 was also frequently a party to victim investor communications with and without BENNETT. This can be illustrated in the email below, where Individual #11, communicates with BENNETT and Employee #1 using email, to confirm the wire transfer of his investment." *Id.* at ¶ 22. Thus, the affidavit in support of the complaint and arrest warrant makes clear that Ms. Bennett was arrested "in connection with" both substantive wire fraud and wire fraud conspiracy offenses. Thus, as with the wire fraud charge, the Speedy Trial Act required the government to charge Ms. Bennett with wire fraud conspiracy within 30 days of her arrest. Because the government failed to do so, the conspiracy charge (Count Six) must be dismissed along with the substantive wire fraud charges (Counts Seven through Fifteen).

The wire fraud conspiracy charge must be dismissed for the additional reason that it merely gilds the substantive charge in the original criminal complaint. "A gilded charge is one that merely annotates in more detail the same charge alleged in the initial accusatory instrument." *United States v. Bailey*, 111 F.3d 1229, 1236 (5th Cir. 1997). When a later charge "merely gilds" the initial charge, the date of the initial arrest "trigger[s] the applicable time periods of the Act as to prosecution for both offenses." *Id.* In such circumstances, courts dismiss both the earlier charge and the gilded charge, even if the two charges are violations of different criminal statutes. *See United States v. Peppin*, 365 F. Supp. 2d 261, 268 (N.D.N.Y. 2005) (dismissing with prejudice new charges of marijuana possession and conspiracy to possess and distribute marijuana because the government gilded the indictment to avoid the effect of the dismissal of the original marijuana possession charge under the Speedy Trial Act); *United States v. Bilotta*, 645 F. Supp. 369, 373 (E.D.N.Y. 1986), *aff'd*, 835 F.2d 1430 (2d Cir. 1987) (dismissing charges brought under different statutes pursuant to the Speedy Trial Act because "the superseding indictment is simply a more detailed version of the crimes described in the complaint; it is the completed canvas of the painting first etched in the complaint"). Because the wire fraud conspiracy charge simply elaborates on the wire fraud charge in the original complaint, it must be dismissed.

### C. The Superseding Indictment Does Not Cure the Speedy Trial Act Violations.

The superseding indictment does not save the wire fraud and wire fraud conspiracy charges because a superseding indictment does not affect the speedy trial calculations for offenses charged in the original complaint. *See United States v. Young*, 528 F.3d 1294, 1296 (11th Cir. 2008) ("[T]he filing of a superseding indictment does not reset the speedy-trial clock for offenses charged, or required to be joined with those charged, in the original indictment.");

*United States v. Daychild*, 357 F.3d 1082, 1091 n.10 (9th Cir. 2004) ("The clock's start time in this case is unaffected by the superseding indictments."); *United States v. Berry*, 90 F.3d 148, 151 (6th Cir. 1996) (holding that a subsequent indictment does not restart the 30-day speedy trial clock but rather "tolled [it]"); *United States v. Marshall*, 935 F.2d 1298, 1302 (D.C. Cir. 1991) ("As a general rule, the filing of a superseding indictment does not affect the speedy trial timetable for offenses either charged in the original indictment or required under double jeopardy principles to be joined with such charges."); *United States v. Gonzales*, 897 F.2d 1312, 1316 (5th Cir. 1990) ("The filing of a superseding indictment does not affect the speedy-trial clock for offenses charged in the original indictment."); *United States v. Roman*, 822 F.2d 261, 263–64 (2d Cir. 1987) ("We can see no logical reason to apply a different rule to a superseding indictment simply because it is filed sooner, while the first indictment is still pending."); *United States v. Thomas*, 788 F.2d 1250, 1258 (7th Cir. 1986) ("The superseding indictment does not affect the running of the time on the three charges that were in the original indictment as well as the superseding indictment.").

All of these courts recognize that allowing a superseding indictment to cure time-barred charges would defeat the purposes of the Speedy Trial Act. Indeed, "it would make little sense to restart both the 30–day and 70–day periods whenever there is a superseding indictment." *United States v. Rojas–Contreras*, 474 U.S. 231, 239 (1985) (Blackmun, J., concurring). The superseding indictment does not reset the speedy trial clock here. Accordingly, the wire fraud and wire fraud conspiracy offenses, both charged by indictment more than 30 days after Ms. Bennett's arrest, must be dismissed as time-barred.

## II.  The Court Should Dismiss the Wire Fraud and Wire Fraud Conspiracy Charges with Prejudice.

The government has no reasonable explanation for its delay in bringing wire fraud charges by indictment.  Indeed, the conspicuous omission of those charges from the original indictment – after including them in a sworn criminal complaint – raises questions about the tactics that the government employed here.  As discussed in our original motion, the criminal complaint appears to have been used as a tool to publicly embarrass Ms. Bennett with irrelevant and salacious allegations, and apparently did *not* reflect the charges that the government had probable cause to support at the time the complaint was obtained.  The fact that the wire fraud charges were omitted from the indictment obtained two weeks *after* wire fraud was charged by complaint indicates that the government did not have probable cause to support wire fraud charges at that time.  The decision to prematurely include allegations of wire fraud in the complaint provided a vehicle to tar Ms. Bennett's reputation with material that never should have been part of the public record in this case.  The government should now bear the consequences of its decision to proceed in this highly irregular fashion, in the form of dismissal with prejudice of the wire fraud charges in the superseding indictment.

Courts have recognized that "the decision to dismiss with or without prejudice [is] left to the guided discretion of the district court," and "neither remedy [is] given priority." *United States v. Taylor*, 487 U.S. at 335.  In deciding "whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice."  18 U.S.C. § 3162(a)(1).  "In addition, although not specifically enumerated among the four factors in section 3162(a)(1), the legislative history of the Speedy Trial Act leaves 'little

7

doubt' that 'the presence or absence of prejudice to the defendant' is a 'relevant [factor] for a district court's consideration.'" *United States v. Scott*, 743 F. Supp. 400, 404 (D. Md. 1990) (quoting *Taylor*, 487 U.S. at 334). "The government 'bears the initial burden of explaining why the [speedy trial] violation occurred.'" *Id.* (quoting *United States v. May*, 819 F.2d 531, 533 (5th Cir. 1987)).

Here, the enumerated factors weigh in favor of dismissal with prejudice. Only the first factor, seriousness of the offense, could possibly weigh against such an outcome. Like all federal felonies, wire fraud and wire fraud conspiracy are serious offenses. But the fact that a defendant has been charged with a serious offense is not dispositive to the determination of whether charges should be dismissed with or without prejudice. *See, e.g.*, *Taylor*, 487 U.S. at 338, 344 (noting that seriousness of the offense is but one factor to consider and courts must "consider all the factors relevant to the choice of a remedy under the Act"); *United States v. Harden*, 10 F. Supp. 2d 556, 562 (D.S.C. 1997), *aff'd*, 155 F.3d 562 (4th Cir. 1998) (dismissing the indictment with prejudice even though the offenses charged in the indictment were serious).

The second factor, the facts and circumstances leading to dismissal, supports dismissal with prejudice. Here, the government is solely responsible for the delay. The government chose to proceed by complaint despite the fact that it had already empaneled a grand jury to investigate Ms. Bennett. The government easily could have prevented the dismissal of these charges by waiting to charge Ms. Bennett until the grand jury returned an indictment. Instead, the government obtained the criminal complaint on August 24, 2017, and arrested Ms. Bennett the following day. The government had 30 days after Ms. Bennett's arrest, until September 25, 2017, to charge her by indictment. Yet the government allowed more than three months to pass

before filing the superseding indictment containing the wire fraud and wire fraud conspiracy charges. Such avoidable delay should not be excused.

This delay is especially egregious, given the length of the criminal investigation, which dates back to at least December 2015 according to the sworn affidavit of Agent Custer. Dkt. No. 2, at 2 (¶ 4). Moreover, the investigation piggybacked on earlier-initiated investigations by both the Securities and Exchange Commission (SEC) and the Financial Industry Regulatory Authority (FINRA). *See id.*; Dkt. No. 110, ¶¶ 14, 21(l). The government's two-year delay between commencing the criminal investigation and charging Ms. Bennett by indictment with wire fraud and wire fraud conspiracy suggests a lack of diligence on the government's part.

The third factor, the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice, favors dismissal with prejudice. To allow the government to charge Ms. Bennett anew with wire fraud and wire fraud conspiracy would render the dismissal remedy meaningless and "frustrate the very purpose of the Speedy Trial Act and the administration of justice." *Harden*, 10 F. Supp. 2d at 561. As one court has explained:

> The Act was designed to implement and enforce the Sixth Amendment right to a speedy trial. To accomplish that purpose, the Act establishes specific, mechanical time limits within which the various stages of a prosecution must occur. The Act is therefore more stringent than the Sixth Amendment which permits a more flexible approach based largely on the prejudice sustained by a defendant because of delays in prosecution.

*Id.* (citing *United States v. Iaquinta*, 674 F.2d 260, 264 (4th Cir. 1982)). Here, the remedy of dismissal with prejudice for the government's failure to comply with statutory time limits is consistent with the purpose of the Speedy Trial Act.

The final factor, prejudice to the defendant, also weighs in favor of dismissal with prejudice. Ms. Bennett's entire life has been upended by this proceeding. She has been publicly disgraced. Her personal and professional life are in shambles. She is detained pending trial,

9

which has been an exceptionally difficult adjustment for her. She has lost access to many longtime friends and business associates, as a result of the Court's no-contact order and as a practical reality of her detention. As the Court has heard on several occasions, her business is barely staying afloat in her absence. Ms. Bennett has lost virtually everything that she once had as a result of the criminal charges.

Moreover, Ms. Bennett's detention adds to the difficulty of preparing for trial. As the Court is aware, the government has produced tens of thousands of pages of discovery, with much more still to be produced. Counsel's access to Ms. Bennett, to review discovery and discuss strategy and preparation, is significantly limited by her detention.

The purpose of the Speedy Trial Act is to prevents these harms. "The prohibition in our criminal justice system against unnecessary delay is designed (1) to protect against undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation, and (3) to protect the ability of an accused to defend himself." *United States v. Goodson*, 204 F.3d 508, 515–16 (4th Cir. 2000) (internal quotation marks omitted).

There is no question that the government's delay has both lengthened the period of Ms. Bennett's pretrial incarceration and diminished her ability to prepare a defense. But the speedy trial protections exist to protect a defendant from the other harms Ms. Bennett is suffering too. As the Supreme Court has explained:

> Inordinate delay between public charge and trial, wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

*Taylor*, 487 U.S. at 340 (alterations omitted).

Thus, even if the seriousness of the offense weighs in favor of dismissal without prejudice, that factor is substantially outweighed by the other three factors. The Court should dismiss the wire fraud and wire fraud conspiracy charges with prejudice.

### III. The Complaint and Supporting Affidavit Should Be Stricken from the Record.

Ms. Bennett renews the motion to strike the complaint and supporting affidavit from the record, for the same reasons set forth in Dkt. No. 78. The superseding indictment makes clear that many of the allegations in Agent Custer's affidavit are utterly irrelevant to any criminal charge against Ms. Bennett, as those allegations did not make their way into the new charging document. Those allegations include, in particular, the color photographs of the contents of Ms. Bennett's freezers and closets, and the assertions pertaining to her supposed interest in "hoodoo." Those allegations never should have been in the complaint in the first place. *See* Fed. R. Crim. P. 3 ("The complaint is a written statement of **the essential facts** constituting the offense charged." (emphasis added)). They have no place, now, in the public record of this case. *Cf. United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006) (noting that a motion to strike surplusage should be granted if "the allegations are not relevant to the charge and are inflammatory and prejudicial"); *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006) (holding that, "upon the defendant's timely motion, the court may strike surplusage from the indictment or information when it is both irrelevant (or immaterial) and prejudicial"); *United States v. Michel-Galaviz*, 415 F.3d 946, 948 (8th Cir. 2005) ("A motion to strike surplusage from an indictment should be granted . . . where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter."); *United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979) (determining that the purpose of Federal Rule of Criminal Procedure 7(d), which allows a court to strike surplusage from the indictment, is "to protect a

defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment, or not essential to the charge, or unnecessary, or inflammatory") (citations omitted).

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court dismiss the charges of wire fraud and wire fraud conspiracy in the superseding indictment (Counts Six through Fifteen) and strike the complaint and supporting affidavit (Dkt. Nos. 1 & 2) from the record.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

_____/s/_____
ELIZABETH G. OYER #95458
DEBORAH L. BOARDMAN #28655
KIRSTIN MAGUIRE HOPKINS #19629
Assistant Federal Public Defenders
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) 962-0872
Email: Liz_Oyer@fd.org
　　　　Deborah_Boardman@fd.org
　　　　Kirstin _Hopkins@fd.org