**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO.  PX-17-472** |
| | * | |
| **DAWN J. BENNETT,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| | ******* | |

**GOVERNMENT'S OMINBUS RESPONSE IN OPPOSITION**
**TO DEFENDANT'S PRETRIAL MOTIONS**

The United States of America, by and through the undersigned counsel, respectfully submits the following omnibus response to the defendant's pretrial motions.  For the reasons set forth below, each motion should be denied.

### Table of Contents

I. Motion to Dismiss Wire Fraud Charge and Strike Criminal Complaint (ECF No. 78) ..............3

II. Motion for Bill of Particulars (ECF No. 79) ...........................................................................28

III. Motion to Dismiss Securities Fraud Conspiracy and Substantive Securities Fraud Counts for Lack of Venue (ECF No. 136) ......................................................................................................19

IV. Supplemental Motion to Dismiss Wire Fraud and Wire Fraud Conspiracy Charges and to Strike Criminal Complaint (ECF No. 137) ...................................................................................3

V. Supplemental Motion to Dismiss Certain Substantive Securities Fraud and Wire Fraud Counts (ECF No. 138)................................................................................................................................23

VI. Supplemental Motion for Bill of Particulars (ECF No. 139)...................................................28

## BACKGROUND

On August 28, 2017, the defendant was charged by criminal complaint with wire fraud, in violation of 18 U.S.C. § 1343; bank fraud, in violation of 18 U.S.C. § 1344; and false statements in relation to loan and credit applications, in violation of 18 U.S.C. § 1014. *See* Case No. 17-2292-CBD.

On September 11, 2017, a federal grand jury for the District of Maryland returned a two-count Indictment charging the defendant with bank fraud, in violation of 18 U.S.C. § 1344; and false statements on a loan application, in violation of 18 U.S.C. § 1014. ECF No. 1.

On November 29, 2017, a federal grand jury for the District of Maryland returned a Superseding Indictment charging the defendant, along with co-defendant Bradley C. Mascho, with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371 (Count One) and conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count Six). ECF No. 110. In addition, the defendant was charged with securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff (Counts Two through Five); wire fraud, in violation of 18 U.S.C. § 1343 (Counts Seven through Fifteen); bank fraud, in violation of 18 U.S.C. § 1344 (Count Sixteen); and false Statements on a loan application, in violation of 18 U.S.C. § 1014 (Count Seventeen). *Id.* With respect to the substantive wire fraud counts, the Superseding Indictment charged the following transactions: a $55,000 wire on March 9, 2016 (Count 7); a $100,000 wire on April 1, 2016 (Count 8); a $100,000 wire on April 4, 2016 (Count 9); a $200,000 wire on May 17, 2016 (Count 10); a $150,000 wire on August 8, 2016 (Count 11); a $1,000,000 wire on September 22, 2016 (Count 12); a $67,538 wire on November 10, 2016 (Count 13); a $58,500 wire on July 21, 2017; and a $395,476 wire on June 28, 2017 (Count 15). *Id.*

I.    **Because There Is No Speedy Trial Act Violation, and Because There Is No Law that Supports Striking the Criminal Complaint, the Defendant's Motion to Dismiss Wire Fraud Charge and to Strike Criminal Complaint (ECF No. 78) and Supplemental Motion to Dismiss Wire Fraud and Wire Fraud Conspiracy Charges and to Strike Criminal Complaint (ECF No. 137) Should be Denied.**

The defendant has moved (1) to dismiss with prejudice the wire fraud conspiracy count and all substantive wire fraud counts in the Superseding Indictment, based on an alleged Speedy Trial Act violation; and (2) to strike the affidavit in support of the criminal complaint, based on alleged vindictive surplussage.  The defendant's motion should be denied.

Further for the Court's consideration: whether a Speedy Trial Act violation occurred with respect to the criminal complaint, and whether any criminal complaint charge should be dismissed, is largely an academic exercise; regardless of the Court's determination on those issues, the majority of the wire fraud-related counts in the Superseding Indictment cannot be dismissed, under prevailing caselaw.  Nonetheless, the Government below analyzes why no Speedy Trial Act violation occurred and why, if it did, no criminal complaint charge should be dismissed with prejudice.  Further below, the Government describes why the Superseding Indictment counts stand apart, regardless of any Speedy Trial Act violation.

A.    **There was no Speedy Trial Act violation.**

The defendant's primary argument is that the Superseding Indictment charging the defendant with wire fraud-related conduct was returned more than 30 days from the date she was charged by criminal complaint.  ECF No. 78.  However, the defendant's motion fails to address the many time-saving provisions of 18 U.S.C. § 3161(h). As discussed further below, when these time-saving provisions are accounted for, only 13 days of the 30-day time period have elapsed.

Under 18 U.S.C. § 3161(b), the Government typically has 30 days from the date a defendant has been arrested on a criminal complaint in order to obtain an indictment.  This general

rule, however, is subject to many statutory exceptions, most notably the tolling provisions of § 3161(h). For example, the 30-day period is tolled for "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," 18 U.S.C. § 3161(h)(1)(D). "[A]ny pretrial motion" includes, as would be expected from the plain statutory language, *any* pretrial motion, including motions regarding bail status and detention. *See United States v. Wright*, 990 F.2d 147 (4th Cir. 1993) (finding that "motion for temporary detention" made at initial appearance tolls time until motion resolved by court); *United States v. Trotman*, 406 F. App'x 799, 805 (4th Cir. 2011) ("[N]either party challenges the excludable time associated with the various pretrial motions, including the government's motion for detention and the defendant's motions to dismiss and motion in limine."); *United States v. Dixon*, 542 F. App'x 273, 277 (4th Cir. 2013) (finding tolled the period from the Government's motion for pretrial detention and date motion granted). *See also United States v. Parker*, 508 F.3d 434, 439 (7th Cir. 2007) (excluding time from Government's motion for detention through hearing on motion). A pretrial motion may be made either in writing or orally, and need not be formal. *See United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 368-69 (5th Cir. 2010) (finding no difference, for Speedy Trial Act purposes, between a written and oral motion); *United States v. Arbelaez*, 7 F.3d 344 (3d Cir. 1993) (finding that informal letters and oral motions are sufficient to toll under § 3161(h)(1)(D)). Moreover, Pretrial Services's petitions regarding detention are the functional equivalent of pretrial motions, and toll the Speedy Trial clock under § 3161(h)(1)(D). *See United States v. Hughes*, 2014 WL 12684433, at *2 (M.D. Fla. June 21, 2014) ("A petition by pretrial services for action on pretrial release conditions counts as a 'pretrial motion' for the purpose of § 3161(h)(1)(D)."); *United States v. Hohn*, 8 F.3d 1301, 1304 (8th Cir. 1993) ("We find that pretrial services' petition is the functional equivalent of a motion to revoke

4

detention. . . .  [T]he court treated the petition precisely as it would have treated a motion for revocation of release brought either by the court's own motion or by the government."). *Cf. United States v. Espin*, 2015 WL 728483 (W.D. Penn. Feb. 19, 2015) (tolling time from filing of Pretrial Services's "Petition for Action on Conditions of Pretrial Release" until hearing was held on Petition, under § 3161(h)(1) as a period of delay "resulting from other proceedings concerning the defendant").

The 30-day period also is tolled for "delay resulting from other proceedings concerning the defendant," 18 U.S.C. § 3161(h)(1); "delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure," 18 U.S.C. § 3161(h)(1)(E); "delay resulting from transportation of any defendant from another district," 18 U.S.C. § 3161(h)(1)(F); and "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court," 18 U.S.C. § 3161(h)(1)(H).  For counting purposes, the day of the event that triggers and concludes the period is excluded.  *See* Fed. R. Crim. Proc. 45(a)(1)(A); *Wright*, 990 F.2d at 149 (quoting *United States v. Yunis*, 723 F.2d 795, 797 (11th Cir. 1984)).

As further explained in and below the summary chart, only __**13 days**__ of the 30-day period have elapsed, including:

- __**Twelve days**__ from September 30 through October 11, 2017.

- __**One day**__ on October 30, 2017.

| Date | Tolled? | Reason |
|---|---|---|
| 8/25 – 8/28 | Yes | Removal from New Mexico to Maryland, Hearings |
| 8/29 – 9/29 | Yes | Pretrial Services Petition, Government Motions, Defense Motions, Hearings |

| Date | Tolled? | Reason |
|---|---|---|
| 9/30 – 10/11 | No | |
| 10/12 – 10/30 | Yes | Defense Motions, Government Motions, Hearings |
| 10/31 | No | |
| 11/1 to the present | Yes | Defense motions, Government motion, hearings |

The defendant first was arrested in New Mexico on the criminal complaint on August 25, 2017.  She appeared in federal court in New Mexico that day, was released on conditions, and appeared in federal court in Maryland on August 28, 2017.  The dates of appearance – both August 25 and August 28 – are excludable as dates on which "other proceedings concerning the defendant" were held.  *See Wright*, 990 F.2d at 148.  In addition, the entire period inclusive of August 25 through August 28 is excludable as delay due to the removal of the defendant from New Mexico to Maryland, under 18 U.S.C. § 3161(h)(1)(E).  *See Abdallah v. United States*, 2015 WL 7454182 (E.D.N.Y. Nov. 24, 2015) ("One such example of this exclusion occurs when the defendant is arrested in a district other than the one that issued the warrant for his arrest.  In such an instance, the time between defendant's initial appearance in the district of arrest and defendant's initial appearance in the district in which defendant is ultimately charged is excluded from the speedy trial clock so long as the delay is reasonable.") (citing cases from the Second and Sixth Circuits).

On August 29, 2017, the Pretrial Services Officer served notice of an apparent violation of the defendant's release conditions and sought a prompt bail review hearing.  Once the defendant

settled (at least temporarily) on a defense counsel,[1] the hearing was scheduled for September 7, 2017, but postponed (by written order) to September 13, 2017.  The purpose of the bail review hearing was for the Government (supported by Pretrial Services) to seek the defendant's detention. Sometime prior to the scheduled September 13, 2017, hearing, and unbeknownst to the Government, the Court modified the defendant's release conditions without a hearing or notice to the Government.  *See* Exhibit 1 (9/13/17 Windom email to Magistrate Judge DiGirolomo). Unaware of the modification, the parties jointly rescheduled the September 13, 2017 detention hearing until September 21, 2017.

The days from and inclusive of August 29 through September 21, 2017, however, are tolled pursuant to the Pretrial Services request for a bail review hearing and/or the Government's oral motion for detention.  *See Hughes*, 2014 WL 12684433, at *2; *Hohn*, 8 F.3d at 1304; *Gonzalez-Rodriguez*, 621 F.3d at 368-69; *Arbelaez*, 7 F.3d at 347 (3d Cir. 1993) ("…even an oral motion is sufficient to invoke the time exclusion provided by the Speedy Trial Act").

There are additional reasons to toll certain days within that timeframe.  For example, on September 7, 2017, in Case No. 17-2292-CBD, the Government filed an *ex parte* motion for an order requiring the Clerk of Court to provide the Government with a copy of the defendant's passport; Magistrate Judge Day granted the motion the same day.  Thus, September 7, 2014 also is excludable.  And on September 14, 2017, Magistrate Judge DiGirolomos held a hearing (at

---

[1] The hearing may have been delayed because the defendant continued to switch attorneys.  On Sept 1, 2017, the defense counsel who had represented the defendant at the New Mexico and Maryland initial appearances, and first detention hearing, informed the Government that he no longer represented the defendant.  On September 5, 2017, a prospective defense counsel called Government counsel to inquire regarding the propriety of selling, to pay for legal fees, certain property that may have been subject to the defendant's pretrial release order.  During this time, the defendant effectively was not represented by any attorney.

which defense counsel and the defendant appeared telephonically) on the Government's email motion for a prompt hearing, sent the day before.  *See* Exhibit 1.

On September 20, 2017, in this case, the defendant's then-attorney, Steve Gremminger, filed a motion to withdraw and to postpone a detention hearing, *see* ECF No. 20; Magistrate Judge Sullivan denied the motion the same day, *see* ECF No. 22.  The same day, another of the defendant's attorneys, Mark Schamel, filed a motion to enter a "conditional limited appearance," *see* ECF No. 23; Magistrate Judge Sullivan granted the motion orally at a detention hearing on September 21, 2017.  The defendant was detained at the September 21st detention hearing, and the following day – September 22nd – filed an expedited motion for reconsideration of the detention order.  *See* ECF No. 29.  On September 25, 2017, another detention hearing was held pursuant to the motion, after which Magistrate Judge Sullivan released the defendant; the Government the same day filed a motion to review the release order, *see* ECF No. 31, for which hearings were held on September 26 and September 29, the latter of which date resulted in the disposition of the motion.

The 12 days from September 30, 2017 through October 11, 2017, count toward the 30-day period.  On October 12, 2017, defense counsel Mark Schamel filed a motion to withdraw, *see* ECF No. 55, which the Court granted on October 17, 2017, *see* ECF No. 56.  Also on October 12, 2017, the defendant filed a motion to modify release conditions, *see* ECF No. 52, which prompted additional briefing (including ECF No. 53) and which was not ruled on by the Court until October 30, 2017, *see* ECF No. 75.

On October 20, 2017, the Government filed a motion for a protective order, *see* ECF No. 62, and a motion for an order to disclose tax information, *see* ECF Nos. 63-64.  Though the Court granted the protective order the same day, the Court did not grant the motion for an order to

disclose tax information (and the accompanying sealing motion) until October 25, 2017. *See* ECF No. 71. Also on October 25, 2017, the defendant filed a motion to modify release conditions, *see* ECF No. 70, which the Court granted the following day, October 26, 2017, *see* ECF No. 72.

The lone day of Halloween, October 31, 2017, counts toward the 30-day period. The following day, November 1, 2017, the defendant filed several motions that remain pending, including the dismissal motion to which the Government is now responding. *See* ECF No. 78. All time since November 1, 2017, is excludable. On November 29, 2017, a federal grand jury for the District of Maryland returned a Superseding Indictment charging the defendant with various wire fraud-related counts, among other charges.

### B.     If there was a Speedy Trial Act violation, any dismissal should be without prejudice.

In the event the Court finds a violation of the Speedy Trial Act, any dismissal should be only of the wire fraud charge in the criminal complaint and only without prejudice. As described in the next section, the Court should not dismiss any wire fraud conspiracy or substantive wire fraud counts in the Superseding Indictment.

In determining whether to dismiss a charge with or without prejudice, the Court looks to certain non-exclusive factors, including: (1) the seriousness of the offense, (2) the facts and circumstances of the case which led to the dismissal, and (3) the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice. *See* 18 U.S.C. § 3162(a)(1). "Also of relevance is [4] the presence or absence of prejudice to the defendant." *United States v. Smith*, 2011 WL 846670, at *1 (D. Md. March 8, 2011) (Schulze, M.J., citing *United States v. Taylor*, 487 U.S. 326, 340-41 (1988), and dismissing complaint ***without*** prejudice for violation of Speedy Trial Act). If dismissal is appropriate, which the Government submits it is not, all four of these factors weigh in favor of a dismissal without prejudice.

9

### 1. Wire fraud is a serious offense.

The wire fraud charge in the criminal complaint undoubtedly is a serious offense. The statutory maximum term of imprisonment for wire fraud is 20 years, making it a Class B felony. The defendant's conduct itself underscores the seriousness patent in the charge. According to the affidavit in support of the criminal complaint, the defendant ran a Ponzi scheme over the course of several years, defrauding many investors along the way. *See* ECF No. 2. In order to cover up her scheme, the defendant repeatedly lied to investors as to her whereabouts, ECF No. 2 ¶ 42, and may have suborned perjury during the deposition of her employee (and now co-defendant) Brad Mascho, ECF No. 2 ¶ 37-40.

### 2. The facts and circumstances of any delay do not favor dismissal with prejudice.

The Government certainly was not sitting on its hands during any non-excludable time (or even excludable time) from the defendant's arrest on August 25, 2017, until her indictment on wire fraud charges in the Superseding Indictment on November 29, 2017. As the Court well knows, the Government repeatedly was forced by the defendant's conduct to litigate the defendant's pretrial detention. The investigation of the defendant's pretrial release violations began on at least the date of her initial appearance in Maryland, on August 28, 2017, and continued through every non-excludable day under the Act. In part, the continued litigation regarding her detention was because of the defendant's decisions to hire and fire multiple attorneys, most significantly at the beginning of her legal proceedings in Maryland. The Government simultaneously continued its investigation into the conduct not only of the defendant but of her co-conspirators, which ultimately resulted in a Superseding Indictment charging the defendant with additional substantive counts and Mashco with conspiracy. During the time from the defendant's arrest through the

Superseding Indictment, the Government undertook at least the following:

- The Government served subpoenas on approximately 20 law firms identified as having represented or been involved with the defendant.  Given potential attorney-client privilege issues, the Government conducted extensive discussions with the subpoenaed firms/attorneys, resulting in substantial time and effort to obtain appropriate responses to the subpoenas.  In at least two cases, the Government had to seek the Court's intervention in order to compel the law firms to produce materials.

- The grand jury continued to hear testimony from at least eight relevant witnesses.  At least two of those witnesses pleaded the Fifth Amendment, which required litigation before the Chambers Judge and, in at least one instance, the appointment of CJA counsel to represent the witness.

- The Government continued to interview other relevant witnesses.

- The Government drafted and obtained a search warrant for Mashco's residence.

The defendant repeatedly has stated that the Government was in control of the investigation and could have opted to first indict the defendant on wire fraud charges rather than charge her by criminal complaint.  *See, e.g.*, ECF No. 78 at 5 ("The government elected to proceed by complaint . . . .  This is not a situation in which a complaint was the only available option to bring charges in a timely fashion . . . ."); ECF No. 137 at 7 ("The government should now bear the consequences of its decision to proceed in this highly irregular fashion" of proceeding by criminal complaint rather than indictment).  The defendant's argument goes too far.  The Government determined to seek a criminal complaint and to arrest the defendant immediately because of the Government's concern that the defendant was tampering with witnesses while the Government's investigation

11

continued.  While the Government interviewed victims prior to the defendant's arrest, it became clear that the defendant was in contact with the victims, sometimes on the same day that those victims were to appear for interviews with the Government or testimony before the grand jury.  In at least one instance, a victim gave information to the case agent in early 2017 that in an August 2017 interview the victim later qualified or retracted; that same victim admitted having spoken with the defendant the morning of the August 2017 interview.  The Government's concern that the defendant was tampering with witnesses compelled the Government to act quickly, and to arrest the defendant on a criminal complaint.  The Government's concern was substantiated by the defendant's post-arrest conduct, in which she repeatedly contacted victim witnesses in violation of the Court's pretrial release orders, thus forcing significant litigation on the issue of her detention.

It should be clear that the Government did not act in bad faith and was not continuing a pattern of neglect.  Moreover, if any delay occurred, that day must be measured only as a matter of days, at most.  Such a short period of time is not inordinate but rather is inconsequential.  *See United States v. Ford*, 288 F. App'x 54, 59 (4th Cir. 2008) (affirming district court's dismissal of indictment *without* prejudice, after Speedy Trial Act violation, where district court noted that Act was violated by "only a few days").

### 3. The administration of the Act and justice militate in favor of dismissal without prejudice.

The administration of the Speedy Trial Act does not require dismissal with prejudice.  Rather, dismissal without prejudice would be the appropriate option, given the Government's investigation during any non-excludable delay. Nor would dismissal with prejudice serve the interests of justice.  Even if the wire fraud charge is dismissed with prejudice, the defendant still would proceed to trial on the bank fraud-related charges.  Moreover, no prosecutorial misconduct occurred here, and no benefit of deterring such non-conduct could be obtained by dismissing with

prejudice.  *See United States v. Reames*, 40 F. App'x 861, 861 (4th Cir. 2002) (affirming district

court's dismissal of indictment *without* prejudice, following the Government's failure to indict a

defendant charged by criminal complaint by at most six days beyond the Act's 30-day time period,

and stating that "the purpose of deterring prosecutorial misconduct and delay would be little served

by barring reprosecution").  The defendant should not reap the reward of "escap[ing] prosecution

for a serious offense," *Ford*, 288 F. App'x at 59, because of only a slight delay that had no affect

on her ability to defend the charges.

### 4.      The defendant suffered no legal prejudice.

As prejudice, the defendant claims that her "entire life has been upended by this

proceeding." ECF No. 78 at 6.  The same would have been true had the criminal complaint charged

only the bank fraud conduct, which (it cannot go unnoticed) carries a higher statutory maximum

term of imprisonment than the wire fraud charge.  *See also Smith*, 2011 WL 846670, at *2 ("Smith

contends that he has felt this prosecution deeply and any additional time will only continue his

agonizing position of wondering whether this case will result in a federal criminal conviction. Such

feelings, however, are common to all who face criminal charges.").[2]  Furthermore, the Government

still could proceed on securities-fraud related charges, the relevant conduct for which would

capture all of the conduct described in the affidavit in support of the criminal complaint, and the

intended loss amount for which is approximately $20 million. This would expose the defendant to

the same advisory Guidelines sentencing range, even without the wire fraud-related charges.

Moreover, the type of prejudice envisioned by the Act that would warrant dismissal with

---

[2] The same also would have been true once the grand jury returned the Superseding Indictment, which (as described below) charges the defendant with wire fraud conspiracy and other substantive wire fraud counts not identified in the criminal complaint and not implicated by the Speedy Trial clock.

prejudice is legal prejudice, such as the inability to call a witness, evidence made unavailable by the passage of time, or the impairment of a trial right.  *See United States v. Hinch*, 308 F. Supp. 2d 599, 604 (D. Md. 2004) (dismissing indictment ***without*** prejudice and describing prejudice as the unavailability of witnesses or evidence due to the Speedy Trial Act violation).  The defendant has not even made, much less supported, a claim of legal prejudice.

The defendant also supports her claim of prejudice by pointing to the increased difficulty of preparing for trial caused by her incarceration.  As an initial matter, such increased difficulty, if any, is faced by every defendant detained prior to trial.  Moreover, here, the defendant's incarceration should not be counted against the Government.  The defendant initially was released on conditions and only was detained after repeatedly violating the Court's pretrial release orders.  As well, the defendant was detained under the original indictment (which charged bank fraud-related conduct), not on the criminal complaint (which contained the wire fraud charge the defendant now seeks to dismiss with prejudice).

\*       \*       \*

If the Court finds a Speedy Trial Act violation, which it should not, each of the factors the Court must consider under § 3162 and the prevailing caselaw support only a dismissal without prejudice.  The defendant's motion to dismiss with prejudice should be denied.

### C.       If there was a Speedy Trial Act violation, any dismissal should be limited to the wire fraud charge in the criminal complaint.

The defendant seeks the dismissal with prejudice not only of the wire fraud charge in the criminal complaint but also of the wire fraud conspiracy and all wire fraud counts in the Superseding Indictment.  The Court should deny the defendant's motion.

Under 18 U.S.C. § 3162(a)(1), if the Court finds a violation of the Act, "***such charge*** against the individual in ***such complaint*** shall be dismissed or otherwise dropped."  The plain

statutory language requires only the dismissal of the specific charge in the complaint—not of any related conduct in any later indictment, even if arising from the same criminal episode or even if known to the Government at the time of the criminal complaint. *See United States v. Napolitano*, 761 F.2d 135, 137 (2d Cir. 1985).

To avoid the plain statutory language, the defendant relies on extra-Circuit cases discussing "gilded" charges, in which a later charge is substantively identical to a dismissed charge. *See* ECF No. 137 at 5 (citing, *inter alia*, *United States v. Bailey*, 111 F.3d 1229, 1236 (5th Cir. 1997)). The "gilded charge" analysis has never been approved by the Fourth Circuit. Other Circuits also have declined to adopt the ill-defined analysis. *See United States v. Watkins*, 339 F.3d 167, 177 (1st Cir. 2003); *United States v. Derose*, 74 F.3d 1177, 1182-83 (11th Cir. 1996)

Even if it were adopted in this Circuit, the analysis would not result in the dismissal of the charges in the Superseding Indictment. The Fifth Circuit's *Bailey* case relied on by the defendant in turn bases its ruling on the Supreme Court's Double Jeopardy caselaw, most notably in *Blockburger*. According to the Fifth Circuit, a later charge should be dismissed if proving the crime would entail proving the same elements as the earlier charge. *See Bailey*, 111 F.3d at 1236. The elements of a wire fraud conspiracy are: (1) two or more persons entered the unlawful agreement charged in the Superseding Indictment, that is, an agreement to commit wire fraud, and (2) the defendant knowingly and willfully became a member of the conspiracy. *See* Sand, <u>Modern Federal Jury Instructions</u>, 19-3; *United States v. Chinasa*, 489 F. App'x 682, 685-86 (4th Cir. 2012) ("§ 1349 does not contain an overt act requirement."). The elements of the wire fraud charge in the criminal complaint are: (1) the existence of a scheme to defraud and (2) the use of a wire communication in furtherance of the scheme; and (3) specific intent to defraud. *See United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012); *see also* Sand, <u>Modern Federal Jury Instructions</u>,

44-3.  The two charges do not contain the same elements and are not the same offense.  *See Derose*, 74 F.3d at 1184 (assuming the gilding analysis applied and finding no gilding because "it is well established that conspiracies and substantive offenses are separate and distinct offenses requiring proof of different elements").  *See also United States v. McGrier*, 848 F. Supp. 649, 656 (S.D. W. Va. 1994) (discussing *Bailey* and related cases, and stating, "[n]one of these decisions have applied the gilding concept to charges alleging an offense that is 'separate and distinct ... requiring proof of different elements.'").  The wire fraud conspiracy count in the Superseding Indictment is not affected by any dismissal, with or without prejudice, of the wire fraud charge in the criminal complaint.

Similarly, the majority of the substantive wire fraud counts in Counts Seven through Count Fifteen should not be dismissed, with or without prejudice, because they are predicated on different wires than those described in the criminal complaint.  Where the wires are different, so too are the elements of the offenses, as described below:

- Count Seven charges wire fraud with respect to a $55,000 check drawn on Victim H's bank account and deposit into the defendant's account.  Victim H was not identified as an anonymized Individual in the affidavit supporting the criminal complaint.

- Count Eight charges wire fraud with respect to a $100,000 wire transfer on April 1, 2016, from Victim I's account to the defendant's account, and Count Nine charges wire fraud with respect to a $100,000 wire transfer on April 4, 2016 from Victim I's account to the defendant's Account.  Victim I was identified as anonymized Individual #8 in the affidavit supporting the criminal complaint. The particular wire transfers were identified in the affidavit supporting the criminal complaint as two

of six transfers from Individual #8 to the defendant between April and September 2016. *See* ECF No. 2 ¶ 18. The wire fraud charge in the criminal complaint could have been proven without discussion of these wires.

- Count Ten charges wire fraud with respect to a $200,000 wire transfer from Victim L's account to the defendant's account. Victim L was not identified as an anonymized Individual in the affidavit supporting the criminal complaint.

- Count Eleven charges wire fraud with respect to a $150,000 wire transfer on August 8, 2016, from Victim N's account to the defendant's account. Though Victim N was identified as anonymized Individual #20 in the affidavit supporting the criminal complaint, the particular wire transfer was not the specific basis of the wire fraud charge.[3]

- Count Twelve charges wire fraud with respect to a $1,000,000 wire transfer on September 22, 2016, from Victim E's account to the defendant's account. Though Victim E was identified as anonymized Individual #14 in the affidavit supporting the criminal complaint, the particular wire transfer was not therein identified. *See* ECF No. 2 ¶ 24 (referring to a separate $1,000,000 wire transfer from Victim E in December 2016).

- Count Thirteen charges wire fraud with respect to a $67,538 wire transfer on

---

[3] The Government notes that the affidavit in support of the complaint lists six specific payments that the defendant made between August 2016 and July 2017 to Cowboys Stadium LP to bring herself current on her luxury suite lease for the 2016 football season. ECF No. 2 ¶ 36. Paragraph 36 further states that these six payments were "largely funded by deposits from victim investors including …Individual #20." As such, the transaction that forms the basis for Count Eleven in the Superseding Indictment was identified in very general terms in the affidavit supporting the complaint.

November 10, 2016, from Victim A's account to the defendant's account.  Though

Victim A was identified as anonymized Individual #6 in the affidavit supporting

the criminal complaint, the particular wire transfer was not therein identified.  *See*

ECF No. 2 ¶ 15 (referring to separate wire transfers from Victim A in July 2015).

- Count Fourteen charges wire fraud with respect to a $58,500 wire transfer from Victim M's account to the defendant's account.  Victim M was not identified as an anonymized Individual in the affidavit supporting the criminal complaint.

- Count Fifteen charges wire fraud with respect to a $395,476 wire transfer from Victim M's account to the defendant's account.  Victim M was not identified as an anonymized Individual in the affidavit supporting the criminal complaint.

Accordingly, the counts in the Superseding Indictment contain different elements than the

charge in the criminal complaint.  The counts do not merely "gild" the charge in the complaint,

and are unaffected by any Speedy Trial Act violation that may have occurred with respect to the

complaint.

### D.     No law supports striking an affidavit in support of a criminal complaint.

The defendant moves to "strike the criminal complaint and Agent Custer's supporting

affidavit from the public record."  ECF No. 78.  Without support, the defendant alleges various

unethical or at least unseemly practices by the Government – and by extension Magistrate Judge

Day, who signed the criminal complaint – in including evidence of the defendant's guilt in the

affidavit supporting the criminal complaint.  In support of her motion, the defendant cites to

Federal Rule of Criminal Procedure 3's definition that a criminal complaint "is a written statement

of the essential facts constituting the offense charged."  The defendant also attempts to graft onto

Rule 3 a provision in Rule 7 that permits the Court to strike an indictment's surplusage.  *See* Fed.

18

R. Crim. Proc. 7(d).  But Rule 3 does not give the Court the power to strike perceived surplusage, and the defendant has cited no law, rule, or case that would permit, much less militate in favor of, the relief requested.  Moreover, even Rule 7's surplusage-striking rule only prevents the surplus language from going to the jury; it does not permit the Court to seal and hide from the public information that is sworn to by a federal agent, approved by a magistrate judge of this Court, and already in the public record.  The motion should be denied.

## II.    Because the Superseding Indictment Alleges that the Crimes Occurred in the District of Maryland, the Defendant's Motion to Dismiss for Lack of Venue (ECF No. 136) Must be Denied.

The defendant has moved to dismiss Count One (securities fraud conspiracy) and Counts Two through Five (securities fraud) of the Superseding Indictment for lack of venue.  Article III of the U.S. Constitution states that unless the law states otherwise, "trial shall be held in the state where the said crimes shall have been committed."  U.S. Const., Art. III, § 2.  Similarly, the Sixth Amendment sets forth that "…the accused shall enjoy the right to a speedy and public trial, but an impartial jury of the state and district wherein the crime shall have been committed…".  U.S. Const. amend. VI; *accord* Fed. R. Crim. P. 18 ("unless a statute or these rules permit otherwise, the government must prosecute an offense in the district where the offense was committed.").  As interpreted by the Fourth Circuit, the Constitution "requires *only* that venue be determined from the nature of the crime and the location of the acts constituting it."  *United States v. Cofield*, 11 F.3d 413, 419 (4th Cir. 1993).

In accordance with these principles, Congress may prescribe specific venue requirements for certain crimes. *See United States v. Johnson*, 510 F. 3d 521, 524 (4th Cir. 2007).  If Congress imposes these requirements, the provision of that particular statute "must be honored (assuming, of course, that it satisfies the constitutional minima.)"  *Id.* (citing *United States v. Salinas*, 373

F.3d 161, 164 (1st Cir. 2004)).  For instance, pursuant to 18 U.S.C. § 3237(a), "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be… prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a).  If Congress does not impose any specific venue provision, then venue is "determined from the nature of the crime alleged and the location of the act or acts constituting it." *Id.* (quoting *United States v. Ebersole*, 411 F.3d 517, 534 (4th Cir. 2005)).  Given this framework, "it is well accepted that there may be 'more than one appropriate venue, or even a venue in which the defendant has never set foot' so long as it meets the relevant constitutional and statutory requirements." *Id.* (citing *Ebersole*, 411 F.3d at 524.)

If multiple counts are alleged in an indictment, venue must be proper as to each count. *See United States v. Robinson*, 275 F.3d 371, 378 (4th Cir. 2001).  While venue need not be pled in the indictment, it must be proven at trial.  Fed. R. Crim. P. 7(c)(1) (providing only that the indictment be a plain, concise and definite written statement of the essential facts constituting the offense charged); *United States v. Votteller*, 544 F.2d 1355, 1361 (6th Cir. 1976).  If challenged at trial, the Government must prove by a preponderance of the evidence that venue is proper.  *See United States v. Ebersole*, 411 F.3d 517, 524 (4th Cir. 2005).

Because the defendant has moved to dismiss the securities fraud conspiracy and substantive securities fraud counts prior to trial, her motion is a challenge to the sufficiency of the indictment.  *See United States v. Engle*, 767 F.3d 405, 415 (4th Cir. 2012).  As such, the Court's analysis is limited to allegations contained in the Superseding Indictment.  *Id.*  To warrant dismissal for improper venue, the defendant is "required to demonstrate that the allegations [contained in the Superseding Indictment], even if true, would not establish venue." ECF 110; *see Id.*  Alleging the federal district in which the crime occurred is sufficient to establish venue. *See*

20

*United States v. Bujese*, 371 F.2d 120, 124 (3d Cir. 1967).  Each of the Counts in the Superseding Indictment in this case clearly designate that the defendant's crimes were committed "in the District of Maryland and elsewhere."  *Id.* at 416 (affirming the District Court's denial of the defendant's motion to dismiss on venue grounds for those reasons).

The Superseding Indictment also demonstrates that the Government will have no issue proving venue at trial.  For the substantive securities fraud offenses alleged in Counts Two through Five of the Superseding Indictment, Congress has mandated that venue may be brought "in the district wherein any act or transaction constituting the violation occurred."  15 U.S.C. § 78aa.  This statute is "manifestly broad," and simply requires that "*any* act or transaction constituting the violation" took place in the prosecuting district.  *Johnson*, 510 F. 3d 521 at 525 (quoting *In Re AES Corp. Sec. Litig.*, 240 F. Supp. 2d 557, 559 (E.D. Va. 2003) (holding that a "venue-sustaining act [under § 78aa] need not constitute the core of the alleged violation, nor even be illegal, so long as it represents more than an immaterial part of the alleged violation").  *See also First Fed. Sav. & Loan Assoc. v. Oppenheim, Appel, Dixon & Co.*, 634 F. Supp. 1341, 1350, (S.D.N.Y. 1986) ("any non-trivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue" under § 78aa).  For example, the Fourth Circuit has noted that other courts have found that causing the transmission of false or misleading information into a judicial district is enough to establish venue in that district.  *See Johnson*, 510 F.3d 521, 525 (4th Cir. 2007); *see, e.g., John Nuveen & Co. v. New York City Hous. Dev. Corp.,* 1986 U.S. Dist. LEXIS 25782 (N.D. Ill. May 9, 1986); *AES Corp.*, 240 F. Supp. 2d at 559, n. 5 (collecting cases).

The Superseding Indictment, on its face, also provides that venue in the District of Maryland is appropriate.  For instance, at all relevant times, both defendants resided in the District of Maryland. Two of the bank accounts referenced are in Bennett's name.  Bennett, a resident of

Maryland, had sole signatory authority for all five of the bank accounts referenced in the Superseding Indictment.  Any non-trivial act that helps accomplish the violation (including a wire transmission to or from a bank account located in Maryland; an email; phone call in furtherance where one party is located in Maryland, or a meeting in Maryland where false or misleading information is conveyed) is sufficient to establish venue. 15 U.S.C. § 78aa.

The Superseding Indictment also indicates that several of the victims resided in Maryland. The background section provides that through November 2015, Bennett provided investment advice and financial services to clients in Maryland, and, beginning in November 2014, she and Mascho sold convertible notes to multiple individuals, including former BGFS clients, some of whom were residents of Maryland. The securities at issue were DJ Bennett Holdings LLC Convertible Notes sold to five different victims between June and August 2015.  If the defendants transmitted false or misleading information to Maryland in furtherance of the fraud, venue is established.

The defendant incorrectly asserts, without supplying any proof, that "all of the securities fraud-related allegations – including the overt acts of the alleged conspiracy and the substantive securities fraud acts – occurred in the District of Columbia."  (Def. Mot. at 4.) The defendant's argument appears to be based on the defendants' having committed securities fraud in an effort to raise money for DJB Holdings, a company with office space in Washington, D.C. This argument does not defeat venue.  *See Johnson*, 510 F.3d at 524 (venue may be proper in more than one judicial district).

The securities fraud conspiracy is also appropriately venued in the District of Maryland. A conspiracy may be prosecuted "in *any* district in which the agreement was formed *or* in which an act in furtherance of the conspiracy was committed."  *United States v. Gilliam*, 975 F.2d 1050,

1057 (4th Cir. 1992); *United States v. Smith*, 452 F.2d 323, 335 (4th Cir. 2006).   As such, particularly in conspiracy cases or cases involving continuing offenses (like securities fraud, *see, e.g., United States v. Harris*, 2013 WL 1790140 *4 (E.D. Va. April 26, 2013) (unpublished)), a defendant's physical presence in the prosecuting district is not dispositive of a venue determination.  *See, e.g, United States v. Al-Talib*, 55 F.3d 923, 928-939 (4th Cir. 1995) ("acts of one co-conspirator can be attributed to all members of the conspiracy"). Because the conspiracy to commit securities fraud count encompasses the conduct alleged in Counts Two through Five, it follows that if venue exists for any of the substantive counts, then venue also exists for the conspiracy. Because the Superseding Indictment sufficiently alleges that the District of Maryland is the appropriate venue for the prosecution of the defendant's crimes, the defendant's Motion should be denied.

### III. Because the Superseding Indictment Serves the Dual Purpose of Informing the Defendant of the Exact Charges She is Facing and Enabling her to Plead Double Jeopardy, The Defendant's Motion to Dismiss Substantive Counts (ECF No. 138) Must be Denied.

The sufficiency of an indictment under the Fifth and Sixth Amendments is measured by two factors: (1) the indictment must indicate the elements of the offense and fairly inform the defendant of the exact charges she faces and (2) if any subsequent proceedings are brought against the defendant for the same offense, the record must enable to the defendant to plead double jeopardy.  U.S. Const. amend. VI (defendants have the right to be informed of the "nature and cause" of the accusation pending against them); *United States v. Rendelman*, 641 F.3d 36, 44 (4th Cir. 2011); *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998); *United States v. Hooker*, 841 F.2d 1225, 1228 (4th Cir. 1988). Pursuant to Federal Rule of Civil Procedure 7(c)(1), an indictment "must be a plan, concise, and definite written statement of the essential facts constituting the offense charge…" Fed. R. Crim. P. 7(c)(1).   The sufficiency of an indictment

"should be determined by practical, as distinguished from purely technical, considerations." *United States v. Cobb*, 905 F.2d 784, 790 (4th Cir. 1990).

The Fourth Circuit requires that an indictment recite the essential elements of each charged offense. *See United States v. Darby*, 37 F.3d 1059, 1063 (4th Cir. 1994); *United States v. Pupo*, 841 F.2d 1235, 1239 (4th Cir. 1988) (en banc). An "essential element" is an element whose "specification… is necessary to establish the very illegality of the behavior and thus the Court's jurisdiction." *United States v. Hooker*, 841 F.2d 1225, 1231-32 (4th Cir. 1988). An indictment that tracks that statutory language of the violation is ordinarily valid. *United States v. Fogel*, 910 F.2d 23, 25 (4th Cir. 1990); *Hamling et al. v. United States*, 418 U.S. 87, 117 (1974) ("it is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'") (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).

The question presented by the defendant's motion is whether the securities fraud count (Count Four), and the six wire fraud counts (Counts Eight through Eleven, and Fourteen and Fifteen) are so vague that they violate the defendant's rights. The seven counts at issue are sufficiently detailed to serve the dual purpose of apprising the defendant of the charges against her and allow her to prepare her defense. Each count alerts the defendant to the elements of the particular charge she faces by tracking the language of the statute – securities fraud (Count 4), and wire fraud (Counts 8 through 11, 14 and 15; collectively "the wire fraud counts"). The statutory language for the securities fraud count and the wire fraud counts sufficiently allege both the *mens rea* and the *actus reus* of the crimes charged. 15 U.S.C. §§ 78j(b) & 78ff; 18 U.S.C. § 1343. With respect to securities fraud, the Superseding Indictment clearly alleges that the defendant

24

**unlawfully, willfully, and knowingly**, **by the use of** means and instrumentalities of **interstate commerce** and the mail, directly and indirectly, used and employed, **in connection with the purchase and sale of securities** listed below, manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) **making untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading**; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons, in connection with the purchase and sale of the securities listed below [listing, by count, the approximate date, the investor, the security, and the purchase price]

All of the elements of securities fraud are present in this charging language. *See SEC v. Pirate Investor LLC,* 580 F.3d 233, 239 (4th Cir. 2009) (the Government must prove that the defendant "(1) made a false statement or *omission* (2) of material fact; (3) with scienter; (4) in connection with the purchase or sale of securities."); *accord United States v. Vilar*, 720 F.3d 62, 88 (2d Cir. 2013) (noting that the scienter is willfulness).  Similarly, the Superseding Indictment clearly pleads the elements of wire fraud stating that the defendant:

> **for the purpose of executing and attempting to execute the scheme to defraud** [defined as a scheme and artifice to defraud DJ Bennett Investors and Lenders, and to obtain money and property from DJ Bennett Investors and Lenders, by means of materially false and fraudulent pretenses, representations, promises, and omissions] **did knowingly and intentionally transmit** and cause to be transmitted **by means of wire communication, in interstate and foreign commerce,** writings, signs, signals, pictures, and sounds, to wit, **BENNETT** transmitted and caused to be transmitted the following [listing, by count, the approximate date and specific details of each wire transmission]

*See United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012) ("The essential elements of a wire fraud offense are (1) the existence of a scheme to defraud and (2) the use of a wire communication in furtherance of the scheme").

Despite the defendant's contention, the law does not require the Government to allege which specific misrepresentation was made to each victim, or how, where, or when these misrepresentations were made for either wire fraud or securities fraud.  Securities fraud, for instance, does not require the Government to prove any misrepresentation; the crime can be proven

25

through an intentional omission made in connection with the sale of a security. *See SEC v. Pirate Investor LLC,* 580 F.3d at 239. While wire fraud requires proof of a scheme to defraud, the indictment does not need to allege any sort of specific misrepresentation in connection with that scheme to defraud.[4]

While the alleged omitted factors may be essential to prove the elements of the offenses <u>at trial</u>, they are not critical to a legally sufficient pleading. *See, e.g. United States v. Hooker*, 841 F.2d 1225, 1231-32 (4th Cir. 1988) (holding fatal the indictment's failure to allege that the enterprise had an effect on interstate commerce in a conspiracy to violate 18 U.S.C. § 1962(c), noting that the missing interstate commerce element was necessary to establish the Court's jurisdiction); *accord Stirone v. United States*, 361 U.S. 212, 218 (1960) (Hobbs Act indictment must charge effect on interstate commerce); *United States v. Moore*, 185 F.2d 92, 94 (5th Cir. 1950) (indictment for Fair Labor Standards Act violation must show defendants were engaged in interstate commerce or otherwise within coverage of the Act); *United States v. Diecidue*, 603 F.2d 535, 546 (5th Cir. 1979) (holding that an effect on interstate commerce is an essential element of a RICO offense). The securities fraud and the wire fraud charges at issue in the Superseding Indictment sufficiently allege all of the essential elements of the crimes charged.

The Superseding Indictment in this case gives the defendant adequate notice of the charges and is sufficient to allow the defendant to plead it in another prosecution. The Superseding Indictment also provides the defendant with precise details regarding the specific securities fraud

---

[4] Upon a <u>proper showing</u>, if the Defendant requires knowledge of certain facts in order to adequately prepare her defense, she can obtain this information through a bill of particulars. *United States v. Kelley*, 462 F.2d 372, 374 (4th Cir. 1972) (upholding the sufficiency of an indictment charging receipt of stolen property where the indictment parroted the words of the statute). As discussed further below, the Defendant has not made this showing.

and wire fraud counts she must defend against. The counts at issue incorporate by reference fifteen introductory paragraphs that provide details about the defendants' backgrounds, DJB Holdings' ownership and control, the bank accounts at issue, general information about the origin of the scheme and the victims. In addition, the counts at issue include four paragraphs discussing the purpose of the fraud; and twenty paragraphs detailing the manner and means of the scheme, including specifics about the misrepresentations that were made, the time period at issue, and the instruments used to obtain financial commitments from various individuals. For example, the Superseding Indictment states that the defendants "intentionally overstated DJB Holdings' sales to DJ Bennett Investors;" that the defendants "intentionally understated DJB Holdings' liabilities to DJ Bennett Investors;" they "made false and misleading statements about the manner in which and the purpose for which the DJ Bennett Investor funds would be used;" they continued to deceive and defraud DJ Bennett Investors "by making false and misleading statements about DJB Holdings' ongoing financial condition;" and that the defendant "promised DJ Bennett Investors high rates of return, with little to no risk, typically 15% after nine months, knowing that such returns were not realistic." (ECF No. 110).  Moreover, each of the charges at issue refer to a date that the security was purchased or the wire transaction took place, along with the purchase price of the security or the amount of the wire transmission. An indictment need not be so detailed that it can, standing alone, bar a later prosecution – if double jeopardy is claimed, the court must look at the indictment as well as the record from the prior proceeding. *United States v. American Waster Fibers Co., Inc.,* 809 F. 2d 1044, 1047 (4th Cir. 1987) (per curiam). The Superseding Indictment in this case certainly meets this threshold.

In her motion, the defendant does not contend that the Superseding Indictment is so imprecise as to make her unable to prepare her defense or to be aware of the charges against her.

Nor does the defendant allege that the Superseding Indictment's perceived flaws otherwise specifically impair her ability to defend herself. Instead, she simply points to the fact that the Superseding Indictment is not as specific as it could have been and complains that this defect is fatal.[5]  The defendant has not demonstrated any prejudice, and her claim must be rejected. Because the counts at issue in this case sufficiently indicate the elements of the offenses, fairly inform the defendant of the exact charges, and protect the defendant against double jeopardy, the defendant's motion to dismiss should be denied.

## IV.    The Defendant's Motion for Bill of Particulars (ECF No. 79) and Supplemental Motion for Bill of Particulars (ECF No. 139) Should Be Denied.

The defendant has requested a bill of particulars that sets forth (1) the identities of all alleged victims, (2) the loss amount for each victim, (3) the dates on which the victims sent the defendant money, (4) the methods by which the victims sent the defendant money, and (5) the specific misrepresentations that were made to investors and when those alleged misrepresentations were made. (ECF Nos. 79 and 139). The defendant's motions should be denied.

A defendant is not entitled to a bill of particulars as a matter of right.  *See Wong Tai v. United States*, 273 U.S. 77, 82 (1927).  Nor is a bill of particulars intended to serve as the equivalent of answers to interrogatories in a civil case.  Rather, a bill of particulars is a defendant's means of obtaining specific information in the event of an impermissibly vague indictment.  As set forth above, an indictment is sufficient if it alleges the essential elements of the crime with which a defendant is charged in a manner that permits the defendant to prepare a defense and plead double

---

[5] Ironically, in a separate motion, the Defendant has moved to strike the affidavit in support of the complaint in this case, alleging that there is surplusage in that document, essentially arguing that the affidavit is *too specific* for her liking.  (ECF No. 137.)

jeopardy in any future prosecution for the same offense. *See* Fed. R. Crim. Proc. 7(c) ("The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ."). *See also Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. American Waste Fiber Co.*, 809 F.2d 1044, 1046 (4th Cir. 1987). As long as the indictment fulfills these purposes, a bill of particulars is unnecessary and its denial does not constitute an abuse of discretion.[6] *See United States v. Butler*, 885 F.2d 195, 199 (4th Cir. 1989). Moreover, "[a] bill of particulars is not to be used to provide detailed disclosure of the government's evidence in advance of trial." *United States v. Automated Medical Labs., Inc.,* 770 F.2d 399, 405 (4th Cir. 1985). *See also United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996); *United States v. Anderson*, 481 F.2d 685, 690 (4th Cir. 1973) (noting that the function of bill of particulars is not to provide detailed disclosure of government's evidence in advance of trial, but to supply essential detail that may have been omitted from the indictment); *Hemphill v. United States*, 392 F.2d 45, 49 (8th Cir. 1968) ("Acquisition of evidentiary detail is not the function of the bill of particulars"). A bill of particulars is still more inappropriate when the government supplements an indictment with extensive discovery. As the Fourth Circuit held in *United States v. SIGMA*, 624 F.2d 461, 466 (4th Cir. 1979), such "extensive disclosure by the Government" renders a bill of particulars inappropriate.

Here, because the Superseding Indictment omits no essential detail, tracks the statutory language, allows the defendant to prepare her defense, and would serve as a bar to double jeopardy in a later overlapping prosecution, the defendant's motion for a bill of particulars should be denied.

---

[6] A motion for a bill of particulars is left to the sound discretion of the court whose decision to deny a bill of particulars will be overturned only if it rises to the level of abuse of discretion. *Wong Tai*, 273 U.S. at 82; *United States v. Bales*, 813 F.2d 1289, 1294 (4th Cir. 1987).

Furthermore, the defendant already has the information purportedly sought.  The Superseding Indictment in this case is a "speaking indictment," that contains much, if not all, of the detail the defendant now specifically seeks.  In addition, the voluminous discovery provided in this case is more than adequate to allow the defendant to prepare her defense and avoid surprise.  The Government also has provided an extensive 36-page affidavit in support of a criminal complaint, as well as search warrant affidavits detailing the investigation and evidence of the defendant's criminal conduct.

Interestingly, the defendant has moved to strike the affidavit in support of the criminal complaint, alleging that there is surplusage contained in that document.   (ECF No. 137).  On the one hand, the defendant appears to be arguing that there is *too much* information in one charging document yet *not enough* information in the other. It is also worth noting that defense counsel has represented, at least at one point, that is not a complex case, and that defense counsel could be prepared to try this case as early as July 2016. (ECF No. 145.)  Both of these motions highlight the gratuitous nature of the defendant's demand for a bill of particulars.  The defendant has failed to establish that a bill of particulars is necessary to prepare a defense, avoid undue surprise, and protect against double jeopardy in the case of subsequent charges involving the same conduct.  Nonetheless, the Government briefly responds to the defendant's specific requests.

A.      **The defendant already has in her possession (1) the identities of all alleged victims, (2) the loss amount for each victim, (3) the dates on which the victims sent the defendant money and  (4) the methods by which the victims sent the defendant money.**

The defendant already has in her possession the names of the investor victims in this case.  For instance, as part of the defendant's release conditions that were litigated extensively throughout the Fall of 2017, the defendant was ordered not to contact a list of 40 individuals.  The Government represented in Court on several occasions that this list included investor victims and

specified who those victims were.  Moreover, on December 3, 2017, the Government disclosed to the defendant the names of the Investor Victims who were specifically referenced by anonymized letter in the Superseding Indictment. The amounts, dates, and methods by which the victims were defrauded of their funds is already in the possession of the defendant, in the bank statements produced by the Government (and already accessible to the defendant, since they were her bank accounts).

The Government's disclosures throughout the course of this case further obviate the need for a bill of particulars.  *See United States v. W.*, 877 F.2d 281, 293 (4th Cir. 1989) ("In the absence of any showing of unfair surprise, we find no error in the district court's denial of [the] motion for a bill of particulars to discover the identities of unnamed 'Known Individuals' referred to in the indictment.") (citing *United States v. Jackson,* 757 F.2d 1486, 1491 (4th Cir. 1985) (finding no abuse of discretion in denial of motion for bill of particulars seeking the names of persons alleged to be in the conspiracy)); *United States v. Ahmad*, No. 1:14CR164 JCC, 2014 WL 2766121, at *7-8 (E.D. Va. June 18, 2014) ("Defendant's request for the Government to identify all persons alleged to have participated in the conspiracy goes beyond the limited, enumerated purposes for which it is proper to require particularization."); *United States v. Frye*, No. 5:01-CR-30058, 2002 WL 385574, at *1 (W.D. Va. Feb. 20, 2002) ("the government is not required to reveal the names of unindicted co-conspirators or to disclose the identities of other persons present when the offenses took place") (citing *United States v. Rey,* 923 F.2d 1217, 1222 (6th Cir.1991)); *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990)). Moreover, the victim information that the Government provided in this case further enables the defendant to conduct her own investigation and significantly diminishes the chance that the defendant will be surprised at trial.  *See United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) ("a bill of particulars… is intended to give the

defendant only that minimum of information necessary to permit the defendant to conduct [her] own investigation"). As such, the defendant is not entitled to a bill of particulars on these items.

**B.    The law does not require the government to identify every false or misleading statement the defendant made, whether included in the Superseding Indictment or not.**

In light of the detailed Superseding Indictment and the extensive discovery the Government has provided, the defendant is not entitled to a bill of particulars that identifies "every false or misleading statement or misrepresentation [that the defendant] made, whether identified in the Superseding Indictment or not, including when and how the misrepresentation was made and to whom." The Superseding Indictment provides details about the misrepresentations that the defendant made and puts the defendant on notice of the types of misrepresentations that form the basis for the charges. For example, paragraph 21 of the Superseding Indictment states that Bennett and Mascho overstated DJB Holdings' sales and understated DJB Holdings' liabilities to DJ Bennett Investors; that they made false and misleading statements about the manner in which and the purpose for which the DJ Bennett Investors' funds would be used; that they made false and misleading statements about DJB Holdings' financial condition, and they drafted investor affidavits that misrepresented that Bennett had explained the risks of investing in DJB Holdings. Further, paragraph 21 of the Superseding Indictment alleges that Bennett promised DJ Bennett Investors high rates of return with little to no risk, knowing that such returns were unrealistic and that Bennett misrepresented to investors that their investments and loans were highly liquid and were guaranteed by the company's inventory, assets, and by her personally. This paragraph is incorporated by reference into the substantive wire fraud counts that the defendant requests information about. The overt acts set forth in each conspiracy count of the Superseding Indictment shed additional light on the defendant's misrepresentations. For instance, some of the overt acts listed paragraph 22 state as follows:

32

b. On or about March 17, 2015, BENNETT sent an email to Victim A that included a DJBennett.com Business Plan that contained false and misleading statements about DJBennett.com's financial condition, including a profit and loss statement that overstated DJBennett.com's sales.

e. On or about June 3, 2015, BENNETT sent Victim A an email that contained false and misleading statements regarding DJBennett.com's revenue.

s. On or about October 23, 2015, BENNETT sent an email to MASCHO and Victim C that contained DJ Bennett offering documents and that promised the investment was fully liquid.

The affidavit in support of the criminal complaint and the numerous search warrants in this case also contain details regarding the defendant's numerous misrepresentations to investors and others. For instance, the affidavits detail several emails in April 2016 between Bennett and an investor. The emails and the affidavits make it clear that Bennett has knowingly solicited this particular investor's entire life's savings and promised him a guaranteed rate of return of 15% without risk.  In emails from June and July 2017, Bennett learns that she is facing a potential lawsuit for non-payment of her Cowboys Stadium lease for the 2016 football season. She responds to the Dallas Cowboys General Counsel that she was in Hong Kong, although there was no international travel on file for her during this time period.

Any additional information requested by the defendant regarding the specific misrepresentations she made to investor-victims are not "essential facts" to the offenses and need

not be provided.  The information defendant seeks "relates to the government's evidence, not the charges against [her]; a bill of particulars is not an appropriate vehicle for th[ese] request[s]." *United States v. Johnson*, Crim. No. WDQ-10-0799, 2011 WL 6202847, at *7-8 (D. Md. Dec. 7, 2011) *aff'd sub nom. United States v. Graves*, 545 F. App'x 230 (4th Cir. 2013) (citing *Automated Med. Labs.*, 770 F.2d at 405).  The defendant's requested particulars are simply discovery requests, in the vein of civil interrogatories, and do not require responses in the form of a bill of particulars. *Id.*

Courts that have considered similar requests have denied their proponents' motions for a bill of particulars.  *See United States v. Wey*, 2017 U.S. Dist. LEXIS 6991, 48, 67 (S.D.N.Y. Jan. 18, 2017) (denying defendant's request for information identifying each false or misleading statement alluded to in the indictment that charging securities fraud and wire fraud, among other charges; *United States v. Welch*, 198 F.R.D. 545, 552, 2001 U.S. Dist. LEXIS 885 (D. Utah January 12, 2001) (granting, in part, defendant's request for bill of particulars in Salt Lake City Olympic Bribery Scandal case, but denying defendant's specific request for bill of particulars regarding information based on allegations of misrepresentation of concealment, finding that the methods and substance of the misrepresentations were provided in the indictment and the particular specifics of the concealments and misrepresentations were matters of evidence); *accord United States v. Tuzman et al*, 2015 U.S. Dist. LEXIS 173780 (S.D.N.Y. Dec. 30, 2015) (denying defendant's request for a bill of particulars identifying the specific purchases and sales of securities, other than those specifically alleged in the indictment, given the Government's discovery disclosures).

The defendant's request appears to be a thinly-veiled attempt to seek information regarding investor-victims who may testify against her at trial.  Under the Jencks Act, however, at this early

stage in the criminal proceedings, the defendant is not presently entitled to pretrial disclosure of information related to the government's witnesses.  The Jencks Act provides in relevant part:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500.  The district court may not require the government to produce Jencks Act material relating to its witnesses until after the witness has testified. *See e.g., United States v. Roseboro*, 87 F.3d 642, 645 (4th Cir. 1996); *United States v. Lewis*, 35 F.3d 148, 150-51 (4th Cir. 1994); *United States v. Peterson,* 524 F.2d 167, 175 (4th Cir.1975) (quoting *United States v. Harris,* 458 F.2d 670, 679 (5th Cir. 1972) ("a Jencks Act request is wholly inappropriate in a pretrial motion for discovery")).  In *Lewis*, the Court explicitly stated that a district court's order to produce all Jencks Act material prior to trial is "plainly inconsistent with the language of the [Jencks] Act." *Id.*, 35 F.3d at 150.

Additionally, the discovery agreement between the parties in this case states that the Government will provide Jencks and *Giglio* materials to the defendant one week before trial, assuming the defendant complies with her obligations under the agreement.  The defendant cannot circumvent the timing of the Jencks Act or the timing of the discovery agreement by filing a pretrial motion for a bill of particulars.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny the defendant's motions.

Respectfully submitted,

Stephen M. Schenning

35

Acting United States Attorney

By:   */s/ Erin B. Pulice*
Erin B. Pulice
Thomas B. Windom
Gregory D. Bernstein
Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record in this case.

_____*/s/ Erin B. Pulice*_____
Erin B. Pulice
Assistant United States Attorney