## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**UNITED STATES OF AMERICA**                    **Criminal Action No. PX-17-0472**

**v.**

**DAWN BENNETT, et al.**                                        **DEFENDANT**

### MOTION TO SUPPRESS EMAIL CONTENT FROM SEARCH WARRANTS

\* \* \* \* \* \* \* \*

Pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure and the Fourth Amendment of the United States Constitution, Defendant Dawn Bennett moves this Court to suppress all e-mail content produced by Microsoft Corporation to the Government pursuant to search warrants, and all evidence derived therefrom. This motion is supported by the accompanying memorandum.

Respectfully submitted,

 *s/ Ryan K. Hart*
Ryan K. Hart
Bar No. 20355
*Counsel for Defendant Dawn Bennett*
Email:  rhart@dickinsonwright.com
DICKINSON WRIGHT PLLC
1825 I Street, N.W., Suite 900
Washington, DC 20006
T:  (202) 466-5951
F:  (844) 670-6009

# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

**UNITED STATES OF AMERICA**                    **Criminal Action No. PX-17-0472**

**v.**

**DAWN BENNETT, et al.**                                                      **DEFENDANT**

## MEMORANDUM IN SUPPORT
## OF MOTION TO SUPPRESS SEARCH WARRANTS

\* \* \* \* \* \* \* \*

The email content produced to the Government by Microsoft Corporation pursuant to a search warrant issued on May 20, 2016, should be suppressed because the warrant was not supported by probable cause.  The warrant, on its face, lacked a sufficient nexus to justify the search of Dawn Bennett's emails.

Subsequent warrants to search Ms. Bennett's emails were based upon information obtained from the invalid warrant.  Accordingly, suppression of these search warrants is also necessary.[1]

## FACTS

1.      **May 20, 2016 Search Warrant**

On May 20, 2016, FBI Special Agent Keith Custer ("SA Custer") submitted an affidavit in support of a search warrant for Ms. Bennett's email contents.  *See* Exhibit A.  SA Custer alleged Ms. Bennett had engaged in a scheme to defraud, and that probable cause existed that Ms. Bennett's email address, dbennett@djbennett.com, had been used to communicate directly with

---

[1] Ms. Bennett previously filed a Motion to Dismiss Wire Fraud Charge, [ECF No. 78]; a Motion for a Bill of Particulars, [ECF No. 79]; a Motion to Dismiss Securities Fraud Conspiracy and Substantive Securities Fraud Counts for Lack of Venue [ECF No. 136]; a Supplemental Motion to Dismiss Wire Fraud and Wire Fraud Conspiracy Charges and to Strike Criminal Complaint [ECF No. 137]; a Supplemental Motion to Dismiss Certain Substantive Securities Fraud and Wire Fraud Counts [ECF No. 138]; and a Supplemental Motion for a Bill of Particulars, [ECF No. 139.] Ms. Bennett re-asserts each of these motions.

individuals to convince them to invest in DJBennett.com.  *See* Affidavit at ¶ 6.  SA Custer further stated there was probable cause to believe the dbennett@djbennett.com email address was used to:

*       direct the individuals to wire money to funds or accounts owned by Ms. Bennett;

*       send investment information to investors;

*       communicate between co-conspirators to execute the alleged scheme to defraud;

*       communicate between co-conspirators to provide updates regarding the progress of the alleged scheme;

*       communicate between co-conspirators and third parties related to the existence of co-conspirator assets; and

*       receive communications from financial institutions regarding banking transactions in which proceeds of the scheme were received and/or distributed.

*Id.*  The warrant sought disclosure of all of the dbennett@djbennett.com emails from January 1, 2012 through May 20, 2016.

SA Custer's affidavit explains the Government's investigation began when he received information from the Securities and Exchange Commission concerning Ms. Bennett.  *See* ¶¶ 7-8.  SA Custer then details financial transactions involving Ms. Bennett's bank accounts.  *See* ¶¶ 11-19.

SA Custer's affidavit references dbennett@djbennett.com only three times.  In paragraph sixteen, SA Custer details Ms. Bennett's use of her email address to communicate with the Dallas Cowboys' general counsel regarding the lease of a suite at Cowboys Stadium.  The Dallas Cowboys are not alleged to be victims of Ms. Bennett, nor were any fraudulent or misleading financial documents alleged to have been sent to the Dallas Cowboys.

In paragraph twenty-six, SA Custer asserts that Mr. Mascho[2] testified at a FINRA proceeding in November 2015 that Ms. Bennett directed him to send proposed note offering documents to investors.  SA Custer, apparently, did not speak to Mr. Mascho himself to confirm Mr. Mascho's relationship with Ms. Bennett or Mr. Mascho's position at DJBennett.com, nor did SA Custer identify any investors that received these documents.  Further, SA Custer did not identify how any of these documents were fraudulent.  Finally, the alleged emails came from Mr. Mascho and his email address, not Ms. Bennett's email address.

The final reference to Ms. Bennett's email is found in paragraph twenty-seven.  According to the affidavit, Ms. Bennett sent various emails to United Bank "to communicate with bank personnel related to her personal and business finances."  *Id.* at ¶ 27.  The Government further notes that on February 25, 2015, Ms. Bennett emailed S.N. and "appear[ed] to solicit him with an investment opportunity, possibly the same opportunity offered to Individual 1 and the other investors that year."  *Id.*  Finally, on September 17, 2015, Ms. Bennett emailed K.P. to request a payoff letter for her mortgage.  No further references to Ms. Bennett's email are contained in the affidavit.

## 2.    December 19, 2016 Search Warrant

On December 19, 2016, SA Custer submitted a second search warrant for Ms. Bennett's dbennett@djbennett.com emails, seeking all content from May 20, 2016.  *See* Exhibit B.  In support of this application, SA Custer re-iterated the allegations of his May 20, 2016 affidavit.  *See* Affidavit, ¶¶ 1-28.  SA Custer then supplements these allegations with emails obtained from the May 20, 2016 warrant.  *Id.* at ¶¶ 29 -33.  Based upon this application, a warrant was issued to search Ms. Bennett's emails after May 20, 2016.

---

[2] Mr. Mascho's first name was not disclosed in the affidavit.

3.      **July 18, 2017 Search Warrant**

On July 18, 2017, SA Custer submitted a third search warrant for Ms. Bennett's dbennett@djbennett.com emails, seeking all content from December 19, 2017.  *See* Exhibit C.  In support of this application, SA Custer again re-incorporated his prior affidavits.  *See* Affidavit at ¶ 7.  SA Custer then supplements these allegations with emails obtained from the December 19, 2016 warrant.  *Id*. at ¶¶ 20 – 26.  Based upon this application, a warrant was issued to search Ms. Bennett's emails after December 19, 2017.

## ARGUMENT

People have a reasonable expectation of privacy in their emails.  *See, e.g., United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010) ("a subscriber enjoys a reasonable expectation of privacy in the contents of emails 'that are stored with, or sent through, a commercial [internet service provider.]"); *In re Grand Jury Subpoena*, 828 F.3d 1083, 1090 (9th Cir. 2016) ("Personal email can, and often does, contain all the information once found in the 'papers and effects' mentioned explicitly in the Fourth Amendment."); *United States v. Ali*, 870 F. Supp. 2d 10, 39 n.39 (D.D.C. 2012) ("We recognize individuals have a reasonable expectation of privacy in the content of emails stored, sent, or received through a commercial internet service provider.").  This expectation of privacy can be invaded by the Government only upon the issuance of a valid warrant supported by probable cause.  *See* U.S. Const. amend. IV.

Probable cause to search "exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in a particular place.  *Ornelas v. United States*, 517 U.S. 690, 696 (1996).  A court reviewing a magistrate's determination of probable cause does not assess the existence of probable cause *de novo*.  Instead, the court's task is to ascertain whether the magistrate had a substantial basis for concluding that probable cause existed.  *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

While the magistrate's determination is afforded deference, a reviewing court's assessment of probable cause "may look only at the evidence provided to the magistrate, as well as any reasonable inferences that may be drawn therefrom." *Id*. at 235.

The Government lacked probable cause to search Ms. Bennett's emails.  Here, the application for the May 20, 2016 search warrant is deficient because it fails to establish a nexus between the evidence sought (all of Ms. Bennett's emails for more than a four-year period) "and that evidence's ability to aid in the apprehension or conviction of the alleged crime's perpetrator." *See State v. Powell*, 325 P.3d 1162, 1166 (2014).

SA Custer alleged there was probable cause that Ms. Bennett had used her email to "direct the individuals to wire money to funds or accounts" owned by Ms. Bennett.  Ex. A at ¶ 6. Yet the affidavit does not identify a single investor that received an email from Ms. Bennett.  Therefore, SA Custer had no basis to assert that Ms. Bennett used her email to direct investors to wire money to her.  SA Custer also alleged there was probable cause to believe Ms. Bennett used her email to send investment information to investors, communicate with "co-conspirators" to execute the alleged scheme, "provide updates regarding the progress of the alleged scheme," and communicate with co-conspirators and third parties "related to the existence of co-conspirator assets." *Id*.  Yet the affidavit does not identify a single email that Ms. Bennett sent to any alleged co-conspirator, the date of any email, or the content of the email sent to the alleged co-conspirator.   SA Custer merely asserts that Ms. Bennett is conducting a fraudulent scheme and assumes she used her email in furtherance of this scheme.  Such speculation does not create probable cause.

Finally, SA Custer alleged that Ms. Bennett's email was used to receive communications from financial institutions "regarding banking transactions in which proceeds of the scheme were received and/or distributed." *Id*.  Again, the affidavit does not describe when the alleged emails

were sent, the recipients of the emails, or the nature of the "banking transactions."  Nor does the affidavit explain why it is necessary to search all of Ms. Bennett's' emails to identify banking transactions, rather than simply examining the relevant bank records.  Instead of probable cause, SA Custer had an educated guess as to what he might find in Ms. Bennett's emails.  Such a guess is constitutionally insufficient to authorize a search of Ms. Bennett's communications.

The three specific examples SA Custer sets forth in his affidavit also fail to create probable cause.  First, SA Custer says that Ms. Bennett used her email to communicate with the Dallas Cowboys regarding a suite.  *Id*. at ¶ 16.  The Cowboys, however, did not invest in Ms. Bennett's businesses and are not alleged to be victims.  More importantly, nothing in Ms. Bennett's email to the Cowboys' general counsel is evidence of a scheme to defraud investors of DJBennett.com.  No fraudulent financial statements were made to the Cowboys.  Rather, it shows only that Ms. Bennett used her email to communicate about football tickets.  This is not probable cause of a crime.

SA Custer next cites to Mr. Mascho's FINRA testimony from seven months earlier that Ms. Bennett directed Mr. Mascho to send "proposed note offering documents" to investors.  *Id*. at ¶ 26.  The affidavit does not identify dates of the alleged emails sent from Mr. Mascho, does not identify the fraudulent content of any documents, and does not identify any of the recipients of Mr. Mascho's emails.

There are several reasons Mr. Mascho's testimony does not create probable cause.  First, as SA Custer admits in his affidavit, email content remains on Microsoft's servers "until the subscriber deletes the email."  *Id*. at ¶ 20.  SA Custer states even if deleted, an email "*may* continue to be available on Microsoft Corporation servers for a certain period of time."  *Id*. (emphasis added.)  The length of the "certain period of time" is not defined, nor does SA Custer aver that a

"certain period of time" exceeds seven months.  Accordingly, SA Custer's assertion in ¶ 20, even if true, renders Mr. Mascho's testimony impermissibly stale.

Evidence received from a warrant that relies on stale information is not admissible in a trial to establish a defendant's guilt. *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir. 1984).  "A valid search warrant may issue only upon allegations of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Id*. at 1335–36 (quotation omitted).  According to the Fourth Circuit, staleness arises in two contexts. *Id*. at 1336.  "First, the facts alleged in the warrant may have been sufficient to establish probable cause when the warrant was issued, but the government's delay in executing the warrant possibly tainted the search." *Id*. Second, and relevant here, "the warrant itself may be suspect because the information on which it rested was arguably too old to furnish present probable cause." *Id*. (quotation omitted).  To determine whether probable cause was ever present, the court cannot simply "count[ ] the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Richardson*, 607 F.3d 357, 370 (4th Cir. 2010) (quoting *McCall*, 740 F.2d at 1336). Rather, the court "must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *McCall*, 740 F.2d at 1336.

Here, the affidavit fails to identify the date of any emails Mr. Mascho allegedly sent.  In the light most favorable to the Government, Mr. Mascho testified seven months prior to the issuance of the warrant that at some unspecified time in the past he had emailed "proposed note offering documents" to possible investors.  The affidavit fails to link any alleged victim to any fraudulent document.  There is no temporal link between the use of the email and the alleged

scheme to defraud.  Accordingly, Mr. Mascho's testimony – even if it could somehow be construed as evidence of fraud – is stale and cannot support a finding of probable cause.

In addition, there is no credible evidence that the emails Mr. Mascho sent included fraudulent statements.  SA Custer's affidavit does not reference a single alleged victim that received an allegedly fraudulent document via email.  Nor does it confirm whether the "proposed note documents" were the actual note documents any alleged victim signed.  Absent such basic information, Mr. Mascho's FINRA testimony does not provide probable cause to search all of Ms. Bennett's emails.

Most importantly, even if the Court were to excuse the lack of any evidence of criminal activity and the considerable staleness of Mr. Mascho's testimony, it would, at best, authorize a search of Mr. Mascho's emails.  Mr. Mascho did not testify that he used Ms. Bennett's email, or that she used her email to direct him to attempt to defraud investors.  Accordingly, Mr. Mascho's FINRA testimony does not provide probable cause to search Ms. Bennett's emails.

Finally, SA Custer references two emails Ms. Bennett sent her bank.  In an email dated September 17, 2015, Ms. Bennett apparently requested a payoff letter for her mortgage.  Exhibit A. at ¶ 27.  Requesting a payoff for one's mortgage is not probable cause of any crime.  SA Custer then cites an email Ms. Bennett sent to a bank employee apparently soliciting an investment opportunity.  SA Custer states this opportunity was "*possibly*" the same opportunity offered to other investors.  *Id*. (emphasis added.)  "Possibly" is not probable cause.  Regardless, Ms. Bennett never sent the bank employee the investment documents.  Accordingly, this email provides no probable cause to search all of Ms. Bennett's emails.  The Government's reliance on these emails highlights the paucity of evidence that Ms. Bennett used her email in furtherance of any fraudulent scheme.

The subsequent search warrants of Ms. Bennett's emails on December 19, 2016, and July 18, 2017, simply re-iterate these insufficient grounds for a search warrant and cite to emails obtained from the May 20, 2016 warrant.  Because these emails were impermissibly obtained, they cannot provide probable cause for the subsequent warrants.  *See Franks v. Delaware*, 438 U.S. 154, 172 (1984).  Under a *Franks* analysis, an affidavit's reference to inaccurate, improper, or illegally obtained evidence does not automatically invalidate a warrant. *Franks*, 438 U.S. at 172. Rather, the analysis is whether, having excised the offending information, the untainted portion of the affidavit fails to set forth probable cause. *Id*.; *United States v. Karo*, 468 U.S. at 719; *United States v. Allen*, 631 F.2d 164, 171-73 (4th Cir. 2011).

Here, once stripped of the emails obtained from the original warrant, the search warrant applications from December 19, 2016, and July 18, 2017, also fail, as both relied upon the probable cause allegations contained in the May 20, 2016 warrant.  Therefore, if the May 20, 2016 warrant is suppressed, all additional warrants must also be suppressed.

Suppression is the appropriate remedy.  "Ordinarily, when a search violates the Fourth Amendment, the fruits thereof are inadmissible under the exclusionary rule, 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *United States v. Doyle*, 650 F.3d 460, 466 (2011) (citing *United States v. Calandra*, 414 U.S. 338, 348 (1974)).  While "objectively reasonable reliance on a subsequently invalidated search warrant" frequently cannot "justify the substantial costs of exclusion" of evidence, where the information relied upon is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," exclusion is the appropriate remedy.  *United States v. Leon*, 468 U.S. 897, 922-23 (1984).

In order for a magistrate to conclude probable cause exists, a warrant application's supporting affidavit "must be more than conclusory and bare bones; it 'must provide the magistrate with a substantial basis for determining the existence of probable cause.'" *United States v. Matish*, 193 F. Supp. 3d 585, 602 (E.D. Va. 2016) (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).  This "substantial basis" does not exist in the May 20, 2016 warrant.  The warrant sought to obtain all of Ms. Bennett's emails for a period in excess of four years, but did not cite to a single email that was used in furtherance of the fraudulent scheme during this period.  There was no evidence presented to suggest that Ms. Bennett used her email to conduct a scheme to defraud.  Despite knowing the identity of numerous alleged victims, the Government failed to ask a single investor whether Ms. Bennett had ever sent them an email.  Despite alleging Ms. Bennett was conducting an illegal Ponzi scheme, the affidavit fails to identify a single false statement Ms. Bennett is alleged to have made via email, or a single email soliciting funds from an investor.

Instead, the bulk of the information contained in the affidavit concerns Ms. Bennett's lease of a suite at the Dallas Cowboys stadium, and generic allegations concerning SA Custer's background knowledge of email.  *See* Ex. A, ¶¶ 20-25.  Even if accurate, SA Custer's knowledge of how email is stored and used *generally* says nothing about Ms. Bennett's *specific* use of dbennett@djbennett.com.

Here, the search warrant application claimed Ms. Bennett had an email address.  It wholly failed to show that her email communications would provide evidence of any crime.  If Ms. Bennett's email can be searched based upon this affidavit, there is no limit to the Government's ability to invade the privacy of citizens' electronic communications.  The Government need only prove that an individual has an email account to gain unrestricted access to its contents.  The Fourth Amendment is designed to prevent such action by the Government.  Accordingly, the Court should

suppress all evidence obtained from Ms. Bennett's emails.  Additionally, the Court should suppress any and all evidence that would not have been obtained but for the Government's unconstitutional acquisition of Ms. Bennett's emails.  *See Nardone v. United States*, 308 U.S. 338 (1939) ("The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all.") (quoting *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920)).

## CONCLUSION

The application and affidavit in support of the search warrant used to obtain Ms. Bennett's email communications was constitutionally insufficient.  The search warrant should not have been issued.  Any information obtained directly or derivatively from the execution of the deficient search warrant should be suppressed.  For the reasons set forth above, the email communications and all evidence derived therefrom should be excluded.

Respectfully submitted,

 *s/ Ryan K. Hart*
Ryan K. Hart
Bar No. 20355
*Counsel for Defendant Dawn Bennett*
Email:  rhart@dickinsonwright.com
DICKINSON WRIGHT PLLC
1825 I Street, N.W., Suite 900
Washington, DC 20006
T:  (202) 466-5951
F:  (844) 670-6009

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and accurate copy of the foregoing was served via CMECF this 15th day of May 2018 to all applicable parties.

Respectfully,

 s/ Ryan K. Hart
Ryan K. Hart
Bar No. 20355
*Counsel for Defendant Dawn Bennett*
Email:  rhart@dickinsonwright.com
DICKINSON WRIGHT PLLC
1825 I Street, N.W., Suite 900
Washington, DC 20006
T:  (202) 466-5951
F:  (844) 670-6009