1
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
2
SOUTHERN DIVISION

3

4
UNITED STATES OF AMERICA  :  Criminal Action No.

5
     v.                   :  PX-17-0472

6
DAWN J. BENNETT,          :  Greenbelt, Maryland

7
          Defendant.      :  Thursday, May 24, 2018

8
_____/  3:06 P.M.

9

10
TRANSCRIPT OF DETENTION REVIEW PROCEEDINGS
BEFORE THE HONORABLE PAULA XINIS
11
UNITED STATES DISTRICT JUDGE

12
APPEARANCES:

13
FOR THE GOVERNMENT:     THOMAS WINDOM, ESQUIRE
                        Office of the United States Attorney
14
                        6406 Ivy Lane, Suite 800
                        Greenbelt, Maryland  20770
15
                        301-344-4433

16

17
FOR THE DEFENDANT:      RYAN KANE HART, ESQUIRE
                        ANDREW L. SPARKS, ESQUIRE
18
                        Dickinson Wright, PLLC
                        1825 "I" Street, NW, Suite 900
19
                        Washington, D.C.  20006
                        202-466-5951
20

21

22

23
OFFICIAL COURT REPORTER:  LINDA C. MARSHALL,(301) 344-3229

24
     COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES

25

1               P-R-O-C-E-E-D-I-N-G-S

2          MR. WINDOM:  We're here for detention review hearing

3  in United States versus Dawn Bennett, Criminal Number

4  PX-17-0472.  Thomas Windom for the United States.  With me at

5  counsel table is FBI Special Agent Keith Custer.

6          THE COURT:  Okay.  Welcome to you both.

7          MR. HART:  Good afternoon, Your Honor.  Ryan Hart and

8  Andrew Sparks on behalf of Dawn Bennett seated between us.

9          THE COURT:  Okay.  Welcome to you all.

10          We're here to review my detention order in

11  Ms. Bennett's case.  And as we discussed last time we were all

12  together, primarily the reason why I'm considering possibly

13  releasing Ms. Bennett is because of her changed medical

14  circumstances.

15          And I have received the defense's supplement and I

16  appreciate it.  I have reviewed all of the medical records,

17  including the report which I consider to be from Dr. Gerber, a

18  review of records that then without -- he hasn't had the

19  opportunity to physically examine Ms. Bennett, but he has had

20  the opportunity to review those who have and the records,

21  medical records that were memorialized.  And I take his opinion

22  to heart with regard to how he helps me interpret the record.

23  So, I'm using it for that purpose.

24          I've also received the government's response to the

25  defense submission as well as the defense reply.

1        So where I am right now is I am struggling to find

2   conditions that will reasonably assure appearance,

3   non-obstruction and no danger to the community while also

4   meeting Ms. Bennett's medical needs.

5        I think what makes sense, at least in my view, is

6   start with the government's position and any supplemental

7   information the government wishes to provide, and then I'll turn

8   to you all.

9        MR. WINDOM:  Thank you, Your Honor.  I think we're one

10  consent form away from being able to have enough information for

11  Your Honor to make a decision on this.

12       I do not understand why there is not a single medical

13  record in the last two months during which time

14  Ms. Bennett has been in an infirmary for at least a month of

15  this and the medical conditions on which the expert has opined

16  may have been addressed.  There may have been additional

17  information.

18       And I say that not in the blind.  I say that having

19  listened to some of the jail calls the defendant has made.  And

20  in those jail calls, she discusses information that were they

21  truthful and accurate, were that information truthful and

22  accurate would seem to support the defendant's position that

23  Your Honor should release her on some restricted basis.

24       THE COURT:  Well, one thing, let me tell you,

25  Mr. Windom, that I have learned is that the new placement that

1    Ms. Bennett is at involves a new medical provider who has not

2    been, it's my understanding, so forthcoming with the records.

3           MR. WINDOM:  Yes, ma'am.  And I believe that's with

4    respect to the marshals -- with a patient and as have been done

5    with the records here from the two different facilities from

6    which they acquire records.  It's a waiver form that can be sent

7    to the provider and then the records can be viewed by Your Honor

8    in order to determine whether or not these medical conditions

9    have been treated or treatable or exist at all.

10          THE COURT:  Well, let's ask defense, have you

11   attempted to get the records from the new provider?

12          MR. HART:  Your Honor, those, those records, they

13   don't exist because they haven't performed any of those

14   diagnostic tests.

15          THE COURT:  No, but I understanding is that

16   Ms. Bennett has had medical care at the current facility so

17   medical records would be generated.  Did you ask for them?

18          MR. HART:  We sought the medical records from the

19   Maryland University Hospital and those have not been provided to

20   us.

21          THE COURT:  How about at the facility?

22          MR. HART:  We've not asked for the Jessup records.

23          THE COURT:  Why not?

24          MR. HART:  Because, Your Honor, our position on the

25   serious condition, those haven't been treated at all.  So I'd be

1   providing you a record --

2          THE COURT:  But historically, one of the questions in

3   my mind has been compliance.  We've had issues with Ms. Bennett,

4   some might say, undermining her medical care by not going to the

5   appointments.  To the extent you have medical records which

6   belie that, which show she's going, she's participating in her

7   medical care, that would be helpful.

8          So, it's a little bit odd to me that with all the wood

9   that's been burned on things like discovery and, frankly,

10  quibbling back and forth about whether the scope of my order

11  involved argument versus just records, it would seem like

12  someone would have asked Jessup for these most recent records

13  which would show Ms. Bennett's compliance or lack thereof with

14  her medical appointments.

15         So it's a little bit strange to me that you haven't

16  asked for them.

17         MR. HART:  I guess the position of defense was that we

18  didn't have -- there would be no records that were substantive

19  to her medical condition.  My understanding is she is housed

20  currently in the infirmary and so --

21         THE COURT:  So, how could there not be medical

22  records.  She's housed at a place where every day her medical

23  care is at issue.  If she's housed at an infirmary, then every

24  day there is a record generated regarding her care.

25         MR. HART:  Yes, Your Honor.

1          THE COURT:  Okay.

2          MR. HART:  I'm not saying there aren't medical

3     records.  I'm saying to the extent that what I thought the

4     subject of today's hearing was on was some of these serious

5     medical conditions that have been potentially identified, our

6     understanding from communications with the doctor at the Wexford

7     facility, they are not doing diagnostic test on those.  They're

8     not treating that.

9          THE COURT:  But she's at the infirmary for that

10    reason.  She's at the infirmary because the level of her care

11    warranted moving to an infirmary.  It's just -- I mean, maybe

12    it's just a short -- a shortcoming on defense counsel's part to

13    not get the records, but frankly, it really doesn't make much

14    sense to me that you wouldn't do it, because it shows -- it

15    could corroborate, in fact, she needs constant care and/or would

16    corroborate that she's not getting it fast enough or in a way

17    that can accommodate her medical needs.

18          So, can you talk amongst yourselves about what you

19    might want to do to get those records for my review?

20          MR. HART:  Sure, Your Honor.

21          THE COURT:  Okay.  Let me hear again from you,

22    Mr. Windom.

23          MR. WINDOM:  Thank you, Your Honor.  I'll tell you my

24    basis --

25          COURT REPORTER:  Mr. Windom, can you step over to the

1  podium mic?

2         MR. WINDOM:  Yes, I'm sorry.

3         We're in hearing number 13, I think, and I hate to

4  have hearing number 14, I really do, but there's not a basis

5  upon which Your Honor can conclude that the defendant should be

6  released for some sort of medical necessity when the defense has

7  only put forth records through the end of March, which there --

8  I understand there's the expert report.  March 30th is the last

9  date of the medical record that was submitted here.

10        At the last hearing two weeks ago, Your Honor

11  discussed the importance of Ms. Bennett showing up at medical

12  appointments, you know, agreeing with treatment, whatnot.

13  The -- that information simply is not here and I don't

14  understand why.  And I think that this can be held over for a

15  week or two weeks or whatnot.

16        And one of the reasons that I suggest that is on one

17  of the calls to which I've listened, Ms. Bennett, to the extent

18  it's true has said to an individual that I -- non-criminal

19  counsel at Dickinson, Wright, Jeff Craven has scheduled a

20  surgery for June 22nd, which is a month from now.  I -- if that

21  is correct, why isn't that before the Court?

22        THE COURT:  Why isn't that before the Court?  Is that

23  true?

24        MR. HART:  Your Honor, I think Mr. Craven was

25  communicating with Howard University Hospital and recognizing

1    the potential for a release wanted to, at least, tentatively

2    hold a date.

3          THE COURT:  Okay.  Why aren't you telling me about

4    that then?  I mean, you've got a date, you've got a plan, you've

5    got surgery.  I have a report here that corroborates follow-up

6    diagnostics.  Why am I hearing from government counsel that

7    there is a surgery planned as if this release is a fait

8    accompli?  Someone has got to fill me in and be forthcoming

9    about what's going on the defense side.  That really is the keys

10   to the kingdom right now.  So why am I hearing about this from

11   the government?  What exactly is being coordinated to happen in

12   June?

13         MR. HART:  Your Honor, Mr. Craven has been in contact

14   with Dr. Coleman, who is -- who the medical records from Howard

15   University hospital were -- she's the person who put in that

16   ASAP order on the diagnostic surgery and then the various other

17   issues in that plan.

18         If you look on page 4 of Exhibit A.

19         THE COURT:  Page 4 of Exhibit A, okay.

20         MR. HART:  Fourteen of Exhibit A, you see there's an

21   assessment.

22         THE COURT:  Okay.

23         MR. HART:  And, Your Honor, I know -- and to the point

24   that we start talking about --

25         THE COURT:  Wait, wait.  Show me where we are for this

1   page 4 of Exhibit A.  I'm on, it says -- I counted four in, DJB

2   2987, page 3 of 3.  Am I in the right place?

3            MR. HART:  No, Your Honor, but to the extent we're

4   about to go into medical records, would it be possible to

5   approach the bench?  I know we have people in the courtroom who

6   I don't recognize, Your Honor.

7            THE COURT:  That's fine, sure.

8            Ms. Bennett, would you put your earpiece in so you can

9   hear?

10       (Bench conference.)

11           MR. HART:  Exhibit A, Your Honor.

12           THE COURT:  Let's make sure your client can hear.

13           Ms. Bennett, are you able to hear us?

14           MR. HART:  To step back a second, our submission here

15   today was our attempt to provide objective documentation which

16   we were asked to present.  We're prepared to discuss these

17   matters, but given the full background, I was just answering

18   your question today because we switched to the government.  So

19   we're prepared to talk about this thing, to present this

20   information.

21           What I was trying to avoid doing, at least, in the

22   documentation submitted is a proffer just from the knowledge

23   that I have such as about the scheduled surgery.  That's

24   information I am prepared to offer you today.

25           THE COURT:  Okay.  So, again, I'm sorry, I am not

1  counting angels on the head of a pin.  It just seems to me that

2  when asking for a client's release at detention hearing number

3  13, the fact of surgery is pretty much a front and center fact,

4  unless -- and the fact of potential surgery in the event she's

5  released.

6      So without going through the -- just tell me sort of

7  bottom line what the surgery is and what is its purpose.

8      MR. HART:  So, the bottom line is that because of the

9  hematoma, the blood in the urine, they have ordered these kind

10  of various medical procedures.  That is the diag --

11      THE COURT:  Cystoscopy bladder washing.

12      MR. HART:  Cystoscopy bladder washing, bladder biopsy

13  bilateral retrograde.  That procedure needs to be performed

14  under anesthesia.  It's diagnostic surgery.

15      There is possibility that it could be in out-patient

16  form, but there is also possibility that if they go in there and

17  find anything, it then transitions to, so to speak, a more

18  invasive surgery where they then are acting.

19      So -- and then I think Dr. Gerber explained that.  So

20  basically, there's real risk to it.  It's invasive surgery in

21  that you have to go up through the urethra and there's a lot of

22  risk involved.  So, that's what both Dr. Coleman, Dr. Gerber are

23  saying as neurologist needs to happen.

24      Mr. Craven has been in touch with Howard University

25  Hospital, has scheduled an appointment with the surgery to

1   perform this procedure is my understanding around the 21st, 22nd

2   of June, but it's just tentative.  And I don't want to come off

3   as presumptuous that we thought Ms. Bennett would be released

4   and have ability to go there, but the point is to hold that date

5   because timing is of the essence.  And they are prepared to go

6   forward with that date is my understanding performing that

7   surgery if Ms. Bennett is released.  I don't know if she has the

8   ability to go back to Howard University Hospital now that she's

9   in Jessup, because I think the health care provider has changed.

10          THE COURT:  Right, that's one of my concerns is I

11  don't think it's the same provider.

12          MR. HART:  That's the other indication is that

13  Mr. Craven has been in contact with the new doctor, Wexford, and

14  that person was not a urologist, does not intend to follow these

15  recommendations that have been laid out by Howard University

16  Hospital which our expert has agreed with.

17          And then something is brought up in the government's

18  motion on an out-of-state expert.  This isn't a situation where

19  we've presented you some expert who is saying she needs 64

20  surgeries.  All he did was come in and looked at the records and

21  said, I agree.

22          THE COURT:  I take Dr. Gerber's expert report as

23  really an interpretation of medical records.  And to the extent

24  there's corroboration that she needs the diagnostics, she needs

25  the diagnostics and she needs them as quickly as possible.  And

1  that's the spirit you're offering them for.

2      MR. HART:  Yes.

3      THE COURT:  So, here is where I am now that you've

4  explained that.  That was very helpful.

5      My information is that Wexford at Jessup has been very

6  difficult to deal with and that it was a Hobson's choice to move

7  Ms. Bennett because where she was, she could not get the level

8  of care that she needed.  But now that they moved her, she

9  almost has to go backwards because it's not the same provider.

10  And on top of that, Wexford is difficult.

11      I have also heard and I want to share with you that

12  from the corrections facility standpoint, Ms. Bennett has been

13  compliant.  So there hasn't been any instance where she is

14  canceling appointments and not participating in her own care, at

15  least from the institution's standpoint is what I've been told.

16      MR. WINDOM:  My concern, Your Honor, is we have no

17  idea what the appointments are or what the care is.

18      THE COURT:  You mean at the facility?

19      MR. WINDOM:  As I understand it, having gone on site

20  to Wexford, Wexford care, as I understand it she's at that

21  facility.

22      THE COURT:  That's my understanding is that she's been

23  moved from Jessup, but to the extent care is provided, it's

24  sounds like --

25      MR. WINDOM:  Well, it seems to me it would be easier

1   to get those records by HIPAA form or Court Order, because we're

2   operating in the blind off records that are two months old.

3           THE COURT:  Except the records from two months ago

4   suggests she needs diagnostic tests now and that they need to be

5   performed in a surgical setting.  And here is my concern -- two

6   concerns.  One is now I have to determine who has -- by virtue

7   of the facilities, records and an expert who is just doing a

8   records review a significant enough situation where she needs

9   follow-up surgical diagnostic care.  That's one.

10          Two, I'm not losing this trial date, I'm not.  So I

11  run the risk of them disadvantaging Ms. Bennett in terms of her

12  care and that is a reason and the very, very restrictive way to

13  release an individual when it cannot be accommodated in

14  combination with the fact that if we don't make some

15  arrangements, we'll be at the mercy of Jessup and Wexford, and

16  we could very well lose the trial date and I can't do that.

17  That's my concern.

18          MR. WINDOM:  I understand if she's not given the

19  treatment that she's supposed to be getting and I don't know why

20  she's in an infirmary setting of which counsel is having less

21  ability to meet with her.

22          THE COURT:  Well, in terms of that, the meeting is a

23  different aspect and we can talk about that, but my

24  understanding is that while she may be getting more appropriate

25  care where she is, it's harder to get to the bottom of it right

1    now and time is of the essence.  So the longer I wait, the

2    harder it is to get this, because what we can do and what I'm

3    considering is if I were to release Ms. Bennett, I'm going to

4    get weekly ex parte updates on her medical care, because I'm

5    going to confirm that she is not playing two ends against the

6    middle on that.  So I want to know what appointments she has,

7    who she has them with and that she's followed up and none have

8    been canceled.  And she is going to be escorted to those

9    appointments whether by family or by a member of the defense

10   team.  So, I want to put things in place where I got my finger

11   on the pulse of what's going on medically.

12           MR. WINDOM:  I propose then this:  If Your Honor is

13   inclined to release her on restriction, if the surgery isn't

14   until the 21st or 22nd of June, have her released a couple days

15   before that so that she can go to it.  And during that time,

16   whatever medical records exist can be obtained.  And so even if

17   Your Honor doesn't come back in here and have a hearing,

18   collectively the parties and Your Honor will have all the

19   information that exist right now that for whatever reason isn't

20   before us.  And that will -- and that will be plenty of time for

21   those records to appear.  That will still set in a date early

22   enough --

23           THE COURT:  We then have to discuss some other issues

24   with respect to follow-ups and tests before surgery because that

25   takes time as well as the other piece, which we don't have to do

1   at the bench, which is access to counsel.

2        MR. WINDOM:  I agree with the other parts of the --

3   it's just if I had information in terms of does she have to go

4   in the day before, does she --

5        THE COURT:  What's that?

6        MR. WINDOM:  Does she have to go in the day before?

7        THE COURT:  Right.  So we can hear from you further

8   on -- I mean, it seems to me that a June 21st-ish date would

9   have some follow-up --

10       MR. HART:  There's some sort of pre-op, I imagine, and

11   then I'm not sure what follow-up.  I think because of the nature

12   of that --

13       THE COURT:  Let's take the next step.  If I were to

14   release Ms. Bennett today, what's the next medical step she

15   takes?

16       MR. HART:  I mean, the first thing we'd be doing is

17   contacting Howard University Hospital and see if we can get an

18   appointment beforehand with Dr. Coleman and make sure that, you

19   know, everything is in line.  I mean, we have a surgery date,

20   but there could be additional work that's been done, blood work

21   that she would receive -- updated blood work sometimes for

22   procedures.  So a lot of times that's something that's part of

23   the pre-op process to make sure you're able for the surgery and

24   no other issues have shown up in the last few months.

25       So, I imagine Dr. Coleman may want to see her first

1    and may be time to react to that and still hold the date.

2            MR. WINDOM:  Your Honor, this is all noble

3    information.  I can't imagine what it might be.  Those

4    conversations could be had with defense counsel and the doctor,

5    and present a timeline to Your Honor of exactly what is needed

6    and exactly what is required instead of operating in the blind.

7    I don't think it's fair to anybody at this point.

8            THE COURT:  Well, I agree with you on that.  I think

9    we should get more of a timeline and it should be a phone call

10   to Dr. Coleman about what are the next steps and what would be

11   first appointment and what does she need to do in advance of

12   June 22nd in terms of pre-op, so we know what it is.

13           MR. HART:  I mean, in fairness, Your Honor, we were

14   not going through all the steps because, again, we didn't want

15   to be presumptuous.  We were just trying to tentatively hold the

16   surgery date.

17           MR. SPARKS:  Your Honor, certainly respect

18   Mr. Windom's position, but all this does is push this whole

19   process back further and further away.  So I do think the

20   prudent course of action here is to get her in as soon as

21   possible, perhaps, before the 21st, but request the absolute

22   first day and let her really take control of her medical care

23   right now as opposed to what Mr. Craven has to go and request

24   and get somebody to take her.  It would be responsible for us to

25   move this.

1    THE COURT:  Let me do this too.  This is all assuming

2 that there is a suitable third-party custodian who can

3 accommodate a release that will be exceptionally stringent.  It

4 also -- I haven't yet heard from the government on what else, if

5 anything, is of concern in the recorded conversations.  And

6 government did raise, at least, on its face some concern about

7 Mr. Bennett.  So I need to hear all that before I make an

8 ultimate determination.  The medical issue is the only part at

9 the bench.

10    Is there anything else regarding her medical situation

11 that you wish to address before we get into the other aspects

12 of -- that don't need to be at the bench.

13    MR. SPARKS:  May I have a moment to check with

14 Ms. Bennett?

15    (Pause.)

16    MR. HART:  We were just clarifying.  Our position is

17 that the surgery is tentatively scheduled for the 21st, 22nd.  I

18 mean, you know, again, I apologize we haven't obtained the

19 records.  My understanding from Mr. Craven is we were looking at

20 it from the viewpoint of these specific aspects and they haven't

21 been treated, so we didn't ask for the records just because we

22 would -- we were getting nothing to give to you.

23    So that is the only reason why.  We weren't thinking

24 of it in terms of the compliance factor.  I did talk to

25 Mr. Ashton from the marshals.  He also indicated she has not

1   skipped any appointments since at Jessup.  So, I didn't think

2   necessarily compliance was an issue.  I thought it was more a

3   issue of evidence of non-compliance.

4        THE COURT:  And so regardless of what I do today, what

5   I do want is a follow-up authorization, if you would get medical

6   records, one.

7        MR. HART:  From Jessup.

8        THE COURT:  Yes.  And two, as soon as possible find

9   out from Dr. Gerber what pre-op course of treatment will be.

10        MR. HART:  Dr. Gerber?

11        THE COURT:  I'm sorry, Dr. Coleman.

12        MR. HART:  The one from Howard?

13        THE COURT:  Yes, because he's the one whose going to

14   do the surgery.

15        MR. HART:  She.

16        THE COURT:  She.  She's going through Dr. Coleman.

17        MR. HART:  At Howard.

18        THE COURT:  So then hopefully, it will be nothing but

19   a phone call or two to confirm what the pre-op plan would be.

20   So again, regardless of what I do today versus on another day

21   very soon, those are two pieces of information I would like.

22        MR. HART:  It can be a little difficult to get in

23   touch with Dr. Coleman, getting calls, but she will return the

24   call at some point.

25        THE COURT:  Then get -- her medical staff has to know

1  what happens pre-op and there's of course -- there's a protocol

2  and so I need to know what the protocol is.

3          MR. HART:  Yes.

4          THE COURT:  All right.  Thank you.

5      (Open court.)

6          THE COURT:  All right.  I think that resolves, at

7  least, the medical presentation piece of this.

8          Mr. Windom, what else would you like me to know?

9          MR. WINDOM:  With respect to if the Court is

10  considering fashioning conditions for release, we just thought

11  it prudent for Your Honor to hear directly from the defendant's

12  father.  I know he was here six months ago or whatnot, but

13  things change.  So I thought it was prudent for him to say what

14  his schedule is, what his abilities are, whether there's anybody

15  else at home, what their views are, whether they will be

16  assisting in any way if Mr. Bennett has to go to the grocery

17  store, just to get more information.

18          The other reasons I -- that we thought the defense

19  package was unacceptable as we set forth in our filing

20  yesterday.  There is one -- we wondered why in the prior Release

21  Order back in ECF 43, back in September, Your Honor had ordered

22  a property bond on the defendant's two penthouses in Maryland to

23  be posted and to be filed -- that agreement to be filed in

24  Montgomery County.

25          It's come to our attention that notwithstanding

1    whether or not that was actually filed with the county, the

2    defendant, Ms. Bennett has put up one of the penthouses for sale

3    without any -- I don't even know how it's possible if in fact

4    there's something in the land deeds that prevent that.

5            It's been on the market three weeks now, since

6    May 4th.  It's on the market for two and-a-half million dollars.

7    There appears to be based on records probably 1.9, a million in

8    mortgage on that particular property.

9            Our concern is some sort of evasion of a prior Court

10   Order, which speaks to everything that we've discussed in all of

11   the many hearings.

12           Also our concern is that property as we set forth, the

13   mortgage on that property was paid for in part by fraud money,

14   so there's about 180 grand in fraud money, principal and

15   interest that based on our current assessment was paid toward

16   that mortgage.

17           Also, with Mr. Ulander's awareness of the document, I

18   was looking where in fact the agreement set forth that the

19   property had been filed with Montgomery County and I don't --

20   the record that's on Pacer doesn't reflect that has actually

21   been filed with the clerk in Montgomery County.

22           The record that I have is ECF 34-1, which only has

23   attached to it recordation of the $1 million unsecured bond in

24   the County and not the property.

25           THE COURT:  So not the proof that Ms. Bennett through

1    counsel went to land records, filed effectively the court lien

2    and then brought the proof of that back to court here?

3              MR. WINDOM:  Yes, ma'am.  And I may be reading this

4    wrong, but the only document that's in here as ECF 34-1 --

5              Hand it up if you like.

6              THE COURT:  Okay.  Mr. Ulander is handing me something

7    as well, so let's see what I got here.

8              All right.  It looks as if Judge -- Magistrate Judge

9    Sullivan issued an order to record agreement to forfeit property

10   in September of 20 -- September 25th, 2017.  Attached to that

11   appears to be the -- a receipt from the Recording Department,

12   Clerk of Circuit Court for Montgomery County apparently

13   recording this agreement to forfeit property.  And that should

14   still be in place unless it was revoked and released, which I

15   don't believe it ever was.

16             MR. WINDOM:  That's right.  The catch is there's

17   actually two different agreements.  This one reflected here is

18   ECF 34, the million dollar unsecured bond.  ECF 35, that's the

19   property bond.

20             THE COURT:  Well, I have here --

21             Mr. Ulander, which is it that you just handed up to

22   me?

23             THE DEPUTY CLERK:  That's 34-1 attached to the --

24             THE COURT:  34-1, Order to Record Agreement to Forfeit

25   Property.  And this is, though, Attached Agreement to Forfeit

1   Property to Secure Performance of a Bail Bond in the Land

2   Records of Montgomery County.  That's this order and then I have

3   a receipt attached.  And then a second Order to Record Agreement

4   to Forfeit Property, very similar, Defendant's Appearance Bond

5   and Agreement to Forfeit Property.  And then behind that,

6   another Receipt of Recordation.

7            MR. WINDOM:  Yes, ma'am, but the only order that's

8   attached to all of this is the million dollars unsecured bond.

9   The order about the property is not attached to this document

10  that I can see.

11           THE COURT:  Okay, okay.  When you -- let me see,

12  Mr. Windom, what you have.

13           MR. WINDOM:  Yes, ma'am.  I'll put it on the Elmo.

14       (A discussion was held off the record.)

15           MR. WINDOM:  So this is ECF 34-1, page 1.

16           THE COURT:  Okay.

17           MR. WINDOM:  And it's Order to Record Agreement to

18  Forfeit Property.  It doesn't specify what the property is.  So

19  you go to the second page, it has receipts again that property

20  is not specified and there's timestamps there 2:34 and 2:37.

21           Page 3 of this appears to be the same as page 1.  I

22  did not see a difference.  And again, it doesn't identify the

23  property.  Page 4 is the unsecured bond.  It's the million

24  dollar cash bond here.

25           THE COURT:  Right.

1          MR. WINDOM:  Now, page -- back page of that, page 6, I

2    guess is part of the validation that this was filed, but the

3    overall point is we don't have a record that ECF 35, which is

4    the property forfeiture, has been filed with the clerk of the

5    court, which is troubling.

6          Wasn't this counsel, but it was past counsel.

7          But that coupled with the fact that apparently she's

8    trying to sell her penthouse, which otherwise the Court has --

9          THE COURT:  I haven't released it.

10          MR. WINDOM:  That's fine.

11          THE COURT:  Okay.  What's going on with this?

12          MR. HART:  Your Honor, Mr. Craven, my colleague did

13    speak with Janet Fletcher in the clerk's office and said that

14    the one million unsecured bond and the property lien on

15    5610 Wisconsin Avenue are still in place and available, and that

16    absent any instruction from the Court, those will remain in

17    place.

18          THE COURT:  I'm sorry, that the -- say that again?

19          MR. HART:  That the $1 million unsecured bond and the

20    property lien on 5610 Wisconsin Avenue, Chevy Chase, Maryland,

21    they're still in place and available.  And that absent any

22    instruction from the Judge, they remain in place.

23          THE COURT:  But there were two condos for which,

24    right?  There's -- I can't remember the condo numbers, but

25    there's two separate condominiums that had property bonds

1    associated with them, correct?

2         MR. HART:  I think so, Your Honor.  I believe they're

3    both at that address.  My guess is that's what Mr. Craven meant

4    by writing that.  I can confirm with him if you want.

5         THE COURT:  Then why is one up for sale when I haven't

6    released that bond and how is that -- how is that happening?

7    What was the plan here?

8         MR. HART:  Your Honor, I think the -- you know, if I

9    may actually speak with one of my colleagues.

10        THE COURT:  Sure, if someone just tell me, I mean,

11   this shouldn't be that complicated.  The house is either on the

12   market or it isn't with this Court's lien, essentially, against

13   it.  So, no one has explained to me why no one came to me and

14   said, we're attempting to liberate this asset.  It's encumbered

15   by the Court.

16        We know you had a robust conversation months ago with

17   the fact that it's going to stay encumbered in part because it

18   is the product of tainted assets.  And actually, we had a very

19   specific conversation about this in order to liberate funds to

20   pay for retained counsel to make sure that we were only

21   liberating funds that are not tainted, and that's a separate

22   issue.  But we had this conversation about this property wasn't

23   going anywhere, so why is it up for sale?

24        MR. HART:  Your Honor, if I may have a moment?

25        THE COURT:  You may.

1    MR. HART:  And just real quick, there was a clarity

2  that the property lien bond was inadvertently recorded at ECF

3  34, but it should be ECF 35.

4    THE COURT:  I know, but can anybody explain to me

5  why -- if what you're saying is, we confirmed, Judge, we

6  expected that the property bond would still be in the land

7  records, it would still be on record with the Court.  Why is the

8  house up -- why is the condo up for sale?  What's the plan here?

9    MR. HART:  One moment, Your Honor.

10   (Pause.)

11   MR. HART:  Your Honor, my understanding is that the

12 properties are entering foreclosure.  And so while those secured

13 liens are there, the thought process was they could secure a

14 better price if they put it up for sale now, but the secured

15 lien that the Court has would still be in place and any proceeds

16 would then be transferred to the Court to be held in trust.

17   THE COURT:  I don't think it works that way.  It

18 doesn't work that way unless you ask for me to work it that way.

19 The whole purpose of -- when I use the word "lien" maybe I'm

20 using the wrong term.  It's to stop people from selling out from

21 under the court the bond that's posted.

22   That's just the common sense version of this, which

23 means if you then go ahead and post it and I got to find out

24 from the government, it stinks.  It just smells bad, because --

25 especially against the backdrop of the hearings that we've had

1    historically, some -- if I'm not mistaken, I could be, but some

2    from your firm was in the room when we discussed that this

3    property from the government's view is tainted and they would

4    otherwise seek restraint.  But the fact that the Court put a

5    stop on conveying this asset was in some ways a practical

6    reassurance that this asset wasn't going to be dissipated.

7            So, let me ask, is the government going to belt and

8    suspender this in some way?

9            MR. WINDOM:  The discussion last time was that if the

10   Court did not have the order in place that we would most likely

11   seek to forfeit under 18 U.S.C. 983, which is the extensive

12   court process to do that.

13           Since Your Honor had the lien in place, which any good

14   title company would find, but as we know, not all of them are

15   good, they could ask through the title inspection and couldn't

16   sell.

17           It all comes down to, my view, the defense put forth a

18   package that didn't include property that previously was on a

19   previous order, was on a previous order.  And there's got to be

20   a reason that they didn't include that property in their package

21   and then we find out --

22           THE COURT:  Oh, you mean to me, this most recent

23   package?

24           MR. WINDOM:  There's got to be a reason that's not in

25   there and I have no -- I can't discern a reasonable --

1      MR. HART:  It's not in there because it's still in

2   place.  That's already a standing order.  This is an additional

3   $1 million unsecured bond.

4      MR. WINDOM:  And I come back to the fact that at least

5   according to the records that are available on Pacer, there is

6   not that property agreement, the forfeiture agreement entered on

7   the docket.  34-1 does not record the penthouse -- records the

8   million dollars unsecured bond.

9      Every time we come back into this court, there's more

10  questions.

11     THE COURT:  Right, and I thought it wasn't included in

12  the package because I hadn't released the bond already.

13     MR. HART:  That's correct, Your Honor.

14     THE COURT:  Then why is the house up for sale?  I

15  mean, that's just -- that's really -- you're just -- it's

16  almost, it's hard to wrap my brain around without saying

17  something that is akin to, you're insulting my intelligence.

18     So, Mr. Sparks, you're now standing.  Do you wish to

19  be heard?

20     MR. SPARKS:  Yes, Your Honor.  My understanding is

21  that this is not on the public market for sale.  They're trying

22  to figure out privately what the value of this is with the

23  notion that the idea that it is now in foreclosure and the value

24  of the house, the condominium would be decreased, but this is

25  not, is my understanding, being publicly marketed for sale.

1          THE COURT:  Well, the government found out somehow.

2   How did you find out?

3          MR. WINDOM:  You've got the Internet on that computer.

4   Type in the address.  You got 30 pictures of the apartment 2495

5   and outside, see a wrap-around view.

6          THE COURT:  Are you serious?  Zillow isn't public?

7   No, seriously, is it really on Zillow?

8          MR. WINDOM:  As of 11:30 last night.

9          MR. SPARKS:  I have no knowledge why this is publicly

10  listed for sale.

11         THE COURT:  Well, Mr. Ulander is on top of it.

12         5610 Wisconsin Avenue, PH-5C.

13         MR. WINDOM:  Yes, Your Honor.

14         THE COURT:  2.4 million and change.  Go tour this

15  home, schedule a tour.

16         MR. WINDOM:  The larger problem for me, Your Honor, in

17  all of this, whether with respect to medical conditions or to

18  any of these conditions of release is the constant use of the

19  phrase, "my understanding is".  There are documents that can

20  help everybody here and they're not shown to the Court.

21         THE COURT:  It's got a MLS number.  I mean, this is

22  Zillow.  This is silly.  No, it's Redfin, this one is Redfin.

23         So, I come back to --

24         So, government, if you're going to file your

25  forfeiture, you're going to have to do what you're going to have

1   to do, because I don't have any assurance that this is being

2   done above board.

3         I mean, there's a lien.  We had these conversations.

4   Counsel who are here today, take note.  We had these

5   conversations months ago about this property.  And if you didn't

6   hear it firsthand, you should have read the transcripts.  I

7   couldn't have been clearer.  The government couldn't have been

8   clearer.  We consider -- government considers these assets to be

9   tainted.  I consider these assets to be assets effectively of

10  the court to secure Ms. Bennett at the time.

11        You don't go putting assets like this up for sale

12  without asking, so that I'm on notice as the Court and the

13  government is on notice so that if they wish to actually pursue

14  forfeiture proceedings, they can.

15        And then you ask me to trust you, the whole defense

16  team with a release package.  And the only reason I'm

17  considering it is because Ms. Bennett's health is at issue.

18  Otherwise, you all would not be getting one minute of my time on

19  this.

20        So, I don't -- I would go ahead and do what you need

21  to do, Mr. Windom, to preserve your position.  Be clear, I'm not

22  releasing this property if I release Ms. Bennett.  So let's --

23        Anything else with respect to the property,

24  Mr. Windom?

25        MR. WINDOM:  No, ma'am.  And all the other reasons

1  that we didn't think the package was sufficient is in my filing.

2  THE COURT:  If I release Ms. Bennett, there will be no

3  travel in the tri-state area.  This will be extremely tight,

4  which does warrant, I think, my talking to Mr. Bennett again.

5  If you're willing to chat with me, Mr. Bennett, yes?

6  Okay.  I see both Mr. Bennett, Ms. Bennett's brother

7  and Mr. Bennett, her father.  Is it Mr. Bennett, dad who would

8  be the third-party custodian again?

9  MR. HART:  Yes.

10  THE COURT:  Okay.  Mr. Bennett, would you mind coming

11  up to the podium so you and I can talk?

12  MR. BENNETT:  You mind if I join him?

13  THE COURT:  Sure.

14  How are you, sir?

15  R. BENNETT:  Pretty good.

16  THE COURT:  Okay, good.  It's good to see you again.

17  R. BENNETT:  Ma'am?

18  THE COURT:  It's good to see you again.

19  R. BENNETT:  Thank you.

20  THE COURT:  Can you hear me?

21  R. BENNETT:  Acoustics in here are terrible for me.  I

22  can't seem to modulate the -- I hear what you're saying, but

23  it's just -- go ahead.

24  THE COURT:  Okay.  You tell me if you can't hear me.

25  I'll try to be as -- can you hear me now?

1          R. BENNETT:  Now I can.

2          THE COURT:  Okay.  I am considering releasing your

3   daughter to your custody again, but under much more restrictive

4   conditions.  First, if I release her to your home, it has to be

5   with the promise that there is no Internet available in your

6   home.  Are you willing to remove the Internet?

7          R. BENNETT:  I'm not sure I know what Internet is.

8          S. BENNETT:  He doesn't know what that is.

9          Can you define it?  Is that the cable into the house?

10          THE COURT:  It is for computer access to things like

11   Google, email.  If you're looking at websites on a computer or

12   on phones, that's what I'm considering to be Internet.

13          S. BENNETT:  Is it adequate if we just pull out the

14   modem?

15          THE COURT:  The modem, yes.

16          S. BENNETT:  I'll take them with me out of the house.

17          THE COURT:  And remind me of your first name again,

18   sir, the son.

19          S. BENNETT:  Steele.

20          THE COURT:  And Mr. Robert Bennett.

21          So, Mr. Steel Bennett, would you be willing to assist

22   your parents in making sure that their home is free of the

23   Internet, because you and I know what that means, right?

24          S. BENNETT:  I have one other question.

25          My mother owns a cellphone and that's technically

1    access to the Internet.

2          THE COURT:  Correct.  So, it would have to be --

3          S. BENNETT:  I mean, the one reason I hesitate is my

4    mother runs her own business.  She has a job.  She travels in a

5    car.  I don't want her to be without a phone.

6          THE COURT:  Oh, no, she -- absolutely, she can have a

7    phone.  We can do it either one of two ways.  She can take the

8    Internet off of her phone or it's password protected and I'm

9    assured by you under oath if I need to put you under oath,

10   although I don't think I have to, that your mother is not giving

11   your sister access to her phone and that her password remains

12   with her and no one else.

13         S. BENNETT:  I understand.

14         THE COURT:  That's one.

15         Two, your daughter is to have no phone access that is

16   connected to the Internet.  So to the extent anybody in the

17   family sees Ms. Bennett using the Internet and I think,

18   Mr. Steele Bennett, you know what I mean, right?

19         S. BENNETT:  Yes.

20         THE COURT:  On the phone, Googling, texting, emailing,

21   that that would be a violation of my release condition.  As her

22   third-party custodian and I might --

23         Mr. Steel Bennett, you tell me, I might make you both

24   third-party custodians because it sounds like you are still

25   active in your family's life, in your parents' life.

1    S. BENNETT:  I'm active in making sure my parents are

2    understanding everything.

3    THE COURT:  So to the extent you're there and you

4    observe any violation which I am discussing, would you be

5    willing to act as a set of eyes for the Court and report to the

6    Pretrial Services office if you see any violations in this

7    regard?

8    S. BENNETT:  Yes, ma'am.

9    THE COURT:  The next thing, your daughter, your sister

10   may have medical appointments that she has to attend and my

11   release order would allow release only for medical appointments,

12   nothing else.

13   Attorneys would come to meet with your daughter at

14   your house, Mr. Bennett.  Are you okay with that?

15   R. BENNETT:  Are you saying she can take herself to

16   the doctor, to the hospital?

17   THE COURT:  No, we're not there yet.  We're going to

18   get to there.  The first question is, will it be all right with

19   you if in your house she has her attorney meetings, that she can

20   have them at the house, she doesn't have to go to their office?

21   R. BENNETT:  Sure.

22   THE COURT:  Okay.  Next question.  When Ms. Bennett

23   has to go to medical appointments, she will have to be

24   accompanied by either a family member or a member of her defense

25   team.  Are you willing to work with Ms. Bennett and her defense

1    team to make sure that part of my order can be fulfilled?

2             S. BENNETT:  Yes, ma'am.

3             THE COURT:  Mr. Windom, do you have any follow-up

4    questions for either Mr. Steel or Mr. Robert Bennett?

5             MR. WINDOM:  Yes.

6             Mr. Bennett, how old are you, sir?

7             R. BENNETT:  87.

8             MR. WINDOM:  And what's your schedule during the day?

9    You stay at the house?

10            R. BENNETT:  A lot of television, coffee at the local

11   pub.

12            MR. WINDOM:  Coffee at the local pub?

13            R. BENNETT:  And gym three times a week.

14            MR. WINDOM:  Do you go get coffee at the local pub

15   every day?

16            R. BENNETT:  The days that I go to the gym, no, I

17   don't go.

18            MR. WINDOM:  So, you go out -- when do you go out for

19   coffee?

20            R. BENNETT:  About 8:30.

21            MR. WINDOM:  When do you come back from coffee?

22            R. BENNETT:  9:30, quarter of ten.

23            MR. WINDOM:  What about the gym?  When do you go to

24   the gym?

25            R. BENNETT:  9:30, sometimes 11.

1      MR. WINDOM:  And how long are you at the gym for?

2      R. BENNETT:  9:30 to 11.

3      MR. WINDOM:  What other occasions do you leave the

4  house?

5      R. BENNETT:  I don't.

6      MR. WINDOM:  Who is present at your home when you're

7  at the gym or getting coffee?

8      R. BENNETT:  I have no idea.  My wife might be there,

9  she may be gone.  She plays tennis.

10      S. BENNETT:  She also has a job and sits on a few

11  boards, so she's out of the house a lot.

12      MR. WINDOM:  And, sir, thank you.

13      Sir, for you, you have a full time job?

14      S. BENNETT:  Yep.

15      MR. WINDOM:  And you do not live at the address?

16      S. BENNETT:  No.

17      MR. WINDOM:  Where do you live?

18      R. BENNETT:  Herndon.

19      MR. WINDOM:  How far is that?

20      R. BENNETT:  Twenty-five minutes.

21      MR. WINDOM:  How often do you go your parents' home?

22      S. BENNETT:  Once a week, once every two weeks, unless

23  something else needs to be taken care of.

24      MR. WINDOM:  You travel?

25      R. BENNETT:  Sometimes to Boston.

1    MR. WINDOM:  And what's your work schedule?

2    R. BENNETT:  Full-time, plus I'm a dad, so I'm

3  full-time and dad.

4    MR. WINDOM:  Do you know your wife's view, sir, on

5  whether your daughter should be staying with you?  Do you know

6  your wife's view on whether your daughter should be staying with

7  you?

8    R. BENNETT:  It's all right.

9    S. BENNETT:  We talked to her about it.

10    R. BENNETT:  She's her daughter.

11    MR. WINDOM:  Thank you.

12    THE COURT:  Okay.  Thank you both.  I appreciate it.

13    Anything from the defense that you wish for me to know

14  from either Mr. Steel Bennett or Mr. Robert Bennett?

15    MR. HART:  Nothing particular, Your Honor, but just to

16  the extent there's any concern about there being gaps in time

17  where there would be no custodian there, the defense team can

18  fill those gaps if Your Honor wish.

19    THE COURT:  I do appreciate that.  I think between

20  electronic monitoring with 24-hour lockdown, the fact that

21  you're there, Mr. Bennett, for most hours of the day except for

22  a couple of hours in the morning and the fact that defense

23  counsel is willing, perhaps, maybe you can all schedule that

24  your meetings take place to some degree to overlap in the

25  mornings, it sounds like we can have abundant coverage.

1          And it sounds like, you know, Ms. Bennett, you are

2     very fortunate to have so many individuals who are willing to be

3     there for you, especially -- I guess my last question is, to the

4     extent Ms. Bennett needs follow-up medical care that requires

5     additional family attention and my hope for you is that you

6     don't, but to the extent there's any in-patient surgical

7     procedures and convalescence that needs to take place at home,

8     are you all willing and able to assist in that regard?

9          R. BENNETT:  I think so, yes.

10          THE COURT:  All right.  Thank you.  I appreciate that.

11     You all can have a seat.

12          Any additional information that either side wishes to

13     share with me?

14          MR. WINDOM:  Nothing additional, Your Honor.  I would

15     just ask that to the extent you are considering releasing

16     Ms. Bennett, that you do it in an extremely narrow timeframe

17     justified only by whatever medical urgency exist.  And as we

18     said before, if that is not today, that is three weeks out,

19     unless there's additional information coming up.  And if

20     follow-up from that appointment, then perhaps extend it.  But if

21     there's not, there's no basis for her to be out.

22          THE COURT:  Well, let me hear from defense counsel as

23     to any other grounds for release or reasons that you wish for me

24     to know.

25          MR. HART:  Well, Your Honor, there are additional

1    reasons beyond health.  We are having significant difficulties

2    getting access to Ms. Bennett at Jessup.  My understanding

3    having spoken to Mr. Ashton from the marshal's office that

4    Jessup is not a facility that's designed for pretrial detainees.

5           Mr. Craven has been in touch with the warden about

6    getting an opportunity to have consistent access to Ms. Bennett.

7    I think we requested five days a week to have the opportunity to

8    be able to come in as there is a significant amount of

9    discovery.  At this point, they're only allowing us two visits a

10   week up to four hours.

11          We also need to be filing something in writing ahead

12   of time before we can see her.  She also has minimal access, if

13   any, to a telephone during business hours.  And so, while the

14   opportunity when she was in DCDOC we could go there, I believe,

15   24 hours a day, she did have significant phone access.  She's

16   now much further away from our office and has extremely limited

17   opportunities to meet with us.  So that itself is also causing

18   significant problems.

19          So to the extent that -- as we're moving closer to

20   this trial date and the defense has plans and wants to have this

21   trial in September, the fact that we can lose two to three weeks

22   to essentially obtain records that are supporting what we are

23   proffering to the Court today and what is here, that just

24   further causes delay and concern.

25          So, we would ask that she be released today.  We can

1   provide that follow-up information to the Court about the pre-op

2   procedures that would be in place.  And we would be moving to

3   meet with the doctor as soon as possible and potentially even

4   move up that surgery date, because the sooner that happens, the

5   better for everyone.

6          MR. WINDOM:  Your Honor, if they move up the surgery

7   date if that's even possible, these things are scheduled far

8   out.  That's a fact.

9          THE COURT:  And that's my concern is that we only

10  have, even by the defense proffer, the earliest date, we only

11  have three and-a-half to four weeks to keep the date in place.

12  And we all know it's not so simple to just walk into surgery on

13  any given morning.

14         So what I'm thinking about doing is the following:

15  One, everything has to be in place in terms of the electronic

16  piece of this.  So that may not happen today in terms of I want

17  pretrial to have access to the home and confirm for me that

18  there is no Internet access for Ms. Bennett; that the electronic

19  monitoring has indeed been installed and that miss --

20  Mrs. Bennett is aware that her phone is to be a million miles

21  away from Ms. Dawn Bennett and password protected.

22         And we might need to do that in writing.  We may need

23  to affirm.  She needs to affirm to me under penalties of perjury

24  that she understands that that is the condition under which her

25  daughter will be released and so she faces consequences if she

1   violates that condition in any way.  I want all that in place

2   first.

3           And then what I'm also going to require is weekly

4   status reports from defense as to the update on the medical

5   records that we discussed and the update on the medical

6   appointments that are going to be put in place immediately.

7           And if I ascertain any playing two ends against the

8   middle; meaning once Ms. Bennett is released, suddenly these

9   medical issues are not so important and not so pressing, we'll

10  have another hearing and Ms. Bennett will be stepped back

11  because that will be a fraud on the Court.

12          So with those two things in place and with the looming

13  trial date in September and defense needing access, I think that

14  we have some reasonable assurances in place, because I'm not

15  taking my eye off of this ball.

16          MR. WINDOM:  What I would request, Your Honor, is that

17  any dates prior to June 22nd, the date we discussed, there's

18  knowable facts and the defense can glean that from the doctor, I

19  would expect a day we would have all the information so Your

20  Honor can narrowly tailor a timeframe in which she is released

21  for medical reasons.  If there's no requirement that she has any

22  medical --

23          THE COURT:  Except I also have the companion problem

24  of defense counsel not having access to Ms. Bennett.  And that

25  has been verified that this is just not a facility that provides

1    the kind of access that typical pretrial detention facilities

2    provide.  And you know, my senses tell me, unless I am on

3    this -- I need to be on this for this trial date to take place

4    in September as defense requested and this is an important piece

5    of that.

6         MR. WINDOM:  Is there a proffer from the defense as to

7    how often they would actually meet with her if she were outside

8    of the facility?

9         THE COURT:  Well, I would imagine it's going to be

10   more than what you've requested from the facility which was five

11   days a week.  Am I right about that, Mr. Hart?

12        MR. HART:  Your Honor, we intend to be frequently

13   meeting with Ms. Bennett.

14        THE COURT:  Yeah, I would think that -- well, I don't

15   want to invade the defense province.  I accept their

16   representations as officers of the court.  We do know that this

17   case is significant in terms of its discovery.  So, to the

18   extent -- and I -- it is my understanding that they had far

19   greater access to Ms. Bennett when she was at CTF than they do

20   now.

21        So I don't really know beyond the fact that I've

22   already gotten a proffer that they'd be willing to meet with her

23   when Mr. Bennett is otherwise occupied and that's several

24   mornings a week, that that gives me some assurance these

25   meetings will happen.

1      And, frankly, they should happen early and often,

2 because all depending on how Ms. Bennett -- how seriously she

3 takes her release conditions, we -- we've been down this road

4 before.  And to the extent she violates, she's back at Jessup.

5 And at that point, I can't -- I cannot protect Ms. Bennett from

6 herself anymore.

7      So given -- if I'm making myself clear, get your

8 visits in, make your record that Ms. Bennett can be trusted by

9 this Court and that counsel is operating in good faith that they

10 need this time with her.

11      MR. WINDOM:  Thank you, Your Honor.

12      THE COURT:  Thank you.

13      All right.  Let me be clear, the only reason I have

14 seriously entertained this is because I have gotten independent

15 corroborating evidence that Ms. Bennett has a legitimate medical

16 situation that needs the follow-up diagnostic care.  And if she

17 were to stay in the facility in which she's at, well, she would

18 ultimately receive good care.  There's no doubt about that.  It

19 just may not be with the timeline that we're facing.

20      It may not be with the kind of flexibility that we

21 need, because right now this Court has set aside five solid

22 weeks for trial, the entire month of September at the

23 defendant's vigorous urging.  And so, to keep that trial

24 calendar as -- inviolate in my view, I am going to release

25 Ms. Bennett on what are going to be even more onerous conditions

 1   than before.

 2           And I'm going to thank pretrial in advance for staying

 3   on this one for me.

 4           So, in addition to all of the conditions that were

 5   previously in place and which, Ms. Bennett, I'm going to go over

 6   many, if not all of them with you now.  You're going to review

 7   them in writing and with your counsel present and sign them

 8   before we all leave today.

 9           They're going to be the following:  That you're going

10   to have regular -- pretrial will have regular access to you.

11   Reporting will happen with pretrial coming to you.  I will not

12   have you going to pretrial, because you will be on 24-hour

13   lockdown with electronic monitoring and absolutely no Internet

14   access whatsoever.

15           The bond for both units 21C and 21D, Penthouse 5C,

16   Penthouse 5E, that's how it's written currently right now; 5610

17   Wisconsin Avenue, Chevy Chase, Maryland 20815 are still in place

18   100 percent interest.  And it is incumbent upon defense counsel

19   to confirm that I have the proper paperwork filed with this

20   court to perfect the court lien against the property.

21           And you are to take no action whatsoever to liquidate

22   or convert that asset or any other asset without advance

23   permission of the Court.

24           Your passport has already been seized.  You are to

25   obtain no new passport.  You'll have no travel whatsoever except

1  to medical appointments.  And those medical appointments will be

2  shared with pretrial in advance and you will be accompanied by

3  either one of your close family members that includes your

4  brother, your mother or your father or a member of your defense

5  team.

6  I'm going to ask that both Mr. Robert Bennett and

7  Steel Bennett act as third-party custodians.  I understand,

8  Mr. Steel Bennett, you do not live in your parents' home, but

9  again, you have assured me that you'll be yet another set of

10  eyes for the Court and that if you witness any violation, you

11  and your dad will be sure to inform pretrial as third-party

12  custodians are to do, and I thank you for that.  Pretrial will

13  have the proper paperwork for you to execute.

14  We're going to put the same condition in place that we

15  had before, that there is only one cellphone that Ms. Bennett

16  can use.  The number must be provided to pretrial.  Pretrial may

17  inspect that cellphone and any records associated with it.  You

18  may not use anyone else's phone for any reason whatsoever.

19  You may not open up any new bank accounts of any

20  nature, open up any new lines of credit without prior pretrial

21  approval and may not engage directly or indirectly in any

22  activities involving financial transactions and/or any other

23  person without prior pretrial approval.

24  Once weekly in writing you'll submit, defense counsel,

25  ex parte a status report to me of Ms. Bennett's outstanding

1    medical appointments and medical status, so I know weekly that

2    she is pursuing her health in good faith.  In addition, the

3    records that we discussed, I expect a report on when I should

4    get those records in your first status report, which will be

5    due --

6              Let's see, we are -- it's Thursday.  Let's do this

7    every Tuesday.  So between now and Tuesday, I'm expecting good

8    faith efforts to get all of the questions that Mr. Windom has

9    rightfully raised answered for me.

10             Are there any other conditions or any clarification

11   that pretrial needs that I have not already addressed?

12             MR. RIDGEWAY:  Your Honor, I just want to be clear

13   about the -- you mentioned that the paperwork, that Pretrial

14   Service will have paperwork for the third-party custodians to

15   sign.  Normally, the first sheet, the release order that Your

16   Honor is going to be issuing, the third-party custodian -- so I

17   guess, is that what you're referring to.  Normally the

18   third-party custodian signs that first page.

19             THE COURT:  Correct, yes.

20             And so we're clear, Mr. Ridgeway, Ms. Bennett is not

21   going to be released until pretrial, whether it's you or your

22   Virginia colleagues, pay a home visit, confirm that there is no

23   Internet, get from Mrs. Bennett in writing under penalties of

24   perjury, can work with defense counsel, that she's not going to

25   give her daughter access to the phone and that you have the one

1  phone that Ms. Bennett can use without Internet access with the

2  phone number and access to it.  Until all of that is in place

3  and the electronic monitoring is in place, she is not to be

4  released.

5          MR. RIDGEWAY:  And this phone, are you saying it can

6  be a cellphone, like a flip phone.

7          THE COURT:  Yes, exactly.  I think they still make

8  them.  Flip phones that you can call people without getting on

9  the Internet?

10          MR. RIDGEWAY:  And the -- and, Your Honor, to be

11  clear, you said you want this is in writing from --

12          THE COURT:  Mrs. Bennett?

13          MR. RIDGEWAY:  From Mrs. Bennett, okay.

14          THE COURT:  Yeah.  So that, Mr. Hart, what I expect is

15  that Mrs. Bennett in an affidavit will attest that she

16  understands she is not to give her daughter access to her

17  cellphone.  Her cellphone must be password protected and that

18  her daughter will not have access directly or indirectly with

19  her password or her phone.

20          Once she signs that document under penalties of

21  perjury and makes it available to you, Mr. Ridgeway, that

22  condition is satisfied.

23          MR. RIDGEWAY:  Okay.  Thank you, Your Honor.

24          THE COURT:  All right.  Thank you.

25          MR. WINDOM:  Perhaps, I didn't hear it, Your Honor,

1    but paragraph 8-K, the no contact.

2            THE COURT:  Oh, yes, of course.  Still in place, avoid

3    all contact and that means no contact directly or indirectly

4    with any person who is or may become a victim or potential

5    witness in this investigation or prosecution, including but not

6    limited to any investor, lender and/or individual identified in

7    the District of New Mexico Order setting conditions of release

8    which is incorporated herein.  Are we crystal clear on that?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Okay.

11           MR. WINDOM:  The other issue with respect to the

12   cellphone that the defendant can use.  Certain or maybe all

13   cellphones she can log in online and actually check the call log

14   history.

15           I don't know what the defense at this date is getting

16   for the defendant, but I don't want to be in situation where the

17   defendant hands Mr. Ridgeway a phone and says, check my call log

18   and she's voided out 30 phone numbers of calls she's made.

19   There should be an independent way to verify that.

20           THE COURT:  I believe pretrial will have access not

21   only to the cellphone, but to the records.  So I expect that

22   there will be -- I didn't want to get into the weeds of how

23   pretrial executes this, but I would imagine it would be a

24   release to obtain the cellphone records so that pretrial could

25   have access to the actual calls that were made regardless of

1    whether the call log were deleted.

2            Am I getting that right, Mr. Ridgeway?

3            MR. RIDGEWAY:  Your Honor, we normally don't have that

4    kind of access, so I'm not sure how we could gain that access.

5            THE COURT:  If Ms. Bennett were to release those

6    records to you, that works.

7            MR. RIDGEWAY:  Yeah, so -- yeah.

8            THE COURT:  Essentially, signing an authorization.

9            MR. RIDGEWAY:  Yeah.  So, I guess we'll make contact

10   with whatever the provider ends up being.

11           THE COURT:  Yes, because in the last order, I believe

12   that you had access to inspect cellphone and any records.

13           MR. RIDGEWAY:  Mm-hmm, yes, Your Honor.

14           THE COURT:  And so the way I would imagine that

15   inspection really would take place in any -- with any

16   meaningful -- with any meaning is that you actually have direct

17   access to the records.

18           MR. RIDGEWAY:  Right.

19           And, Your Honor, there are a couple other conditions

20   that we're noticing were previously ordered and I just want to

21   make sure that they continue on this new order is the surrender

22   passport.

23           THE COURT:  Yes.

24           MR. RIDGEWAY:  Obtain no new passport or travel

25   documents.

1          THE COURT:  That's right.  No new passport, no new

2     travel documents.

3          MR. RIDGEWAY:  And, Your Honor, I don't unfortunately

4     recall off the top of my head why this was in here, but there is

5     also the refrain from possessing a firearm, destructive device

6     or other dangerous weapons.

7          I do know that when the defendant was previously

8     residing with her father that the father had taken out a firearm

9     from the residence and we verified that was removed from the

10    residence.  So again, just ordering that condition and we'll

11    make again sure that the firearm is still out of the residence.

12         THE COURT:  Okay.  So, Mr. Bennett, if you have

13    removed the firearm from your residence, you're going to do so

14    again?

15         R. BENNETT:  I can do that.

16         THE COURT:  Okay, thank you.

17         MR. WINDOM:  Yes, the -- as I said, it's in the

18    papers.  It's utterly meaningless, but is the million dollar

19    unsecured bond still in place?

20         THE COURT:  So, I can, but you're right.  The last

21    time the thing I was wrestling with was I wasn't willing to cash

22    in on that bond and deprive, in the event of conviction, the

23    victims of any assets that would then be given to the court

24    instead of the victims.  So, in the -- in light of the history

25    of this case, I'm really not sure it makes sense to reinstitute

1    that piece of it.

2            The property bonds are still in place and they will

3    stay in place.  Do you see any value in reinstituting a cash

4    bond that isn't paid up front that I'm not willing to take away

5    from victims, if indeed Ms. Bennett is -- especially in light of

6    all the other conditions of which I have exhausted my creativity

7    on?

8            MR. WINDOM:  I don't see any value in it.  The only

9    value I see is already recorded in the land records.  And so

10   since it's already in place, somehow in Montgomery County, ECF

11   34-1, I guess, should stay in place since it's on the books

12   there with full understanding of --

13           THE COURT:  Yeah, I'm not going to reinstitute it

14   because of that, but I'm not sure in my professional life has

15   anyone been released on such stringent conditions.  So it's the

16   hope that we're not going to have to even discuss bond, property

17   bonds because all the other conditions will have been fulfilled

18   before Ms. Bennett is released.

19           Any questions, Mr. Hart?

20           MR. HART:  Yes, Your Honor, just briefly.  The defense

21   counsel had raised the possibility of bringing some sort of

22   ability to access our network where that's where our discovery

23   is stored and given the amount of it, the ability to upload from

24   a laptop is not feasible.  You know, laptops don't carry this

25   kind of storage rate.  So, are we going to be allowed to bring

1   some sort of mobile Internet device that we can take with us and

2   not --

3              THE COURT:  Yes, for you as counsel to access your

4   discovery to review it with Ms. Bennett, it's your Internet,

5   it's your access.  You take it with you when you leave.

6              Yes, I would consider that not to be violating my

7   release order.

8              MR. HART:  Thank you.

9              THE COURT:  You're welcome.

10             Anything else that we need to review?

11             MR. WINDOM:  No, ma'am.  I would just ask that while

12  the defendant is viewing a copy of it that we be able to view a

13  copy of it as well.

14             THE COURT:  Yes, okay, but you all are on the same

15  page, because I know it's a complicated one.

16             And again, Ms. Bennett is not to be released until

17  pretrial verifies that all of these conditions are in place.

18             And pretrial, if you would do me the courtesy of

19  letting me know that that process has actually concluded and

20  Ms. Bennett is going to be released, I do appreciate that.

21             MR. RIDGEWAY:  Absolutely, Your Honor.

22             THE COURT:  Okay.  Let me make sure that the written

23  order --

24        (Pause.)

25             THE COURT:  Okay.  Could I get Mrs. Bennett's first

1 name.

2    R. BENNETT:  Sue.

3    THE COURT:  Sue, S-U-E?

4    R. BENNETT:  Yes.

5    THE COURT:  All right.  I have reviewed the written

6 conditions.  Mr. Ulander will submit copies to you all in a

7 moment.

8    I expect defense counsel to review these conditions

9 very carefully with Ms. Bennett and have her sign them before

10 you leave today.

11    MR. HART:  Your Honor, if we have a brief moment,

12 would it be all right if I step back to speak with Mr. Ridgeway

13 just about some of the details here?

14    THE COURT:  Sure.  Do you need me any further?  Do you

15 wish to do that while I'm still on the bench?

16    MR. HART:  No.

17    THE COURT:  Okay.  All right, great.

18    All right.  Anything further before I leave you all

19 for the day?

20    MR. WINDOM:  No, ma'am.  Thank you.

21    THE COURT:  All right.  Ms. Bennett, it's an

22 opportunity.  Make the best of it and good luck with your

23 follow-up appointments.

24   (Recess at 4:25 p.m.)

25       *   *   *

1                    CERTIFICATE OF COURT REPORTER

2        I, Linda C. Marshall, certify that the foregoing is a

3  correct transcript of the record of proceedings in the

4  above-entitled matter.

5

6

7                /s/

8                _____
                 Linda C. Marshall, RPR
9                Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$1 [3]** 20/23 23/19 27/3

**/**

**/s [1]** 53/7

**0**

**0472 [2]** 1/5 2/4

**1**

**1.9 [1]** 20/7
**100 percent [1]** 43/18
**11 [2]** 34/25 35/2
**11:30 [1]** 28/8
**13 [2]** 7/3 10/3
**14 [1]** 7/4
**18 [1]** 26/11
**180 [1]** 20/14
**1825 [1]** 1/18

**2**

**2.4 million [1]** 28/14
**20 [1]** 21/10
**20006 [1]** 1/19
**2017 [1]** 21/10
**2018 [1]** 1/7
**202-466-5951 [1]** 1/19
**20770 [1]** 1/14
**20815 [1]** 43/17
**21C [1]** 43/15
**21D [1]** 43/15
**21st [4]** 11/1 14/14 16/21 17/17
**22nd [6]** 7/20 11/1 14/14 16/12 17/17
40/17
**24 [2]** 1/7 38/15
**24-hour [2]** 36/20 43/12
**2495 [1]** 28/4
**25th [1]** 21/10
**2987 [1]** 9/2
**2:34 [1]** 22/20
**2:37 [1]** 22/20

**3**

**30 [2]** 28/4 47/18
**301 [1]** 1/23
**301-344-4433 [1]** 1/15
**30th [1]** 7/8
**3229 [1]** 1/23
**34 [2]** 21/18 25/3
**34-1 [7]** 20/22 21/4 21/23 21/24 22/15
27/7 50/11
**344-3229 [1]** 1/23
**35 [3]** 21/18 23/3 25/3
**3:06 [1]** 1/8

**4**

**43 [1]** 19/21
**4433 [1]** 1/15
**4:25 p.m [1]** 52/24
**4th [1]** 20/6

**5**

**5610 [4]** 23/15 23/20 28/12 43/16
**5951 [1]** 1/19
**5C [2]** 28/12 43/15

**5E [1]** 43/16

**6**

**64 [1]** 11/19
**6406 [1]** 1/14

**8**

**8-K [1]** 47/1
**800 [1]** 1/14
**87 [1]** 34/7
**8:30 [1]** 34/20

**9**

**900 [1]** 1/18
**983 [1]** 26/11
**9:30 [3]** 34/22 34/25 35/2

**A**

**abilities [1]** 19/14
**ability [5]** 11/4 11/8 13/21 50/22 50/23
**able [6]** 3/10 9/13 15/23 37/8 38/8 51/12
**about [29]** 4/21 5/10 6/18 8/3 8/9 8/10
8/24 9/4 9/19 9/23 13/23 16/10 17/6
20/14 22/9 24/19 24/22 29/5 34/20
34/23 36/9 36/16 38/5 39/1 39/14 41/11
42/18 45/13 52/13
**above [2]** 29/2 53/4
**above-entitled [1]** 53/4
**absent [2]** 23/16 23/21
**absolute [1]** 16/21
**absolutely [3]** 32/6 43/13 51/21
**abundant [1]** 36/25
**accept [1]** 41/15
**access [31]** 15/1 31/10 32/1 32/11 32/15
38/2 38/6 38/12 38/15 39/17 39/18
40/13 40/24 41/1 41/19 43/10 43/14
45/25 46/1 46/2 46/16 46/18 47/20
47/25 48/4 48/4 48/12 48/17 50/22 51/3
51/5
**accommodate [2]** 6/17 17/3
**accommodated [1]** 13/13
**accompanied [2]** 33/24 44/2
**accompli [1]** 8/8
**according [1]** 27/5
**accounts [1]** 44/19
**accurate [2]** 3/21 3/22
**Acoustics [1]** 30/21
**acquire [1]** 4/6
**act [2]** 33/5 44/7
**acting [1]** 10/18
**action [2]** 14/16/20 43/21
**active [2]** 32/25 33/1
**activities [1]** 44/22
**actual [1]** 47/25
**actually [10]** 20/1 20/20 21/17 24/9
24/18 29/13 41/7 47/13 48/16 51/19
**addition [2]** 43/4 45/2
**additional [8]** 3/16 15/20 27/2 37/5
37/12 37/14 37/19 37/25
**address [4]** 17/11 24/3 28/4 35/15
**addressed [2]** 3/16 45/11
**adequate [1]** 31/13
**advance [4]** 16/11 43/2 43/22 44/2
**affidavit [1]** 46/15
**affirm [2]** 39/23 39/23
**afternoon [1]** 2/7

**again [19]** 6/21 9/25 16/14 17/18 18/20
22/19 22/22 23/18 30/4 30/8 30/16
30/18 31/3 31/17 44/9 49/10 49/11
49/14 51/16
**against [5]** 14/5 24/12 25/25 40/7 43/20
**Agent [1]** 2/5
**ago [5]** 7/10 13/3 19/12 24/16 29/5
**agree [3]** 11/21 15/2 16/8
**agreed [1]** 11/16
**agreeing [1]** 7/12
**agreement [11]** 19/23 20/18 21/9 21/13
21/24 21/25 22/3 22/5 22/17 27/6 27/6
**agreements [1]** 21/17
**ahead [4]** 25/23 29/20 30/23 38/11
**AIDED [1]** 1/24
**akin [1]** 27/17
**all [54]**
**allow [1]** 33/11
**allowed [1]** 50/25
**allowing [1]** 38/9
**almost [2]** 12/9 27/16
**already [7]** 27/2 27/12 41/22 43/24
45/11 50/9 50/10
**also [15]** 2/24 3/3 10/16 12/11 17/4
17/25 20/12 20/17 35/10 38/11 38/12
38/17 40/3 40/23 49/5
**although [1]** 32/10
**am [14]** 3/1 3/1 8/6 8/10 9/2 9/24 9/25
12/3 31/2 33/4 41/2 41/11 42/24 48/2
**AMERICA [1]** 1/4
**amongst [1]** 6/18
**amount [2]** 38/8 50/23
**and-a-half [2]** 20/6 39/11
**and/or [3]** 6/15 44/22 47/6
**ANDREW [2]** 1/17 2/8
**anesthesia [1]** 10/14
**angels [1]** 10/1
**another [4]** 18/20 22/6 40/10 44/9
**answered [1]** 45/9
**answering [1]** 9/17
**any [47]** 3/6 4/13 12/13 18/1 19/16 20/3
23/16 23/21 25/15 26/13 28/18 29/11
33/4 33/6 34/3 36/16 37/6 37/12 37/23
38/13 39/13 40/1 40/7 40/17 40/21
43/22 44/10 44/17 44/18 44/19 44/19
44/20 44/21 44/22 45/10 45/10 47/4
47/6 48/12 48/15 48/15 48/16 49/23
50/3 50/8 50/19 52/14
**anybody [4]** 16/7 19/14 25/4 32/16
**anymore [1]** 42/6
**anyone [2]** 44/18 50/15
**anything [7]** 10/17 17/5 17/10 29/23
36/13 51/10 52/18
**anywhere [1]** 24/23
**apartment [1]** 28/4
**apologize [1]** 17/18
**apparently [2]** 21/12 23/7
**appear [1]** 14/21
**appearance [2]** 3/2 22/4
**APPEARANCES [1]** 1/12
**appears [3]** 20/7 21/11 22/21
**appointment [4]** 10/25 15/18 16/11
37/20
**appointments [16]** 5/5 5/14 7/12 12/14
12/17 14/6 14/9 18/1 33/10 33/11 33/23
40/6 44/1 44/1 45/1 52/23

**A**

appreciate [5]  2/16 36/12 36/19 37/10 51/20
approach [1]  9/5
appropriate [1]  13/24
approval [2]  44/21 44/23
are [56]
area [1]  30/3
aren't [2]  6/2 8/3
argument [1]  5/11
around [3]  11/1 27/16 28/5
arrangements [1]  13/15
as [48]  2/11 2/25 2/25 4/4 8/7 9/23 10/23 11/3 11/22 11/25 11/25 12/19 12/20 14/25 14/25 16/20 16/20 16/23 18/8 18/8 19/19 20/12 21/4 21/7 21/8 22/21 26/14 28/8 29/12 30/25 32/21 33/5 37/17 37/22 38/8 38/19 39/3 39/3 40/4 41/4 41/6 41/16 42/24 44/7 44/11 49/17 51/3 51/13
ASAP [1]  8/16
ascertain [1]  40/7
Ashton [2]  17/25 38/3
aside [1]  42/21
ask [11]  4/10 4/17 17/21 25/18 26/7 26/15 29/15 37/15 38/25 44/6 51/11
asked [4]  4/22 5/12 5/16 9/16
asking [2]  10/2 29/12
aspect [1]  13/23
aspects [2]  17/11 17/20
assessment [2]  8/21 20/15
asset [5]  24/14 26/5 26/6 43/22 43/22
assets [6]  24/18 29/8 29/9 29/9 29/11 49/23
assist [2]  31/21 37/8
assisting [1]  19/16
associated [2]  24/1 44/17
assuming [1]  17/1
assurance [2]  29/1 41/24
assurances [1]  40/14
assure [1]  3/2
assured [2]  32/9 44/9
at [63]
attached [7]  20/23 21/10 21/23 21/25 22/3 22/8 22/9
attempt [1]  9/15
attempted [1]  4/11
attempting [1]  24/14
attend [1]  33/10
attention [2]  19/25 37/5
attest [1]  46/15
attorney [2]  1/13 33/19
Attorneys [1]  33/13
authorization [2]  18/5 48/8
available [5]  23/15 23/21 27/5 31/5 46/21
Avenue [4]  23/15 23/20 28/12 43/17
avoid [2]  9/21 47/2
aware [1]  39/20
awareness [2]  20/17
away [5]  3/10 16/19 38/16 39/21 50/4

**B**

back [16]  5/10 9/14 11/8 14/17 16/19 19/21 19/21 21/2 23/1 27/4 27/9 28/23

34/21 40/10 42/4 52/12
backdrop [1]  25/25
background [1]  9/17
backwards [1]  12/9
bad [1]  25/24
Bail [1]  22/1
ball [1]  40/15
bank [1]  44/19
based [2]  20/7 20/15
basically [1]  10/20
basis [4]  3/23 6/24 7/4 37/21
be [133]
be as [1]  30/25
because [38]  2/13 4/13 4/24 6/10 6/14 9/18 10/8 11/5 11/9 12/7 12/9 13/1 14/2 14/4 14/24 15/11 16/14 17/21 18/13 24/17 25/24 27/1 27/12 29/1 29/17 31/23 32/24 39/4 40/11 40/14 42/2 42/14 42/21 43/12 48/11 50/14 50/17 51/15
become [1]  47/4
been [36]  3/14 3/16 3/16 4/2 4/4 4/9 4/19 4/25 5/3 5/9 6/5 8/13 10/24 11/13 11/15 12/5 12/12 12/13 12/15 12/22 14/8 15/20 17/21 20/5 20/19 20/21 23/4 29/7 29/7 38/5 39/19 40/25 42/3 43/24 50/15 50/17
before [20]  1/10 7/21 7/22 14/15 14/20 14/24 15/4 15/6 16/21 17/7 17/11 37/18 38/12 42/4 43/1 43/8 44/15 50/18 52/9 52/18
beforehand [1]  15/18
behalf [1]  2/8
behind [1]  22/5
being [6]  3/10 8/11 27/25 29/1 36/16 48/10
belie [1]  5/6
believe [6]  4/3 21/15 24/2 38/14 47/20 48/11
belt [1]  26/7
bench [6]  9/5 9/10 15/1 17/9 17/12 52/15
BENNETT [98]
Bennett's [7]  2/11 3/4 5/13 29/17 30/6 44/25 51/25
best [1]  52/22
better [2]  25/14 39/5
between [3]  2/8 36/19 45/7
beyond [2]  38/1 41/21
bilateral [1]  10/13
biopsy [1]  10/12
bit [2]  5/8 5/15
bladder [3]  10/11 10/12 10/12
blind [3]  3/18 13/2 16/6
blood [3]  10/9 15/20 15/21
board [1]  29/2
boards [1]  35/11
bond [23]  19/22 20/23 21/18 21/19 22/1 22/4 22/8 22/23 22/24 23/14 23/19 24/6 25/2 25/6 25/21 27/3 27/8 27/12 43/15 49/19 49/22 50/4 50/16
bonds [2]  23/25 50/2 50/17
books [1]  50/11
Boston [1]  35/25
both [8]  2/6 10/22 24/3 30/6 32/23 36/12 43/15 44/6

**bottom** [3]  10/7 10/8 13/25
brain [1]  27/16
brief [1]  52/11
briefly [1]  50/20
bring [1]  50/25
bringing [1]  50/21
brother [2]  30/6 44/4
brought [2]  11/17 21/2
burned [1]  5/9
business [2]  32/4 38/13
but [51]  2/19 4/15 5/2 6/9 6/13 7/4 9/3 9/17 10/16 11/2 11/4 12/8 12/23 13/23 15/20 16/18 16/21 18/18 18/23 19/12 21/4 22/7 23/2 23/6 23/7 23/23 23/24 24/22 25/3 25/4 25/14 26/1 26/4 26/14 27/24 30/22 31/3 36/15 37/6 37/20 44/8 47/1 47/5 47/16 47/21 47/23 49/4 49/18 49/20 50/14 51/14

**C**

cable [1]  31/9
calendar [1]  42/24
call [7]  16/9 18/19 18/24 46/8 47/13 47/17 48/1
calls [2]  3/19 3/20 7/17 18/23 47/18 47/25
came [1]  24/13
can [53]  4/6 4/7 6/17 6/18 6/25 7/5 7/14 9/8 9/12 13/23 14/2 14/15 14/16 15/7 15/17 17/2 18/22 22/10 24/4 25/4 28/19 29/14 30/11 30/20 30/25 31/1 31/9 32/6 32/7 32/7 33/15 33/19 34/1 36/17 36/23 36/25 37/11 38/12 38/21 38/25 40/18 40/20 42/8 44/16 45/24 46/1 46/5 46/8 47/12 47/13 49/15 49/20 51/1
can't [7]  13/16 16/3 23/24 26/25 30/22 30/24 42/5
canceled [1]  14/8
canceling [1]  12/14
cannot [2]  13/13 42/5
car [1]  32/5
care [22]  4/16 5/4 5/7 5/23 5/24 6/10 6/15 11/9 12/8 12/14 12/17 12/20 12/23 13/9 13/12 13/25 14/4 16/22 35/23 37/4 42/16 42/18
carefully [1]  52/9
carry [1]  50/24
case [3]  2/11 41/17 49/25
cash [3]  22/24 49/21 50/3
catch [1]  21/16
causes [1]  38/24
causing [1]  38/17
cellphone [10]  31/25 44/15 44/17 46/6 46/17 46/17 47/12 47/21 47/24 48/12
cellphones [1]  47/13
center [1]  10/3
Certain [1]  47/12
certainly [1]  16/17
CERTIFICATE [1]  53/1
certify [1]  53/2
change [2]  19/13 28/14
changed [2]  2/13 11/9
Chase [2]  23/20 43/17
chat [1]  30/5
check [3]  17/13 47/13 47/17
Chevy [2]  23/20 43/17

**C**

**choice [1]** 12/6
**Circuit [1]** 21/12
**circumstances [1]** 2/14
**clarification [1]** 45/10
**clarifying [1]** 17/16
**clarity [1]** 25/1
**clear [7]** 29/21 42/7 42/13 45/12 45/20 46/11 47/8
**clearer [2]** 29/7 29/8
**clerk [3]** 20/21 21/12 23/4
**clerk's [1]** 23/13
**client [1]** 9/12
**client's [1]** 10/2
**close [1]** 44/3
**closer [1]** 38/19
**coffee [6]** 34/10 34/12 34/14 34/19 34/21 35/7
**Coleman [8]** 8/14 10/22 15/18 15/25 16/10 18/11 18/16 18/23
**colleague [1]** 23/12
**colleagues [2]** 24/9 45/22
**collectively [1]** 14/18
**combination [1]** 13/14
**come [10]** 11/2 11/20 14/17 19/25 27/4 27/9 28/23 33/13 34/21 38/8
**comes [1]** 26/17
**coming [3]** 30/10 37/19 43/11
**common [1]** 25/22
**communicating [1]** 7/25
**communications [1]** 6/6
**community [1]** 3/3
**companion [1]** 40/23
**company [1]** 26/14
**compliance [5]** 5/3 5/13 17/24 18/2 18/3
**compliant [1]** 12/13
**complicated [2]** 24/11 51/15
**computer [4]** 1/24 28/3 31/10 31/11
**COMPUTER-AIDED [1]** 1/24
**concern [10]** 12/16 13/5 13/17 17/5 17/6 20/9 20/12 36/16 38/24 39/9
**concerns [2]** 11/10 13/6
**conclude [1]** 7/5
**concluded [1]** 51/19
**condition [8]** 4/25 5/19 32/21 39/24 40/1 44/14 46/22 49/10
**conditions [20]** 3/2 3/15 4/8 6/5 19/10 28/17 28/18 31/4 42/3 42/25 43/4 45/10 47/7 48/19 50/6 50/15 50/17 51/17 52/6 52/8
**condo [2]** 23/24 25/8
**condominium [1]** 27/24
**condominiums [1]** 23/25
**condos [1]** 23/23
**conference [1]** 9/10
**confirm [6]** 14/5 18/19 24/4 39/17 43/19 45/22
**confirmed [1]** 25/5
**connected [1]** 32/16
**consent [1]** 3/10
**consequences [1]** 39/25
**consider [4]** 2/17 29/8 29/9 51/6
**considering [7]** 2/12 14/3 19/10 29/17 31/2 31/12 37/15
**considers [1]** 29/8

**consistent [1]** 38/6
**constant [2]** 6/15 28/18
**contact [6]** 8/13 11/13 47/1 47/3 47/3 48/9
**contacting [1]** 15/17
**continue [1]** 48/21
**control [1]** 16/22
**convalescence [1]** 37/7
**conversation [3]** 24/16 24/19 24/22
**conversations [4]** 16/4 17/5 29/3 29/5
**convert [1]** 43/22
**conveying [1]** 26/5
**conviction [1]** 49/22
**coordinated [1]** 8/11
**copies [1]** 52/6
**copy [2]** 51/12 51/13
**correct [6]** 7/21 24/1 27/13 32/2 45/19 53/3
**corrections [1]** 12/12
**corroborate [2]** 6/15 6/16
**corroborates [1]** 8/5
**corroborating [1]** 42/15
**corroboration [1]** 11/24
**could [14]** 5/21 6/15 10/15 12/7 13/16 15/20 16/4 25/13 26/1 26/15 38/14 47/24 48/4 51/25
**couldn't [3]** 26/15 29/7 29/7
**counsel [22]** 2/5 7/19 8/6 13/20 15/1 16/4 21/1 23/6 23/6 24/20 29/4 36/23 37/22 40/24 42/9 43/7 43/18 44/24 45/24 50/21 51/3 52/8
**counsel's [1]** 6/12
**counted [1]** 9/1
**counting [1]** 10/1
**county [8]** 19/24 20/1 20/19 20/21 20/24 21/12 22/2 50/10
**couple [3]** 14/14 36/22 48/19
**coupled [1]** 23/7
**course [4]** 16/20 18/9 19/1 47/2
**court [40]** 1/1 1/23 7/21 7/22 13/1 19/5 19/9 20/9 21/1 21/2 21/12 23/5 23/8 23/16 24/15 25/7 25/15 25/16 25/21 26/4 26/10 26/12 27/9 28/20 29/10 29/12 33/5 38/23 39/1 40/11 41/16 42/9 42/21 43/20 43/20 43/23 44/10 49/23 53/1 53/8
**Court's [1]** 24/12
**courtesy [1]** 51/18
**courtroom [1]** 9/13
**coverage [1]** 36/25
**Craven [10]** 7/19 7/24 8/13 10/24 11/13 16/23 17/19 23/12 24/3 38/5
**creativity [1]** 50/6
**credit [1]** 44/20
**criminal [3]** 1/4 2/3 7/18
**crystal [1]** 47/8
**CTF [1]** 41/19
**current [2]** 4/16 20/15
**currently [2]** 5/20 43/16
**Custer [1]** 2/5
**custodian [6]** 17/2 30/8 32/22 36/17 45/16 45/18
**custodians [4]** 32/24 44/7 44/12 45/14
**custody [1]** 31/3
**Cystoscopy [2]** 10/11 10/12

**D**

**D.C [1]** 1/19
**dad [4]** 30/7 36/2 36/3 44/11
**danger [1]** 3/3
**dangerous [1]** 49/6
**date [21]** 7/9 8/2 8/4 11/4 11/6 13/10 13/16 14/21 15/8 15/19 16/1 16/16 38/20 39/4 39/7 39/10 39/11 40/13 40/17 41/3 47/15
**date early [1]** 14/21
**dates [1]** 40/17
**daughter [11]** 31/3 32/15 33/9 33/13 36/5 36/6 36/10 39/25 45/25 46/16 46/18
**DAWN [4]** 1/6 2/3 2/8 39/21
**day [12]** 5/22 5/24 15/4 15/6 16/22 18/20 34/8 34/15 36/21 38/15 40/19 52/19
**days [4]** 14/14 34/16 38/7 41/11
**DCDOC [1]** 38/14
**deal [1]** 12/6
**decision [1]** 3/11
**decreased [1]** 27/24
**deeds [1]** 20/4
**defendant [10]** 1/7 1/17 3/19 7/5 20/2 47/12 47/16 47/17 49/7 51/12
**defendant's [5]** 3/22 19/11 19/22 22/4 42/23
**defense [34]** 2/25 2/25 4/10 5/17 6/12 7/6 8/9 14/9 16/4 19/18 26/17 29/15 33/24 33/25 36/13 36/17 36/22 37/22 38/20 39/10 40/4 40/13 40/18 40/24 41/4 41/6 41/15 43/18 44/4 44/24 45/24 47/15 50/20 52/8
**defense's [1]** 2/15
**define [1]** 31/9
**degree [1]** 36/24
**delay [1]** 38/24
**deleted [1]** 48/1
**Department [1]** 21/11
**depending [1]** 42/2
**deprive [1]** 49/22
**designed [1]** 38/4
**destructive [1]** 49/5
**details [1]** 52/13
**detainees [1]** 38/4
**detention [5]** 1/10 2/2 2/10 10/2 41/1
**determination [1]** 17/8
**determine [2]** 4/8 13/6
**device [2]** 49/5 51/1
**diag [1]** 10/10
**diagnostic [7]** 4/14 6/7 8/16 10/14 13/4 13/9 42/16
**diagnostics [3]** 8/6 11/24 11/25
**Dickinson [2]** 1/18 7/19
**did [4]** 17 11/20 17/6 17/24 22/22 23/12 26/10 28/2 38/15
**didn't [10]** 5/18 16/14 17/21 18/1 26/18 26/20 29/5 30/1 46/25 47/22
**difference [1]** 22/22
**different [3]** 4/5 13/23 21/17
**difficult [3]** 12/6 12/10 18/22
**difficulties [1]** 38/1
**direct [1]** 48/16
**directly [4]** 19/11 44/21 46/18 47/3

## D

**disadvantaging [1]** 13/11
**discern [1]** 26/25
**discovery [5]** 5/9 38/9 41/17 50/22 51/4
**discuss [3]** 9/16 14/23 50/16
**discussed [7]** 2/11 7/11 20/10 26/2 40/5 40/17 45/3
**discusses [1]** 3/20
**discussing [1]** 33/4
**discussion [2]** 22/14 26/9
**dissipated [1]** 26/6
**DISTRICT [4]** 1/1 1/1 1/11 47/7
**DIVISION [1]** 1/2
**DJB [1]** 9/1
**do [49]** 3/12 6/14 6/19 7/4 13/16 14/2 14/25 16/11 16/19 17/1 18/4 18/5 18/14 18/20 26/12 27/18 28/25 29/1 29/20 29/21 32/7 34/3 34/14 34/18 34/21 34/23 35/3 35/15 35/17 35/21 36/4 36/5 36/19 37/16 39/22 41/16 41/19 44/8 44/12 45/6 49/7 49/13 49/15 50/3 51/18 51/20 52/14 52/14 52/15
**docket [1]** 27/7
**doctor [6]** 6/1 11/13 16/4 33/16 39/3 40/18
**document [4]** 20/17 21/4 22/9 46/20
**documentation [2]** 9/15 9/22
**documents [3]** 28/19 48/25 49/2
**does [8]** 11/14 15/3 15/4 15/6 16/11 16/18 27/7 30/4
**doesn't [8]** 6/13 14/17 20/20 22/18 22/22 25/18 31/8 33/20
**doing [5]** 6/7 9/21 13/7 15/16 39/14
**dollar [3]** 21/18 22/24 49/18
**dollars [3]** 20/6 22/8 27/8
**don't [32]** 4/13 7/13 9/6 11/2 11/7 11/11 13/14 13/19 14/25 16/7 17/12 20/3 20/19 21/15 23/3 25/17 29/1 29/11 29/20 32/5 32/10 34/17 35/5 37/6 41/14 41/21 47/15 47/16 48/3 49/3 50/8 50/24
**done [3]** 4/4 15/20 29/2
**doubt [1]** 42/18
**down [2]** 26/17 42/3
**Dr [14]** 2/17 8/14 10/19 10/22 10/22 11/22 15/18 15/25 16/10 18/9 18/10 18/11 18/16 18/23
**due [1]** 45/5
**during [4]** 3/13 14/15 34/8 38/13

## E

**earliest [1]** 39/10
**early [2]** 14/21 42/1
**earpiece [1]** 9/8
**easier [1]** 12/25
**ECF [10]** 19/21 20/22 21/4 21/18 21/18 22/15 23/3 25/2 25/3 50/10
**effectively [2]** 21/1 29/9
**efforts [1]** 45/8
**either [7]** 24/11 32/7 33/24 34/4 36/14 37/12 44/3
**electronic [5]** 36/20 39/15 39/18 43/13 46/3
**Elmo [1]** 22/13
**else [9]** 17/4 17/10 19/8 19/15 29/23 32/12 33/12 35/23 51/10

**else's [1]** 44/18
**email [1]** 31/11
**emailing [1]** 32/20
**encumbered [2]** 24/14 24/17
**end [1]** 7/7
**ends [3]** 14/5 40/7 48/10
**engage [1]** 44/21
**enough [4]** 3/10 6/16 13/8 14/22
**entered [1]** 27/6
**entering [1]** 25/12
**entertained [1]** 42/14
**entire [1]** 42/22
**entitled [1]** 53/4
**escorted [1]** 14/8
**especially [3]** 25/25 37/3 50/5
**ESQUIRE [3]** 1/13 1/17 1/17
**essence [2]** 11/5 14/1
**essentially [3]** 24/12 38/22 48/8
**evasion [1]** 20/9
**even [7]** 14/16 20/3 39/3 39/7 39/10 42/25 50/16
**event [2]** 10/4 49/22
**ever [1]** 21/15
**every [6]** 5/22 5/23 27/9 34/15 35/22 45/7
**everybody [1]** 28/20
**everyone [1]** 39/5
**everything [4]** 15/19 20/10 33/2 39/15
**evidence [2]** 18/3 42/15
**ex [2]** 14/4 44/25
**exactly [4]** 8/11 16/5 16/6 46/7
**examine [1]** 2/19
**except [4]** 13/3 36/21 40/23 43/25
**exceptionally [1]** 17/3
**execute [1]** 44/13
**executes [1]** 45/7
**exhausted [1]** 50/6
**Exhibit [5]** 8/18 8/19 8/20 9/1 9/11
**exist [5]** 4/9 4/13 14/16 14/19 37/17
**expect [5]** 40/19 45/3 46/14 47/21 52/8
**expected [1]** 25/6
**expecting [1]** 47/3
**expert [7]** 3/15 7/8 11/16 11/18 11/19 11/22 13/7
**explain [1]** 25/4
**explained [3]** 10/19 12/4 24/13
**extend [1]** 37/20
**extensive [1]** 26/11
**extent [15]** 5/5 6/3 7/17 9/3 11/23 12/23 32/16 33/3 36/16 37/4 37/6 37/15 38/19 41/18 42/4
**extremely [3]** 30/3 37/16 38/16
**eye [1]** 40/15
**eyes [2]** 33/5 44/10

## F

**face [1]** 17/6
**faces [1]** 39/25
**facilities [3]** 4/5 13/7 41/1
**facility [11]** 4/16 4/21 6/7 12/12 12/18 12/21 38/4 40/25 41/8 41/10 42/17
**facing [2]** 42/19
**fact [16]** 6/15 10/3 10/3 10/4 13/14 20/3 20/18 23/7 24/17 26/4 27/4 36/20 36/22 38/21 39/8 41/21
**factor [1]** 17/24

**facts [1]** 40/18
**fair [1]** 16/7
**fairness [1]** 16/13
**fait [1]** 8/7
**faith [3]** 42/9 45/2 45/8
**family [5]** 14/9 32/17 33/24 37/5 44/3
**family's [1]** 32/25
**far [3]** 35/19 39/7 41/18
**fashioning [1]** 19/10
**fast [1]** 6/16
**father [5]** 19/12 30/7 44/4 49/8 49/8
**FBI [1]** 2/5
**feasible [1]** 50/24
**few [2]** 15/24 35/10
**figure [1]** 27/22
**file [1]** 28/24
**filed [9]** 19/23 19/23 20/1 20/19 20/21 21/1 23/2 23/4 43/19
**filing [2]** 19/19 30/1 38/11
**fill [2]** 8/8 36/18
**financial [1]** 44/22
**find [7]** 3/1 10/17 18/8 25/23 26/14 26/21 28/2
**fine [2]** 9/7 23/10
**finger [1]** 14/10
**firearm [4]** 49/5 49/8 49/11 49/13
**firm [1]** 26/2
**first [12]** 15/16 15/25 16/11 16/22 31/4 31/17 33/18 40/2 45/4 45/15 45/18 51/25
**firsthand [1]** 29/6
**five [4]** 35/20 38/7 41/10 42/21
**Fletcher [1]** 23/13
**flexibility [1]** 42/20
**flip [2]** 46/6 46/8
**follow [13]** 8/5 11/14 13/9 14/24 15/9 15/11 18/5 34/3 37/4 37/20 39/1 42/16 52/23
**follow-up [11]** 8/5 13/9 15/9 15/11 18/5 34/3 37/4 37/20 39/1 42/16 52/23
**follow-ups [1]** 14/24
**followed [1]** 14/7
**following [2]** 39/14 43/9
**foreclosure [2]** 25/12 27/23
**foregoing [1]** 53/2
**forfeit [8]** 21/9 21/13 21/24 21/25 22/4 22/5 22/18 26/11
**forfeiture [4]** 23/4 27/6 28/25 29/14
**form [4]** 3/10 4/6 10/16 13/1
**forth [6]** 5/10 7/7 19/19 20/12 20/18 26/17
**forthcoming [2]** 4/2 8/8
**fortunate [1]** 37/2
**forward [1]** 11/6
**found [1]** 28/1
**four [3]** 9/1 38/10 39/11
**Fourteen [1]** 8/20
**frankly [3]** 5/9 6/13 42/1
**fraud [3]** 20/13 20/14 40/11
**free [1]** 31/22
**frequently [1]** 41/12
**front [2]** 10/3 50/4
**fulfilled [2]** 34/1 50/17
**full [5]** 9/17 35/13 36/2 36/3 50/12
**full-time [2]** 36/2 36/3
**funds [2]** 24/19 24/21

**F**

**further [7]** 15/7 16/19 16/19 38/16 38/24 52/14 52/18

**G**

**gain [1]** 48/4
**gaps [2]** 36/16 36/18
**generated [2]** 4/17 5/24
**Gerber [5]** 2/17 10/19 10/22 18/9 18/10
**Gerber's [1]** 11/22
**get [25]** 4/11 6/13 6/19 12/7 13/1 13/25 14/2 14/4 15/17 16/9 16/20 16/24 17/11 18/5 18/22 18/25 19/17 33/18 34/14 42/7 45/4 45/8 45/23 47/22 51/25
**getting [12]** 6/16 13/19 13/24 17/22 18/23 29/18 35/7 38/2 38/6 46/8 47/15 48/2
**give [3]** 17/22 45/25 46/16
**given [6]** 9/17 13/18 39/13 42/7 49/23 50/23
**gives [1]** 41/24
**giving [1]** 32/10
**glean [1]** 40/18
**go [29]** 9/4 10/16 10/21 11/4 11/5 11/8 12/9 14/15 15/3 15/6 16/23 19/16 22/19 25/23 28/14 29/11 29/20 30/23 33/20 33/23 34/14 34/16 34/17 34/18 34/18 34/23 35/21 38/14 43/5
**going [41]** 5/4 5/6 8/9 10/6 14/3 14/5 14/8 14/11 16/14 18/13 18/16 23/11 24/17 24/23 26/6 26/7 28/24 28/25 28/25 33/17 40/3 40/6 41/9 42/24 42/25 43/2 43/5 43/6 43/9 43/9 44/7 44/6 44/14 45/16 45/21 45/24 49/13 50/13 50/16 50/25 51/20
**gone [2]** 12/19 35/9
**good [12]** 2/7 26/13 26/15 30/15 30/16 30/16 30/18 42/9 42/18 45/2 45/7 52/22
**Google [1]** 31/11
**Googling [1]** 32/20
**got [12]** 8/4 8/4 8/5 8/8 14/10 21/7 25/23 26/19 26/24 28/3 28/4 28/21
**gotten [2]** 41/22 42/14
**government [14]** 1/13 3/7 8/6 8/11 9/18 17/4 17/6 25/24 26/7 28/1 28/24 29/7 29/8 29/13
**government's [4]** 2/24 3/6 11/7 26/3
**grand [1]** 20/14
**great [1]** 52/17
**greater [1]** 41/19
**Greenbelt [2]** 1/6 1/14
**grocery [1]** 19/6
**grounds [1]** 37/23
**guess [7]** 5/17 23/2 24/3 37/3 45/17 48/9 50/11
**gym [6]** 34/13 34/16 34/23 34/24 35/1 35/7

**H**

**had [21]** 2/18 2/19 4/16 5/3 15/3 16/4 19/21 20/19 23/25 24/16 24/18 24/22 25/25 26/13 29/3 29/4 41/18 44/15 48/12 49/8 50/21
**hadn't [1]** 27/12
**half [2]** 20/6 39/11

**Hand [1]** 21/5
**handed [1]** 21/21
**handing [1]** 21/6
**hands [1]** 47/17
**happen [6]** 8/11 10/23 39/16 41/25 42/1 43/11
**happening [1]** 24/6
**happens [2]** 19/1 39/4
**hard [1]** 27/16
**harder [2]** 13/25 14/2
**HART [5]** 1/17 2/7 41/11 46/14 50/19
**has [56]**
**hasn't [2]** 2/18 12/13
**hate [1]** 7/3
**have [103]**
**haven't [8]** 4/13 4/25 5/15 17/4 17/18 17/20 23/9 24/5
**having [6]** 3/18 12/19 13/20 38/1 38/3 40/24
**he [7]** 2/18 2/19 2/22 11/20 17/25 19/12 31/8
**he's [1]** 18/13
**head [2]** 10/1 49/4
**health [4]** 11/9 29/17 38/1 45/2
**hear [14]** 6/21 9/9 9/12 9/13 15/7 17/7 19/11 29/6 30/20 30/22 30/24 30/25 37/22 46/25
**heard [3]** 12/11 17/4 27/19
**hearing [10]** 2/6 4/7 3/7 3/4 7/10 8/6 8/10 10/2 14/17 40/10
**hearings [2]** 20/11 25/25
**heart [1]** 2/22
**held [3]** 7/14 22/14 25/16
**help [1]** 28/20
**helpful [2]** 5/7 12/4
**helps [1]** 2/22
**hematoma [1]** 10/9
**her [57]**
**here [26]** 2/2 2/10 4/5 7/9 7/13 8/5 9/14 12/3 13/5 14/17 16/20 19/12 21/2 21/4 21/7 21/17 21/20 22/24 24/7 25/8 28/20 29/4 30/21 38/23 49/4 52/13
**herein [1]** 47/8
**Herndon [1]** 35/18
**herself [2]** 33/15 42/6
**hesitate [1]** 32/3
**him [3]** 19/13 24/4 30/12
**HIPAA [1]** 13/1
**his [3]** 2/21 19/14 19/14
**historically [2]** 5/2 26/1
**history [2]** 17/14 49/24
**hmm [1]** 48/13
**Hobson's [1]** 2/22
**hold [4]** 8/2 11/4 16/1 16/15
**home [11]** 9/15 18/25 31/4 31/6 31/22 35/6 35/21 37/7 39/17 44/8 45/22
**Honor [60]**
**HONORABLE [1]** 1/10
**hope [2]** 37/5 50/16
**hopefully [1]** 18/18
**hospital [8]** 4/19 7/25 8/15 10/25 11/8 11/16 15/17 33/16
**hour [2]** 36/20 43/12
**hours [5]** 36/21 36/22 38/10 38/13 38/15
**house [12]** 24/1 25/8 27/14 27/24 31/9 31/16 33/14 33/19 33/20 34/9 35/4

35/11
**housed [3]** 5/19 5/22 5/23
**how [18]** 2/22 4/21 5/21 20/3 24/6 24/6 28/2 30/14 34/6 35/1 35/19 35/21 41/7 42/2 42/2 43/16 47/22 48/4
**Howard [8]** 7/25 8/14 10/24 11/8 11/15 15/17 18/12 18/17

**I**

**I'd [1]** 4/25
**I'll [5]** 3/7 6/23 22/13 30/25 31/16
**I'm [40]** 2/12 2/23 6/2 6/3 7/2 9/1 9/25 13/10 13/10 14/2 14/3 14/4 15/11 18/11 23/18 25/19 26/1 29/12 29/16 29/21 31/7 31/12 32/8 33/1 36/2 36/2 39/14 40/3 40/14 42/7 43/2 43/5 44/6 45/7 48/4 49/25 50/4 50/13 50/14 52/15
**I've [4]** 2/24 7/17 12/15 41/21
**idea [3]** 12/17 27/23 35/8
**identified [2]** 6/5 47/6
**identify [1]** 22/22
**if [67]**
**imagine [6]** 15/10 15/25 16/3 41/9 47/23 48/14
**immediately [1]** 40/6
**importance [1]** 7/11
**important [2]** 40/9 41/4
**in [188]**
**in-patient [1]** 37/6
**inadvertently [1]** 25/2
**inclined [1]** 14/13
**include [2]** 26/18 26/20
**included [1]** 27/11
**includes [1]** 44/3
**including [2]** 2/17 47/5
**incorporated [1]** 47/8
**incumbent [1]** 43/18
**indeed [2]** 39/19 50/5
**independent [2]** 42/14 47/19
**indicated [1]** 17/25
**indication [1]** 11/12
**indirectly [3]** 44/21 46/18 47/3
**individual [3]** 7/18 13/13 47/6
**individuals [1]** 37/2
**infirmary [7]** 3/14 5/20 5/23 6/9 6/10 6/11 13/20
**inform [1]** 44/11
**information [18]** 3/7 3/10 3/17 3/20 3/21 7/13 9/20 9/24 12/5 14/19 15/3 16/3 18/21 19/17 37/12 37/19 39/1 40/19
**inspect [2]** 44/17 48/12
**inspection [2]** 26/15 48/15
**installed [1]** 39/19
**instance [1]** 12/13
**instead [2]** 16/6 49/24
**institution's [1]** 12/15
**instruction [2]** 23/16 23/22
**insulting [1]** 27/17
**intelligence [1]** 27/17
**intend [2]** 11/14 41/12
**interest [2]** 20/15 43/18
**Internet [17]** 28/3 31/5 31/6 31/7 31/12 31/23 32/1 32/8 32/16 32/17 39/18 43/13 45/23 46/1 46/9 51/1 51/4
**interpret [2]** 2/22
**interpretation [1]** 11/23

**I**

**into [6]**  9/4 17/11 27/9 31/9 39/12 47/22
**invade [1]**  41/15
**invasive [2]**  10/18 10/20
**investigation [1]**  47/5
**investor [1]**  47/6
**inviolate [1]**  42/24
**involved [2]**  5/11 10/22
**involves [1]**  4/1
**involving [1]**  44/22
**is [214]**
**ish [1]**  15/8
**isn't [8]**  7/21 7/22 11/18 14/13 14/19 24/12 28/6 50/4
**issue [7]**  5/23 17/8 18/2 18/3 24/22 29/17 47/11
**issued [1]**  21/9
**issues [5]**  5/3 8/17 14/23 15/24 40/9
**issuing [1]**  45/16
**it [104]**
**it's [50]**  4/2 4/6 5/8 5/15 6/11 6/12 7/18 10/14 10/20 11/2 11/11 12/9 12/23 13/25 15/3 16/7 19/25 20/3 20/5 20/6 22/17 22/23 24/14 24/17 25/20 27/1 27/1 27/15 27/16 28/21 28/22 30/16 30/18 30/23 32/8 36/8 39/12 41/9 43/16 45/6 45/21 49/17 49/18 50/10 50/11 50/15 51/4 51/5 51/15 52/21
**its [3]**  10/7 17/6 41/17
**itself [1]**  38/17
**Ivy [1]**  1/14

**J**

**jail [2]**  3/19 3/20
**Janet [1]**  23/13
**Jeff [1]**  7/19
**Jessup [11]**  4/22 5/12 11/9 12/5 12/23 13/15 18/1 18/7 38/2 38/4 42/4
**job [3]**  32/4 35/10 35/13
**join [1]**  30/12
**JUDGE [5]**  1/11 21/8 21/8 23/22 25/5
**June [7]**  7/20 8/12 11/2 14/14 15/8 16/12 40/17
**June 21st-ish [1]**  15/8
**June 22nd [1]**  7/20 16/12 40/17
**just [36]**  5/11 6/11 6/12 9/17 9/22 10/1 10/6 11/2 13/7 15/3 16/15 17/16 17/21 19/10 19/17 21/21 24/10 25/1 25/22 25/24 27/15 27/15 30/23 31/13 36/15 37/15 38/23 39/12 40/25 42/19 45/12 48/20 49/10 50/20 51/11 52/13
**justified [1]**  37/17

**K**

**KANE [1]**  1/17
**keep [2]**  39/11 42/23
**Keith [1]**  2/5
**keys [1]**  8/9
**kind [5]**  10/9 41/1 42/20 48/4 50/25
**kingdom [1]**  8/10
**know [37]**  7/12 8/23 9/5 11/7 13/19 14/6 15/19 16/12 17/18 18/25 19/2 19/8 19/12 20/3 24/16 24/16 24/14 31/7 31/8 31/23 32/18 36/4 36/5 36/13 37/1 37/24 39/12 41/2 41/16 41/21 45/1

47/15 49/7 50/24 51/15 51/19
**knowable [1]**  40/18
**knowledge [2]**  9/22 28/9

**L**

**lack [1]**  5/13
**laid [1]**  11/15
**land [5]**  20/4 21/1 22/1 25/6 50/9
**Lane [1]**  1/14
**laptop [1]**  50/24
**laptops [1]**  50/24
**larger [1]**  28/16
**last [10]**  2/11 3/13 7/8 7/10 15/24 26/9 28/8 37/3 48/11 49/20
**learned [1]**  3/25
**least [8]**  3/5 3/14 8/1 9/21 12/15 17/6 19/7 27/4
**leave [5]**  35/3 43/8 51/5 52/10 52/18
**legitimate [1]**  42/15
**lender [1]**  47/6
**less [1]**  13/20
**let [9]**  3/24 6/21 16/22 17/1 22/11 26/7 37/22 42/13 51/22
**let's [7]**  4/10 9/12 15/13 21/7 29/22 45/6 45/6
**letting [1]**  51/19
**level [2]**  6/10 12/7
**liberate [2]**  24/14 24/19
**liberating [1]**  24/21
**lien [10]**  21/1 23/14 23/20 24/12 25/2 25/15 25/19 26/13 29/3 43/20
**liens [1]**  25/13
**life [3]**  32/25 32/25 50/14
**light [2]**  49/24 50/5
**like [12]**  5/9 5/11 12/24 18/21 19/8 21/5 29/11 31/10 32/24 36/25 37/1 46/6
**likely [1]**  26/10
**limited [2]**  38/16 47/6
**LINDA [3]**  1/23 53/2 53/8
**line [3]**  10/7 10/8 15/19
**lines [1]**  44/20
**liquidate [1]**  43/21
**listed [1]**  28/10
**listened [2]**  3/19 7/17
**little [1]**  5/8 5/15 18/22
**live [3]**  35/15 35/17 44/8
**local [3]**  34/10 34/12 34/14
**lockdown [2]**  36/20 43/13
**log [4]**  47/13 47/13 47/17 48/1
**long [1]**  35/1
**longer [1]**  14/1
**look [1]**  8/18
**looked [1]**  11/20
**looking [3]**  17/19 20/18 31/11
**looks [1]**  21/8
**looming [1]**  40/12
**lose [2]**  13/16 38/21
**losing [1]**  13/10
**lot [4]**  10/21 15/22 34/10 35/11
**luck [1]**  52/22

**M**

**ma'am [10]**  4/3 21/3 22/7 22/13 29/25 30/17 33/8 34/2 51/11 52/20
**made [3]**  3/19 47/18 47/25
**Magistrate [1]**  21/8

**make [17]**  3/11 6/13 9/12 13/14 15/18 15/23 17/7 24/20 32/23 34/1 42/8 46/7 48/9 48/21 49/11 51/22 52/22
**makes [3]**  3/5 46/21 49/25
**making [3]**  31/22 33/1 42/7
**many [3]**  20/11 37/2 43/6
**March [2]**  7/7 7/8
**market [3]**  20/5 20/6 24/12 27/21
**marketed [1]**  27/25
**marshal's [1]**  38/3
**MARSHALL [3]**  1/23 53/2 53/8
**marshals [2]**  4/4 17/25
**MARYLAND [7]**  1/1 1/6 1/14 4/19 19/22 23/20 43/17
**matter [1]**  53/4
**matters [1]**  9/17
**may [23]**  1/7 3/16 3/16 13/24 15/25 16/1 17/13 20/6 21/3 24/9 24/24 24/25 33/10 35/9 39/16 39/22 42/19 42/20 44/16 44/18 44/19 44/21 47/4
**May 4th [1]**  20/6
**maybe [4]**  6/11 25/19 36/23 47/12
**me [54]**
**mean [15]**  6/11 8/4 12/18 15/8 15/16 15/19 16/13 17/18 24/10 26/22 27/15 28/21 29/3 32/3 32/18
**meaning [2]**  40/8 48/16
**meaningful [1]**  48/16
**meaningless [1]**  49/18
**means [3]**  25/23 31/23 47/3
**meant [1]**  24/3
**medical [53]**  2/13 2/16 2/21 3/4 3/12 3/15 4/1 4/8 4/16 4/17 4/18 5/4 5/5 5/7 5/14 5/19 5/21 5/22 6/2 6/5 6/17 7/6 7/9 7/11 8/14 9/4 10/10 11/23 14/4 14/16 15/14 16/22 17/8 17/10 18/5 18/25 19/7 28/17 33/10 33/11 33/23 37/4 37/17 40/4 40/5 40/9 40/21 40/22 42/15 44/1 44/1 45/1 45/1
**medically [1]**  14/11
**meet [6]**  13/21 33/13 38/17 39/3 41/7 41/22
**meeting [3]**  3/4 13/22 41/13
**meetings [3]**  33/19 36/24 41/25
**member [4]**  14/9 33/24 33/24 44/4
**members [1]**  44/3
**memorialized [1]**  2/21
**mentioned [1]**  45/13
**mercy [1]**  13/15
**Mexico [1]**  47/7
**mic [1]**  7/1
**middle [2]**  14/6 40/8
**might [7]**  5/4 6/19 16/3 32/22 32/23 35/8 39/22
**miles [1]**  39/20
**million [13]**  20/6 20/7 20/23 21/18 22/8 22/23 23/14 23/19 27/3 27/8 28/14 39/20 49/18
**mind [3]**  5/3 30/10 30/12
**minimal [1]**  38/12
**minute [1]**  29/18
**minutes [1]**  35/20
**miss [1]**  39/19
**mistaken [1]**  26/1
**MLS [1]**  28/21
**Mm [1]**  48/13

**M**

Mm-hmm [1]  48/13
mobile [1]  51/1
modem [2]  31/14 31/15
modulate [1]  30/22
moment [5]  17/13 24/24 25/9 52/7 52/11
money [2]  20/13 20/14
monitoring [4]  36/20 39/19 43/13 46/3
Montgomery [6]  19/24 20/19 20/21
  21/12 22/2 50/10
month [3]  3/14 7/20 42/22
months [7]  3/13 13/2 13/3 15/24 19/12
  24/16 29/5
more [9]  10/17 13/24 16/9 18/2 19/17
  27/9 31/3 41/10 42/25
morning [2]  36/22 39/13
mornings [2]  36/25 41/24
mortgage [3]  20/8 20/13 20/16
most [4]  5/12 26/10 26/22 36/21
mother [4]  31/25 32/4 32/10 44/4
motion [1]  11/18
move [4]  12/6 16/25 39/4 39/6
moved [2]  12/8 12/23
moving [6]  6/11 38/19 39/2
Mr [27]  3/25 6/22 6/25 10/24 16/23
  17/19 19/8 22/12 23/12 24/3 27/18
  28/11 29/21 29/24 30/10 30/12 34/3
  34/4 36/21 41/11 45/8 45/20 46/14
  46/21 48/2 50/19 52/12
Mr. [32]  7/24 8/13 11/13 16/18 17/7
  17/25 19/16 20/17 21/6 21/21 30/4 30/5
  30/6 30/7 30/7 31/20 31/21 32/18 32/23
  33/14 34/4 34/6 36/14 36/14 38/3 38/5
  41/23 44/6 44/8 47/17 49/12 52/6
Mr. Ashton [2]  17/25 38/3
Mr. Bennett [11]  17/7 19/16 30/4 30/5
  30/6 30/7 33/14 34/6 41/23 49/12
Mr. Craven [4]  7/24 8/13 11/13 38/5
Mr. Ridgeway [1]  47/17
Mr. Robert [3]  31/20 36/14 44/6
Mr. Steel [5]  31/21 32/23 34/4 36/14
  44/8
Mr. Steele [1]  32/18
Mr. Ulander [3]  21/6 21/21 52/6
Mr. Ulander's [1]  20/17
Mr. Windom's [1]  16/18
Mrs [2]  39/20 46/13
Mrs. [4]  45/23 46/12 46/15 51/25
Mrs. Bennett [3]  45/23 46/12 46/15
Mrs. Bennett's [1]  51/25
Ms [61]
much [4]  6/13 10/3 31/3 38/16
must [2]  44/16 46/17
my [52]  2/10 3/5 4/2 5/5 5/10 5/19 6/19
  6/23 11/1 11/6 11/10 12/5 12/16 12/22
  13/5 13/17 13/23 14/10 17/19 23/12
  24/3 24/9 25/11 26/17 27/16 27/17
  27/20 27/25 28/19 29/18 30/1 30/4
  31/25 32/3 32/21 33/1 33/10 34/1 35/8
  37/3 37/5 38/2 39/9 40/15 41/2 41/18
  42/24 47/17 49/4 50/6 50/14 51/6
myself [1]  42/7

**N**

name [2]  31/17 52/1

narrow [1]  37/16
narrowly [1]  40/20
nature [1]  15/11 44/20
necessarily [1]  18/2
necessity [1]  7/6
need [15]  13/4 16/11 17/7 17/12 19/2
  29/20 32/9 38/11 39/22 39/22 41/3
  42/10 42/21 51/10 52/14
needed [2]  12/8 16/5
needing [1]  40/13
needs [17]  3/4 6/15 6/17 10/13 10/23
  11/19 11/24 11/24 11/25 13/4 13/8
  35/23 37/4 37/7 39/23 42/16 45/11
network [1]  50/22
neurologist [1]  10/23
new [12]  3/25 4/1 4/11 11/13 43/25
  44/19 44/20 47/7 48/21 48/24 49/1 49/1
next [5]  15/13 15/14 16/10 33/9 33/22
night [1]  28/8
no [41]  1/4 3/3 4/15 5/18 9/3 12/16
  15/24 24/13 24/13 26/25 28/7 28/9
  28/22 29/25 30/2 31/5 32/6 32/12 32/15
  33/17 34/16 35/8 35/16 36/17 37/21
  39/18 40/21 42/18 43/13 43/21 43/25
  43/25 45/22 47/1 47/3 48/24 49/1 49/1
  51/11 52/16 52/20
noble [1]  16/2
non [3]  3/3 7/18 18/3
non-compliance [1]  18/3
non-criminal [1]  7/1
non-obstruction [1]  3/3
none [1]  14/7
normally [3]  45/15 45/17 48/3
not [89]
note [1]  29/4
NOTES [1]  1/24
nothing [5]  17/22 18/18 33/12 36/15
  37/14
notice [2]  29/12 29/13
noticing [1]  48/20
notion [1]  27/23
notwithstanding [1]  19/25
now [24]  3/1 7/20 8/10 11/8 12/3 12/8
  13/4 13/6 14/1 14/19 16/23 20/5 23/1
  25/14 27/18 27/23 30/25 31/1 38/16
  41/20 42/21 43/6 43/16 45/7
number [7]  2/3 7/3 7/4 10/2 28/21 44/16
  46/2
numbers [2]  23/24 47/18
NW [1]  1/18

**O**

oath [2]  32/9 32/9
objective [1]  9/15
observe [1]  33/4
obstruction [1]  3/3
obtain [4]  38/22 43/25 47/24 48/24
obtained [2]  14/16 17/18
occasions [1]  35/3
occupied [1]  41/23
odd [1]  5/8
off [6]  11/2 13/2 22/14 32/8 40/15 49/4
offer [1]  9/24
offering [1]  12/1
office [6]  1/13 23/13 33/6 33/20 38/3
  38/16

officers [1]  41/16
OFFICIAL [2]  1/23 53/8
often [3]  35/21 41/7 42/1
Oh [3]  26/22 32/6 47/2
okay [30]  2/6 2/9 6/1 6/21 8/3 8/19 8/22
  9/25 21/6 22/11 22/11 22/16 23/11 30/6
  30/10 30/16 30/24 31/2 33/14 33/22
  36/12 46/13 46/23 47/10 49/12 49/16
  51/14 51/22 51/25 52/17
old [2]  13/2 34/6
on [80]
once [5]  35/22 35/22 40/8 44/24 46/20
one [33]  3/9 3/24 5/2 7/16 7/16 11/10
  13/6 13/9 18/6 18/12 18/13 19/20 20/2
  21/17 23/14 24/5 24/9 24/13 24/13 25/9
  28/22 29/18 31/24 32/3 32/7 32/12
  32/14 39/15 43/3 44/3 44/15 45/25
  51/15
one million [1]  23/14
onerous [1]  42/25
online [1]  47/13
only [17]  7/7 17/8 17/23 20/22 21/4 22/7
  24/20 29/16 33/11 37/17 38/9 39/9
  39/10 42/13 44/15 47/21 50/8
op [7]  15/10 15/23 16/12 18/9 18/19
  19/1 39/1
open [3]  19/5 44/19 44/20
operating [3]  13/2 16/6 42/9
opined [1]  3/15
opinion [1]  2/21
opportunities [1]  38/17
opportunity [6]  2/19 2/20 38/6 38/7
  38/14 52/22
opposed [1]  16/23
or [42]  4/8 4/9 4/9 5/13 6/15 6/16 7/15
  7/15 12/17 13/1 14/9 14/14 18/19 19/12
  20/1 24/12 28/17 31/11 32/8 33/24 34/4
  35/7 36/14 37/23 43/22 43/22 44/4 44/4
  44/21 44/22 45/10 45/21 46/18 46/19
  47/3 47/4 47/4 47/5 47/6 47/12 48/24
  49/6
order [27]  2/10 4/8 5/10 8/16 13/1 19/21
  20/10 21/9 21/24 22/2 22/3 22/7 22/9
  22/17 24/19 26/10 26/19 26/19 27/2
  33/11 34/1 45/15 47/7 48/11 48/21 51/7
  51/23
ordered [3]  10/9 19/21 48/20
ordering [1]  49/10
other [20]  8/16 11/12 14/23 14/25 15/2
  15/24 17/11 19/18 29/25 31/24 35/3
  37/23 43/22 44/22 45/10 47/11 48/19
  49/6 50/6 50/17
otherwise [4]  23/8 26/4 29/18 41/23
our [14]  4/24 6/5 9/14 9/15 11/16 17/16
  19/19 19/25 20/9 20/12 20/15 38/16
  50/22 50/22
out [21]  10/15 11/15 11/18 18/9 25/20
  25/23 26/21 27/22 28/1 28/2 31/13
  31/16 34/18 34/18 35/11 37/18 37/21
  39/8 47/18 49/8 49/11
out-of-state [1]  11/18
out-patient [1]  10/15
outside [2]  28/5 41/7
outstanding [1]  44/25
over [3]  6/25 7/14 43/5
overall [1]  23/3

**O**

overlap [1]  36/24
own [2]  12/14 32/4
owns [1]  31/25

**P**

P-R-O-C-E-E-D-I-N-G-S [1]  2/1
p.m [2]  1/8 52/24
Pacer [2]  20/20 27/5
package [7]  19/19 26/18 26/20 26/23 27/12 29/16 30/1
page [14]  8/18 8/19 9/1 9/2 22/15 22/19 22/21 22/21 22/23 23/1 23/1 23/1 45/18 51/15
paid [3]  20/13 20/15 50/4
papers [1]  49/18
paperwork [4]  43/19 44/13 45/13 45/14
paragraph [1]  47/1
parents [2]  31/22 33/1
parents' [3]  32/25 35/21 44/8
part [7]  6/12 15/22 17/8 20/13 23/2 24/17 34/1
parte [2]  14/4 44/25
participating [2]  5/6 12/14
particular [2]  20/8 36/15
parties [1]  14/18
parts [1]  15/2
party [9]  17/2 30/8 32/22 32/24 44/7 44/11 45/14 45/16 45/18
passport [5]  43/24 43/25 48/22 48/24 49/1
password [5]  32/8 32/11 39/21 46/17 46/19
past [1]  23/6
patient [3]  4/4 10/15 37/6
PAULA [1]  1/10
Pause [3]  17/15 25/10 51/24
pay [2]  24/20 45/22
penalties [3]  39/23 45/23 46/20
penthouse [4]  23/8 27/7 43/15 43/16
penthouses [2]  19/22 20/2
people [3]  9/5 25/20 46/8
percent [1]  43/18
perfect [1]  43/20
perform [1]  11/1
Performance [1]  22/1
performed [3]  4/13 10/13 13/5
performing [1]  11/6
perhaps [4]  16/21 36/23 37/20 46/25
perjury [3]  39/23 45/24 46/21
permission [1]  43/23
person [4]  8/15 11/14 44/23 47/4
PH [1]  28/12
PH-5C [1]  28/12
phone [19]  16/9 18/19 32/5 32/7 32/8 32/11 32/15 32/20 38/15 39/20 44/18 45/25 46/1 46/2 46/5 46/6 46/19 47/17 47/18
phones [2]  31/12 46/8
phrase [1]  28/19
physically [1]  2/19
pictures [1]  28/4
piece [5]  14/25 19/7 39/16 41/4 50/1
pieces [1]  18/21
pin [1]  10/1

place [35]  5/22 9/2 14/10 21/14 23/15 23/17 23/21 23/22 25/15 26/10 26/13 27/2 36/24 37/7 39/2 39/11 39/15 40/1 40/6 40/12 40/14 41/3 43/5 43/17 44/14 46/2 46/3 47/2 48/15 49/19 50/2 50/3 50/10 50/11 51/17
placement [1]  3/25
plan [5]  8/4 8/17 18/19 24/7 25/8
planned [1]  8/7
plans [1]  38/20
playing [2]  14/5 40/7
plays [1]  35/9
plenty [1]  14/20
plus [1]  36/2
podium [1]  7/1 30/11
point [7]  8/23 11/4 16/7 18/24 23/3 38/9 42/5
position [7]  3/6 3/22 4/24 5/17 16/18 17/16 29/21
possessing [1]  49/5
possibility [3]  10/15 10/16 50/21
possible [7]  9/4 11/25 16/21 18/8 20/3 39/3 39/7
possibly [1]  2/12
post [1]  25/23
posted [2]  19/23 25/21
potential [3]  8/11 10/4 47/4
potentially [2]  6/5 39/3
practical [1]  26/5
pre [7]  15/10 15/23 16/12 18/9 18/19 19/1 39/1
pre-op [7]  15/10 15/23 16/12 18/9 18/19 19/1 39/1
prepared [4]  9/16 9/19 9/24 11/5
present [6]  9/16 9/19 16/5 35/6 43/7
presentation [1]  19/7
presented [1]  11/19
preserve [1]  29/21
pressing [1]  40/9
presumptuous [1]  11/3 16/15
pretrial [23]  33/6 38/4 39/17 41/1 43/2 43/10 43/11 43/12 44/2 44/11 44/12 44/16 44/16 44/20 44/23 45/11 45/13 45/21 47/20 47/23 47/24 51/7 51/18
pretty [10]  10/3 30/15
prevent [1]  20/4
previous [2]  26/19 26/19
previously [4]  26/18 43/5 48/20 49/7
price [1]  25/14
primarily [1]  2/12
principal [1]  20/14
prior [5]  19/20 20/9 40/17 44/20 44/23
privately [1]  27/22
probably [1]  20/7
problem [2]  28/16 40/23
problems [1]  38/18
procedure [2]  10/13 11/1
procedures [4]  10/10 15/22 37/7 39/2
proceedings [3]  1/10 29/14 53/3
proceeds [1]  25/15
process [5]  15/23 16/19 25/13 26/12 51/19
product [1]  24/18
professional [1]  50/14
proffer [4]  9/22 39/10 41/6 41/22

proffering [1]  38/23
promise [1]  31/5
proof [2]  20/25 21/2
proper [2]  43/19 44/13
properties [1]  25/12
property [35]  19/22 20/8 20/12 20/13 20/19 20/24 21/9 21/13 21/19 21/25 22/1 22/4 22/5 22/9 22/18 22/18 22/19 22/23 23/4 23/14 23/20 23/25 24/22 25/2 25/6 26/3 26/18 26/20 27/6 29/5 29/22 29/23 43/20 50/2 50/16
propose [1]  14/12
prosecution [1]  47/5
protect [1]  42/5
protected [3]  32/8 39/21 46/17
protocol [2]  19/1 19/2
provide [4]  3/7 9/15 39/1 41/2
provided [3]  4/19 12/23 44/16
provider [7]  4/1 4/7 4/11 11/9 11/11 12/9 48/10
provides [1]  40/25
providing [1]  5/1
province [1]  41/15
prudent [3]  16/20 19/11 19/13
pub [3]  34/11 34/12 34/14
public [2]  27/21 28/6
publicly [2]  27/25 28/9
pull [1]  31/13
pulse [1]  14/11
purpose [3]  2/23 10/7 25/19
pursue [1]  29/13
pursuing [1]  45/2
push [1]  16/18
put [12]  7/7 8/15 9/8 14/10 20/2 22/13 25/14 26/4 26/17 32/9 40/6 44/14
putting [1]  29/11
PX [2]  1/5 2/4
PX-17-0472 [2]  1/5 2/4

**Q**

quarter [1]  34/22
question [5]  9/18 31/24 33/18 33/22 37/3
questions [5]  5/2 27/10 34/4 45/8 50/19
quibbling [1]  5/10
quick [1]  25/1
quickly [1]  11/25

**R**

raise [1]  17/6
raised [2]  45/9 50/21
rate [1]  50/25
react [1]  16/1
read [1]  29/6
reading [1]  21/3
real [2]  10/20 25/1
really [10]  6/13 7/4 8/9 11/23 16/22 27/15 28/7 41/21 48/15 49/25
reason [11]  2/12 6/10 13/12 14/19 17/23 26/20 26/24 29/16 32/3 42/13 44/18
reasonable [2]  26/25 40/14
reasonably [1]  3/2
reasons [7]  7/16 19/18 29/25 37/23 38/1 40/21
reassurance [1]  26/6
recall [1]  49/4

# R

**receipt [3]** 21/11 22/3 22/6
**receipts [1]** 22/19
**receive [2]** 15/21 42/18
**received [2]** 2/15 2/24
**recent [2]** 5/12 26/22
**Recess [1]** 52/24
**recognize [1]** 9/6
**recognizing [1]** 7/25
**recommendations [1]** 11/15
**record [17]** 2/22 3/13 5/1 5/24 7/9 20/20 20/22 21/9 21/24 22/3 22/14 22/17 23/3 25/7 27/7 42/8 53/3
**recordation [2]** 20/23 22/6
**recorded [3]** 17/5 25/2 50/9
**recording [2]** 21/11 21/13
**records [53]** 2/16 2/18 2/20 2/21 4/2 4/5 4/6 4/7 4/11 4/12 4/17 4/18 4/22 5/5 5/11 5/12 5/18 5/22 6/3 6/13 6/19 7/7 8/14 9/4 11/20 11/23 13/1 13/2 13/3 13/7 13/8 14/16 14/21 17/19 17/21 18/6 20/7 21/1 22/2 25/7 27/5 27/7 38/22 40/5 44/17 45/3 45/4 47/21 47/24 48/6 48/12 48/17 50/9
**Redfin [2]** 28/22 28/22
**referring [1]** 45/17
**reflect [1]** 20/20
**reflected [1]** 21/17
**refrain [1]** 49/5
**regard [3]** 2/22 33/7 37/8
**regarding [2]** 5/24 17/10
**regardless [3]** 18/4 18/20 47/25
**regular [2]** 43/10 43/10
**reinstitute [2]** 49/25 50/13
**reinstituting [1]** 50/3
**release [27]** 3/23 8/1 8/7 10/2 13/13 14/3 14/13 15/14 17/3 19/10 19/20 28/18 29/16 29/22 30/2 31/4 32/21 33/11 33/11 37/23 42/3 42/24 45/15 47/7 47/24 48/5 51/7
**released [19]** 7/6 10/5 11/3 11/7 14/14 21/14 23/9 24/6 27/12 38/25 39/25 40/8 40/20 45/21 46/4 50/15 50/18 51/16 51/20
**releasing [4]** 2/13 29/22 31/2 37/15
**remain [2]** 23/16 23/22
**remains [1]** 32/11
**remember [1]** 23/24
**remind [1]** 31/17
**remove [1]** 31/6
**removed [2]** 49/9 49/13
**reply [1]** 2/25
**report [8]** 2/17 7/8 8/5 11/22 33/5 44/25 45/3 45/4
**REPORTER [3]** 1/23 53/1 53/8
**Reporting [1]** 43/11
**reports [1]** 40/4
**representations [1]** 41/16
**request [3]** 16/21 16/23 40/16
**requested [3]** 38/7 41/4 41/10
**require [1]** 40/3
**required [1]** 16/6
**requirement [1]** 40/21
**requires [1]** 37/4
**residence [4]** 49/9 49/10 49/11 49/13

**residing [1]** 49/8
**resolves [1]** 19/6
**respect [7]** 4/4 14/24 16/17 19/9 28/17 29/23 47/11
**response [1]** 2/24
**responsible [1]** 16/24
**restraint [1]** 26/4
**restricted [1]** 3/23
**restriction [1]** 14/13
**restrictive [2]** 13/12 31/3
**retained [1]** 24/20
**retrograde [1]** 10/13
**return [1]** 18/23
**review [11]** 1/10 2/2 2/10 2/18 2/20 6/19 13/8 43/6 51/4 51/10 52/8
**reviewed [2]** 12/6 52/5
**revoked [1]** 21/14
**Ridgeway [5]** 45/20 46/21 47/17 48/2 52/12
**right [34]** 3/1 8/10 9/2 11/10 13/25 14/19 15/7 16/23 19/4 19/6 21/8 21/16 22/25 23/24 27/11 31/23 32/18 33/18 36/8 37/10 41/11 42/13 42/21 43/16 46/24 48/2 48/18 49/1 49/20 52/5 52/12 52/17 52/18 52/21
**rightfully [1]** 45/9
**risk [3]** 10/20 10/22 13/11
**road [1]** 42/3
**Robert [4]** 31/20 34/4 36/14 44/6
**robust [1]** 24/16
**room [1]** 26/2
**RPR [1]** 53/8
**run [1]** 13/11
**runs [1]** 32/4
**RYAN [2]** 1/17 2/7

# S

**S-U-E [1]** 52/3
**said [7]** 7/18 11/21 23/13 24/14 37/18 46/11 49/17
**sale [10]** 20/2 24/5 24/23 25/8 25/14 27/14 27/21 27/25 28/10 29/11
**same [5]** 11/11 12/9 22/21 44/14 51/14
**satisfied [1]** 46/22
**say [5]** 3/18 3/18 5/4 19/13 23/18
**saying [9]** 6/2 6/3 10/23 11/19 25/5 27/16 30/22 33/15 46/5
**says [2]** 9/1 47/17
**schedule [5]** 19/14 28/15 34/8 36/1 36/23
**scheduled [5]** 7/19 9/23 10/25 17/17 39/7
**scope [1]** 5/10
**seat [1]** 37/11
**seated [1]** 2/8
**second [3]** 9/14 22/3 22/19
**secure [3]** 22/1 25/13 29/10
**secured [2]** 25/12 25/14
**see [17]** 8/20 15/17 15/25 21/7 22/10 22/11 22/22 28/5 30/6 30/16 30/18 33/6 38/12 45/6 50/3 50/8 50/9
**seek [2]** 26/4 26/11
**seem [3]** 3/22 5/11 30/22
**seems [3]** 10/1 12/25 15/8
**sees [1]** 32/17
**seized [1]** 43/24

**sell [2]** 23/8 26/16
**selling [1]** 25/20
**sense [4]** 3/5 6/14 25/22 49/25
**senses [1]** 41/2
**sent [1]** 4/6
**separate [2]** 23/25 24/21
**September [7]** 19/21 21/10 21/10 38/21 40/13 41/4 42/22
**September 25th [1]** 21/10
**serious [3]** 4/25 6/4 28/6
**seriously [3]** 28/7 42/2 42/14
**Service [1]** 45/14
**Services [1]** 33/6
**set [7]** 14/21 19/19 20/12 20/18 33/5 42/21 44/9
**setting [3]** 13/5 13/20 47/7
**several [1]** 41/23
**share [2]** 12/11 37/13
**shared [1]** 44/2
**she [68]**
**she's [26]** 5/6 5/6 5/22 5/23 6/9 6/10 6/16 8/15 10/4 11/8 12/20 12/22 13/18 13/19 13/20 14/7 18/16 23/7 35/11 36/10 38/15 42/4 42/17 45/24 47/18 47/18
**sheet [1]** 45/15
**short [1]** 6/12
**shortcoming [1]** 6/12
**should [13]** 3/23 7/5 16/9 16/9 21/13 25/3 29/6 36/5 36/6 42/1 45/3 47/19 50/11
**shouldn't [1]** 24/11
**show [3]** 5/6 5/13 8/25
**showing [1]** 7/11
**shown [2]** 15/24 28/20
**shows [1]** 6/14
**side [2]** 8/9 37/12
**sign [3]** 43/7 45/15 52/9
**significant [6]** 13/8 38/1 38/8 38/15 38/18 41/17
**signing [1]** 48/8
**signs [2]** 45/18 46/20
**silly [1]** 28/22
**similar [1]** 22/4
**simple [1]** 39/12
**simply [1]** 7/13
**since [5]** 18/1 20/5 26/13 50/10 50/11
**single [1]** 3/12
**sir [6]** 30/14 31/18 34/6 35/12 35/13 36/4
**sister [2]** 32/11 33/9
**site [1]** 12/19
**sits [1]** 35/10
**situation [5]** 11/18 13/8 17/10 42/16 47/16
**six [1]** 19/12
**skipped [1]** 18/1
**smells [1]** 25/24
**so [105]**
**solid [1]** 42/21
**some [23]** 3/19 3/23 5/4 6/4 7/6 11/19 13/14 14/23 15/9 15/10 17/6 18/24 20/9 26/1 26/1 26/5 26/8 36/24 40/14 41/24 50/21 51/1 52/13
**somebody [1]** 16/24
**somehow [2]** 28/1 50/10

## S

**someone [3]** 5/12 8/8 24/10
**something [7]** 11/17 15/22 20/4 21/6 27/17 35/23 38/11
**sometimes [3]** 15/21 34/25 35/25
**son [1]** 31/18
**soon [4]** 16/20 18/8 18/21 39/3
**sooner [1]** 39/4
**sorry [4]** 7/2 9/25 18/11 23/18
**sort [6]** 7/6 10/6 15/10 20/9 50/21 51/1
**sought [1]** 4/18
**sounds [4]** 12/24 32/24 36/25 37/1
**SOUTHERN [1]** 1/2
**SPARKS [3]** 1/17 2/8 27/18
**speak [4]** 10/17 23/13 24/9 52/12
**speaks [1]** 20/10
**Special [1]** 2/5
**specific [2]** 17/20 24/19
**specified [1]** 22/20
**specify [2]** 22/18
**spirit [1]** 12/1
**spoken [1]** 38/3
**staff [1]** 18/25
**standing [2]** 27/2 27/18
**standpoint [2]** 12/12 12/15
**start [2]** 3/6 8/24
**state [2]** 11/18 30/3
**STATES [6]** 1/1 1/4 1/11 1/13 2/3 2/4
**status [4]** 40/4 44/25 45/1 45/4
**stay [5]** 24/17 34/9 42/17 50/3 50/11
**staying [3]** 36/5 36/6 43/2
**Steel [6]** 31/21 32/23 34/4 36/14 44/7 44/8
**Steele [2]** 31/19 32/18
**STENOTYPE [1]** 1/24
**step [5]** 6/25 9/14 15/13 15/14 52/12
**stepped [1]** 40/10
**steps [2]** 16/10 16/14
**still [17]** 14/21 16/1 21/14 23/15 23/21 25/6 25/7 25/15 27/1 32/24 43/17 46/7 47/2 49/11 49/19 50/2 52/15
**stinks [1]** 25/24
**stop [2]** 25/20 26/5
**storage [1]** 50/25
**store [1]** 19/17
**stored [1]** 50/23
**strange [1]** 5/15
**Street [1]** 1/18
**stringent [2]** 17/3 50/15
**struggling [1]** 3/1
**subject [1]** 6/4
**submission [2]** 2/25 9/14
**submit [2]** 44/24 52/6
**submitted [2]** 7/9 9/22
**substantive [1]** 5/18
**such [2]** 9/23 50/15
**suddenly [1]** 40/8
**Sue [2]** 52/2 52/3
**sufficient [1]** 30/1
**suggest [1]** 7/16
**suggests [1]** 13/4
**suitable [1]** 17/2
**Suite [2]** 1/14 1/18
**Sullivan [1]** 21/9
**supplement [1]** 2/15

**supplemental [1]** 3/6
**support [1]** 3/22
**supporting [1]** 38/22
**supposed [1]** 13/19
**sure [22]** 6/20 9/7 9/12 15/11 15/18 15/23 24/10 24/20 30/13 31/7 31/22 33/1 33/21 34/1 44/11 48/4 48/21 49/11 49/25 50/14 51/22 52/14
**surgeries [1]** 11/20
**surgery [23]** 7/20 8/5 8/7 8/16 9/23 10/3 10/4 10/7 10/14 10/18 10/20 10/25 11/7 14/13 14/24 15/19 15/23 16/16 17/17 18/14 39/4 39/6 39/12
**surgical [3]** 13/5 13/9 37/6
**surrender [1]** 48/21
**suspender [1]** 26/8
**switched [1]** 9/18

## T

**table [1]** 2/5
**tailor [1]** 40/20
**tainted [4]** 24/18 24/21 26/3 29/9
**take [17]** 2/21 11/22 15/13 16/22 16/24 29/4 31/16 32/7 33/15 36/24 37/7 41/3 43/21 48/15 50/4 51/1 51/5
**taken [2]** 35/23 49/8
**takes [3]** 14/25 15/15 42/3
**taking [1]** 40/15
**talk [5]** 6/18 9/19 13/23 17/24 30/11
**talked [1]** 36/9
**talking [2]** 8/24 30/4
**team [6]** 14/10 29/16 33/25 34/1 36/17 44/5
**technically [1]** 31/25
**telephone [1]** 38/13
**television [1]** 34/10
**tell [7]** 3/24 6/23 24/10 30/24 32/23 41/2
**telling [1]** 8/3
**ten [1]** 34/22
**tennis [1]** 35/9
**tentative [1]** 11/2
**tentatively [3]** 8/1 16/15 17/17
**term [1]** 25/20
**terms [8]** 13/11 13/22 15/3 16/12 17/24 39/15 39/16 41/17
**terrible [1]** 30/20
**test [1]** 6/7
**tests [3]** 4/14 13/4 14/24
**texting [1]** 32/20
**than [3]** 41/10 41/19 43/1
**thank [17]** 3/9 6/23 19/4 30/19 35/12 36/11 36/12 37/10 42/11 42/12 43/2 44/12 46/23 46/24 49/16 51/8 52/20
**that [347]**
**that's [42]** 4/3 5/9 9/7 9/23 10/22 11/10 11/12 12/1 12/22 13/9 13/17 15/20 15/22 15/22 20/20 21/4 21/16 21/18 21/23 22/2 22/7 23/10 24/3 24/21 25/21 25/22 26/24 27/2 27/13 27/15 27/15 31/12 31/25 32/14 38/4 39/7 39/8 39/9 41/23 43/16 44/9 51/8 52/9
**their [5]** 19/15 26/20 31/22 33/20 41/15
**them [15]** 4/17 5/16 11/25 12/1 13/11 14/7 24/1 26/14 31/16 33/20 43/6 43/7 43/7 46/8 52/9

**then [28]** 2/18 3/7 4/7 5/23 8/4 8/16 10/17 10/18 10/19 11/17 14/12 14/23 15/11 18/18 18/25 21/12 22/2 22/3 22/5 24/5 25/16 25/23 26/21 27/14 29/15 37/20 40/3 49/23
**there [50]** 3/12 3/16 5/18 5/21 5/24 6/2 7/7 8/7 10/15 10/16 10/16 11/4 12/13 15/20 17/2 17/10 19/20 20/7 22/20 22/23 25/1 25/13 26/25 27/1 27/5 28/19 30/2 31/5 33/3 33/17 33/18 35/8 36/16 36/17 36/17 36/21 37/3 37/25 38/8 38/14 39/18 41/6 44/15 45/10 45/22 47/19 47/22 48/19 49/4 50/12
**there's [28]** 7/4 7/8 8/20 10/20 10/21 11/24 15/10 19/1 19/1 19/14 20/4 20/14 21/16 22/20 23/24 23/25 26/19 26/24 27/9 29/3 36/16 37/6 37/19 37/21 37/21 40/17 40/21 42/18
**thereof [1]** 5/13
**these [17]** 4/8 5/12 6/4 9/16 10/9 11/14 17/20 28/18 29/3 29/4 29/8 29/9 39/7 40/8 41/24 51/17 52/8
**they [30]** 3/20 4/6 4/12 4/13 6/7 10/9 10/16 10/18 11/5 12/8 13/4 17/20 19/15 23/22 25/13 25/14 26/3 26/15 26/20 29/13 29/14 39/6 41/7 41/18 41/19 42/1 42/9 46/7 48/21 50/2
**they'd [1]** 41/22
**they're [7]** 6/7 23/21 24/2 27/21 28/20 38/9 43/9
**thing [5]** 3/24 9/19 15/16 33/9 49/21
**things [6]** 5/9 14/10 19/13 31/10 39/7 40/12
**think [27]** 3/5 3/9 7/3 7/14 7/24 10/19 11/9 11/11 15/11 16/7 16/8 16/19 18/1 16/9 24/2 24/8 25/17 30/1 30/4 32/10 32/17 36/19 37/9 38/7 40/13 41/14 46/7
**thinking [2]** 17/23 39/14
**third [9]** 17/2 30/8 32/22 32/24 44/7 44/11 45/14 45/16 45/18
**third-party [9]** 17/2 30/8 32/22 32/24 44/7 44/11 45/14 45/16 45/18
**this [91]**
**THOMAS [1]** 1/13 2/4
**those [21]** 2/20 3/20 4/12 4/12 4/13 4/19 4/25 6/7 6/19 13/1 14/8 14/21 16/3 18/21 23/16 25/12 36/18 40/12 44/1 45/4 48/5
**though [1]** 21/25
**thought [8]** 6/3 11/3 18/2 19/10 19/13 19/18 25/13 27/11
**three [5]** 20/5 34/13 37/18 38/21 39/11
**through [7]** 7/7 10/6 10/21 16/14 18/16 20/25 26/15
**Thursday [2]** 1/7 45/6
**tight [1]** 30/3
**time [18]** 2/11 3/13 14/1 14/15 14/20 14/25 16/1 26/9 27/9 29/10 29/18 35/13 36/2 36/3 36/16 38/12 42/10 49/21
**timeframe [2]** 37/16 40/20
**timeline [3]** 16/5 16/9 42/19
**times [2]** 15/22 34/13
**timestamps [1]** 22/20
**timing [1]** 11/5
**title [2]** 26/14 26/15
**today [13]** 9/15 9/18 9/24 15/14 18/4

## T

today... [8] 18/20 29/4 37/18 38/23
38/25 39/16 43/8 52/10
today's [1] 6/4
together [1] 2/12
told [1] 12/15
too [1] 17/1
top [3] 12/10 28/11 49/4
touch [3] 10/24 18/23 38/5
tour [2] 28/14 28/15
toward [1] 20/15
transactions [1] 44/22
transcript [2] 1/10 53/3
TRANSCRIPTION [1] 1/24
transcripts [1] 29/6
transferred [1] 25/16
transitions [1] 10/17
travel [5] 30/3 35/24 43/25 48/24 49/2
travels [1] 32/4
treatable [1] 4/9
treated [3] 4/9 4/25 17/21
treating [1] 6/8
treatment [3] 7/12 13/19 18/9
tri [1] 30/3
tri-state [1] 30/3
trial [8] 13/10 13/16 38/20 38/21 40/13
41/3 42/22 42/23
troubling [1] 23/5
true [2] 7/18 7/23
trust [2] 25/16 29/15
trusted [1] 42/8
truthful [2] 3/21 3/21
try [1] 30/25
trying [4] 9/21 16/15 23/8 27/21
Tuesday [2] 45/7 45/7
turn [1] 3/7
Twenty [1] 35/20
Twenty-five [1] 35/20
two [24] 3/13 4/5 7/10 7/15 13/2 13/3
13/5 13/10 14/5 18/8 18/19 18/21 19/22
20/6 21/17 23/23 23/25 32/7 32/15
35/22 38/9 38/21 40/7 40/12
Type [1] 18/4
typical [1] 41/1

## U

U.S.C [1] 26/11
Ulander [4] 21/6 21/21 28/11 52/6
Ulander's [1] 20/17
ultimate [1] 17/8
ultimately [1] 42/18
unacceptable [1] 19/19
under [10] 10/14 25/21 26/11 31/3 32/9
32/9 39/23 39/24 45/23 46/20
undermining [1] 5/4
understand [8] 3/12 7/8 7/14 12/19
12/20 13/18 32/13 44/7
understanding [17] 4/2 4/15 5/19 6/6
11/1 11/6 12/22 13/24 17/19 25/11
27/20 27/25 28/19 33/2 38/2 41/18
50/12
understands [2] 39/24 46/16
unfortunately [1] 49/3
UNITED [6] 1/1 1/4 1/11 1/13 2/3 2/4
United States [1] 2/4

units [1] 43/15
University [7] 4/19 7/25 8/15 10/24 11/8
11/15 15/17
unless [6] 10/4 21/14 25/18 35/22 37/19
41/2
unsecured [9] 20/23 21/18 22/8 22/23
23/14 23/19 27/3 27/8 49/19
until [4] 14/14 45/21 46/2 51/16
up [35] 7/11 8/5 10/21 11/17 13/9 14/7
15/9 15/11 15/24 18/5 20/2 21/5 21/21
24/5 24/23 25/8 25/8 25/14 27/14 29/11
30/11 34/3 37/4 37/19 37/20 38/10 39/1
39/4 39/6 42/16 44/19 44/20 48/10 50/4
52/23
update [2] 40/4 40/5
updated [1] 15/21
updates [1] 14/4
upload [1] 50/23
upon [2] 7/5 43/18
ups [1] 14/24
urethra [1] 10/21
urgency [1] 37/17
urging [1] 42/23
urine [1] 10/9
urologist [1] 11/14
us [8] 2/8 4/20 9/13 14/20 16/24 38/9
38/17 51/1
use [6] 25/19 28/18 44/16 44/18 46/1
47/12
using [3] 2/23 25/20 32/17
utterly [1] 49/18

## V

validation [1] 23/2
value [5] 27/22 27/23 50/3 50/8 50/9
various [2] 8/16 10/10
verified [2] 40/25 49/9
verifies [1] 51/17
verify [1] 47/19
version [1] 25/22
versus [3] 2/3 5/11 18/20
very [16] 12/4 12/5 13/12 13/12 13/16
18/21 22/4 24/18 37/2 52/9
victim [1] 47/4
victims [3] 49/23 49/24 50/5
view [8] 3/5 26/3 26/17 28/5 36/4 36/6
42/24 51/12
viewed [1] 4/7
viewing [1] 51/12
viewpoint [1] 17/20
views [1] 19/15
vigorous [1] 42/23
violates [2] 40/1 42/4
violating [1] 51/6
violation [3] 32/21 33/4 44/10
violations [1] 33/6
Virginia [1] 45/22
virtue [1] 13/6
visit [1] 45/22
visits [2] 38/9 42/8
voided [1] 47/18

## W

wait [8] 8/25 8/25 14/1
waiver [1] 4/6
walk [1] 39/12

want [18] 6/19 11/2 12/11 14/6 14/10
15/25 16/14 18/5 24/4 32/5 39/16 40/1
41/15 45/12 46/11 47/16 47/22 48/20
wanted [1] 8/1
wants [1] 38/20
warden [1] 38/5
warrant [1] 30/4
warranted [1] 6/11
was [45] 5/17 6/4 6/4 7/9 7/24 9/15 9/17
9/21 11/14 11/20 12/4 12/6 12/7 18/2
18/2 19/12 19/13 19/19 20/1 20/13
20/15 20/18 21/14 21/15 22/14 23/2
23/6 24/7 25/1 25/2 25/13 26/2 26/5
26/9 26/18 26/19 30/1 38/14 41/10
41/19 49/4 49/7 49/9 49/21 49/21
washing [1] 10/11 10/12
Washington [1] 1/19
wasn't [5] 23/6 24/22 26/6 27/11 49/21
way [10] 6/16 13/12 19/16 25/17 25/18
25/18 26/8 40/1 47/19 48/14
ways [2] 26/5 32/7
we [95]
we'd [1] 15/16
we'll [4] 13/15 40/9 48/9 49/10
we're [17] 2/2 2/10 3/9 7/3 9/3 9/16 9/19
13/1 24/14 33/17 33/17 38/19 42/19
44/14 45/20 48/20 50/16
we've [6] 4/22 5/3 11/19 20/10 25/25
42/3
weapons [1] 49/6
websites [1] 31/11
weeds [1] 47/22
week [7] 7/15 34/13 35/22 38/7 38/10
41/11 41/24
weekly [4] 14/4 40/3 44/24 45/1
weeks [8] 7/10 7/15 20/5 35/22 37/18
38/21 39/11 42/22
welcome [3] 2/6 2/9 51/9
well [18] 2/25 3/24 4/10 12/25 13/16
13/22 14/25 16/8 21/7 21/20 28/1 28/11
37/22 37/25 41/9 41/14 42/17 51/13
went [1] 21/1
were [23] 2/11 2/21 3/20 3/21 5/18 8/15
9/16 14/3 15/13 16/13 16/15 17/16
17/19 17/22 23/23 24/20 41/7 42/17
43/4 47/25 48/1 48/5 48/20
weren't [1] 17/23
Wexford [7] 6/6 11/13 12/5 12/10 12/20
12/20 13/15
what [62]
what's [8] 8/9 14/11 15/5 15/14 23/11
25/8 34/8 36/1
whatever [4] 14/16 14/19 37/17 48/10
whatnot [3] 7/12 7/15 19/12
whatsoever [4] 43/14 43/21 43/25 44/18
when [18] 7/6 10/2 13/13 22/11 24/5
25/19 26/2 33/22 34/18 34/21 34/23
35/6 38/14 41/19 41/23 45/3 49/7 51/5
where [17] 3/1 5/22 8/25 10/18 11/18
12/3 12/7 12/13 13/8 13/25 14/10 20/18
35/17 36/17 47/16 50/22 50/22
whether [11] 4/8 5/10 14/9 19/14 19/15
20/1 28/17 36/5 36/6 45/21 48/1
which [37] 2/17 3/13 3/15 4/6 5/5 5/6
5/13 7/5 7/7 7/17 7/20 9/15 11/16 13/20
14/25 15/1 20/10 20/22 21/14 21/21

**W**

**which... [17]**  23/3 23/5 23/8 23/23 25/22 26/11 26/13 30/4 33/4 39/24 40/20 41/10 42/17 43/5 45/4 47/8 50/6
**while [6]**  3/3 13/24 25/12 38/13 51/11 52/15
**who [16]**  2/20 4/1 8/14 8/14 8/15 9/5 11/19 13/6 13/7 14/7 17/2 29/4 30/7 35/6 37/2 47/4
**whole [3]**  16/18 25/19 29/15
**whose [1]**  18/13
**why [21]**  2/12 3/12 4/23 7/14 7/21 7/22 8/3 8/6 8/10 13/19 17/23 19/20 24/5 24/13 24/23 25/5 25/7 25/8 27/14 28/9 49/4
**wife [1]**  35/8
**wife's [2]**  36/4 36/6
**will [36]**  3/2 14/18 14/20 14/20 14/21 17/3 18/9 18/18 18/23 19/15 23/16 30/2 30/3 33/18 33/23 39/25 40/10 40/11 41/25 43/10 43/11 43/11 43/12 44/1 44/2 44/11 44/12 45/4 45/14 46/15 46/18 47/20 47/22 50/2 50/17 52/6
**willing [11]**  30/5 31/6 31/21 33/5 33/25 36/23 37/2 37/8 41/22 49/21 50/4
**WINDOM [11]**  1/13 2/4 3/25 6/22 6/25 19/8 22/12 29/21 29/24 34/3 45/8
**Windom's [1]**  16/18
**Wisconsin [4]**  23/15 23/20 28/12 43/17
**wish [7]**  17/11 27/18 29/13 36/13 36/18 37/23 52/15
**wishes [2]**  3/7 37/12
**without [11]**  2/18 10/6 20/3 27/16 29/12 32/5 43/22 44/20 44/23 46/1 46/8
**witness [2]**  44/10 47/5
**wondered [1]**  19/20
**wood [1]**  5/8
**word [1]**  25/19
**work [8]**  15/20 15/20 15/21 25/18 25/18 33/25 36/1 45/24
**works [2]**  25/17 48/6
**would [60]**
**wouldn't [1]**  6/14
**wrap [2]**  27/16 28/5
**wrap-around [1]**  28/5
**wrestling [1]**  49/21
**Wright [2]**  1/18 7/19
**writing [7]**  24/4 38/11 39/22 43/7 44/24 45/23 46/11
**written [3]**  43/16 51/22 52/5
**wrong [2]**  21/4 25/20

**X**

**XINIS [1]**  1/10

**Y**

**yeah [6]**  41/14 46/14 48/7 48/7 48/9 50/13
**Yep [1]**  35/14
**yes [33]**  4/3 5/25 7/2 12/2 18/8 18/13 19/3 21/3 22/7 22/13 27/20 28/13 30/5 30/9 31/15 32/19 33/8 34/2 34/5 37/9 45/19 46/7 47/2 47/9 48/11 48/13 48/23 49/17 50/20 51/3 51/6 51/14 52/4
**yesterday [1]**  19/20

**yet [3]**  17/4 33/17 44/9
**you [174]**
**you'll [3]**  43/25 44/9 44/24
**you're [21]**  12/1 15/23 25/5 27/15 27/17 27/18 28/24 28/25 28/25 30/5 30/22 31/11 33/3 35/6 36/21 43/6 43/9 45/17 49/13 49/20 51/9
**you've [6]**  8/4 8/4 8/4 12/3 28/3 41/10
**your [109]**
**yourselves [1]**  6/18

**Z**

**Zillow [3]**  28/6 28/7 28/22