UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 17-CR-00472-PX-1 |
| DAWN J. BENNETT, ET AL., | |
| Defendants. | |

# MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR A NEW TRIAL

## INTRODUCTION

This matter arises before the Court based upon the 17 Count Superseding Indictment issued on November 29, 2017, against Defendant Dawn J. Bennett ("Ms. Bennett"), as well as Co-Defendant Bradley C. Mascho (Mr. Mascho), alleging a conspiracy to commit securities fraud, wire fraud, bank fraud, and similar offenses, covering a span from November 2014 through August 2017, as well as the jury's verdict in the above-captioned case.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY.

Ms. Bennett was the sole owner of DJB Holdings LLC (Hereinafter "DJBennett"), and internet based company focused upon the sale of exclusive sports equipment and apparel intended for very discriminating customers. Ms. Bennett founded DJBennett in approximately 2010. The company itself employed individuals and entered into contracts with independent contractors to perform retail internet marketing. Ms. Bennett sought to grow the company into a major internet retailer.

Ms. Bennett was the largest investor in DJBennett. Over the first few years of the company's existence, she used her own considerable wealth to finance the company's operations. As the cost of operations increased, she sought to use debt instruments to finance the company's operations. She therefore went to friends and family members and borrowed money using promissory notes with a 15% rate of return per annum. These promissory notes are a central issue in this matter.

At various times, Ms. Bennett supplied noteholders with financial statements that appear to have been inaccurate. No evidence was presented to show where the numbers in the financial statements originated; however, a co-defendant, Brad Mascho, served as Chief Financial Officer, and compelling circumstantial evidence was presented to show that Mr. Mascho originated these numbers. By contrast, there is no evidence that Ms. Bennett was aware of the inaccuracy of the numbers. There was also no evidence presented to show any agreement between Ms. Bennett and Mr. Mascho. In fact, despite the plethora of emails and the numerous witnesses that testified, there was no indication of anything other than normal business operations.

On November 29, 2017, a grand jury for the District of Maryland returned a multi-count Superseding Indictment against Ms. Bennett and Mr. Mascho. Ms. Bennett was charged with the following crimes: 1) Count I (Conspiracy to Commit Securities Fraud, 18 U.S.C. § 371); 2) Counts II thru V (Securities Fraud, 15 U.S.C. §§ 78j(b) & 78ff; 3); 3) Count VI (Wire Fraud Conspiracy, 18 U.S.C. § 1349); 4) Counts VII thru XV (Wire Fraud, 18 U.S.C. § 1343); Count XVI (Bank Fraud, 18 U.S.C. § 1344); and Count XVII (False Statements on a Loan Application, 18 U.S.C. § 1014). A jury trial was held in this matter from October 2, 2018 through and inclusive of October 17, 2018. The jury convicted Ms. Bennett on all Counts of the Superseding Indictment on October 17, 2018.

# ARGUMENT

## A. STANDARD OF REVIEW

Pursuant to Fed. R. Crim. P. 29, the Court may set aside a jury's decision. Federal Rule of Criminal Procedure 29 states in pertinent part that:

> Rule 29. Motion for a Judgment of Acquittal
>
> (c) After Jury Verdict of Discharge
>
> (1) Time for a Motion. A Defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later.
>
> (2) Ruling on the Motion.
>
> If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal.

Fed. R. Crim. P. 29(c).

A judgment of acquittal pursuant to Fed. R. Crim. P. 29 has one ground—the factual and legal insufficiency of the evidence to support a conviction beyond a reasonable doubt. A motion for judgment of acquittal requires this Court to apply the well-known standard articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is: "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt," (citation omitted). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-319; *White v United States*, 279 F.2d 740 (4th Cir. 1960) cert. denied 364 US 850 (1960).

Additionally, pursuant to Fed. R. Crim. Proc. Rule 33, a trial court may grant a new trial to a defendant if required in the interest of justice. Motions for a new trial may be based either on the ground that the verdict was against the weight of the evidence or that some error occurred at trial which substantially affected the rights of the accused. *United States v. Simms*, 508 F. Supp. 1188, 1202 (W.D. La. 1980). The decision to grant or deny a new trial based on allegations that the verdict was against the weight of the evidence is within the sound discretion of the trial court. *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). Also, the court is allowed to weigh the evidence and consider the credibility of witnesses in assessing a defendant's motion for a new trial based on the weight of the evidence. *United States v. Kuznair*, 881 F.2d 466, 470-471 (7th Cir. 1989). Where a new trial motion is premised on allegations of error committed during the course of trial, the convicted defendant has the burden of showing that error was in fact committed and also that the error was prejudicial to it. *Simms*, 508 F. Supp. at 1203.

### B. AN ORDER OF JUDGMENT OF ACQUITTAL AS TO ALL COUNTS AGAINST MS. BENNETT SHOULD BE GRANTED AS A MATTER OF LAW

As to all counts of the Superseding Indictment, the evidence at trial was factually and legally insufficient to sustain a conviction for conspiracy, securities fraud, wire fraud, bank fraud, and false statements on a loan application.

#### 1. The Evidence at Trial was factually and Legally Insufficient to Sustain a Conviction for Conspiracy to Commit Securities Fraud and Wire Fraud (Counts I and VI).

The evidence presented by the government did not prove beyond a reasonable doubt the elements of the charge of conspiracy to commit securities and wire fraud in violation of 18 U.S.C. 1349.

18 U.S.C. § 1349 provides:

> "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

Where a scheme and artifice to defraud is shared by two or more, it becomes a conspiracy to defraud.

The essential elements of conspiracy to commit securities fraud or wire fraud in violation of 18 U.S.C. § 1349, are (1) an agreement between two or more persons; (2) to commit securities fraud or wire fraud; and (3) an overt act committed by one of the conspirators in furtherance of the conspiracy. *United States v. Hedgepeth*, 418 F.3d 411, 420 (4th Cir. 2005); *United States v. Dozie*, 27 F.3d 95, 97 (4th Cir. 1994); *see also United States v. Brumley*, 79 F.3d 1430, 1442 (5th Cir. 1996) (citing *United States v. Hatch*, 926 F.2d 387, 393 (5th Cir.), *cert.* denied, 500 U.S. 943 (1991)); *United States v. Massey*, 827 F.2d 995, 1001 (5th Cir. 1987); *United States v. Gordon*, 780 F.2d 1165, 1170 (5th Cir. 1986)). "Conspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense." *Massey*, 827 F.2d at 1001 (quoting *Ingram v. United States*, 360 U.S. 672, 678 (1959)).

Ms. Bennett submits that there was no evidence of her involvement in the conspiracy charged nor was there any evidence of purposeful behavior from which a rational juror could find Ms. Bennett's involvement in the conspiracy. No rational juror could have found guilt beyond a reasonable doubt that Ms. Bennett knowingly and willfully joined and/or formed an agreement with Mr. Mascho to commit the frauds identified in the Superseding Indictment. The government did not present any direct evidence that could lead a reasonable jury to find proof beyond a reasonable doubt. It merely identified e-mails from or to Ms. Bennett and Mr. Mascho which were kept in the regular course of DJBennett's business and concluded that they formed

an agreement to commit fraud. This sole direct evidence is grossly insufficient. This Court should enter judgment of acquittal as to Counts I and VI.

### 2. The Evidence at Trial was factually and Legally Insufficient to Sustain a Conviction for Securities Fraud (Counts II thru V).

Section 10(b) of the Securities Exchange Act forbids (1) the "use or employ[ment] ... [of] any ... manipulative or deceptive device," (2) "in connection with the purchase or sale of any security," (3) "in contravention of" Securities and Exchange Commission ("SEC") "rules and regulations." 15 U.S.C. § 78j(b); see also *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341 (2005). "The purpose of § 10(b) and Rule 10b-5 is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting...." *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir. 1984); see also *United States v. Russo*, 74 F.3d 1383, 1390 (2d Cir. 1996) (Section 10(b) seeks "to prevent fraud, whether it is 'a garden type variety of fraud, or present[s] a unique form of deception.'").

Congress's primary objective in passing the Securities Exchange Act was "to insure honest securities markets and thereby promote investor confidence." *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (quoting *United States v. O'Hagan*, 521 U.S. 642, 658 (1997)). As the Senate Report accompanying the Act explained:

> The purpose of this bill is to protect the investing public and honest business.... The aim is to prevent further exploitation of the public by the sale of unsound, fraudulent, and worthless securities through misrepresentation; to place adequate and true information before the investor; to protect honest enterprise, seeking capital by honest presentation, against the competition afforded by dishonest securities offered to the public through crooked promotion; to restore the confidence of the prospective investor in his ability to select sound securities; to bring into productive channels of industry and development capital which has grown timid to the point of hoarding; and to aid in providing employment and restoring buying and consuming power.

S. Rep. No. 47, 73d Cong., 1st Sess., at 1 (1933). Thus, the very core of the federal securities laws in question is the premise that there must be some form of deception. If consumers are getting "exactly what they expect[]," then the conduct is neither deceptive nor fraudulent—and therefore not within the ambit of § 10(b) and Rule 10b-5. *Chemical Bank*, 726 F.2d at 943; see also *Chiarella v. United States*, 445 U.S. 222, 234-35 (1980) ("Section 10(b) is aptly described as a catchall provision, but what it catches must be fraud.").

The government failed to prove deception in violation of the federal securities laws because the government did not prove that the noteholders were deceived by Ms. Bennett's actions. The testimony adduced at trial demonstrates that the noteholders knew that they were providing promissory notes to DJBennett at a rate of return of 15%. The expectation was that they would loan money to the company and be paid back as long as DJBennett and Ms. Bennett had the funds to pay them back. Any statements concerning the financial health of DJBennett were therefore irrelevant to the debt transaction in the case. In addition, each noteholder was aware that they were never offered equity in the company. The Court should grant judgment of acquittal on Counts II thru V of the Superseding Indictment.

**3.     The Evidence at Trial was factually and Legally Insufficient to Sustain a Conviction for Wire Fraud (VII thru XV).**

The government presented evidence insufficient to support Ms. Bennett's convictions on the wire fraud counts. To "obtain a conviction under 18 U.S.C. Sec. 1341, the prosecution must prove two essential elements—(1) the existence of a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *United States v. Murr*, 681 F.2d 246, 248 (4th Cir.) (citing *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362 (1954)), *cert.* denied, 459 U.S. 973 (1982). *See also United States v. Brewer*, 528 F.2d 492, 494-95 (4th Cir. 1975);

*United States v. Mandel*, 591 F.2d 1347, 1360-62 (4th Cir.), on rehearing, 602 F.2d 653 (*en banc*), reh'g denied, 609 F.2d 1076 (1979), *cert.* denied, 445 U.S. 961 (1980).

No evidence existed much less was presented to the jury that demonstrated that Ms. Bennett manifested the specific intent to commit wire fraud. Apart from the fact that the actual consequence of Ms. Bennett's conduct was the loss of money and/or property, there was no evidence of a specific intent on Ms. Bennett's part to deprive the lenders of "money or property."

The Court should enter judgment of acquittal on Counts VII thru XV.

**4.  The Evidence at Trial was factually and Legally Insufficient to Sustain a Conviction for Bank Fraud (Count XVI).**

The evidence presented by the government did not prove beyond a reasonable doubt the elements of the charge of bank fraud. To be convicted of bank fraud, in violation of 18 U.S.C. § 1344, the government must prove, beyond a reasonable doubt:

> (1) the Defendant carried out or attempted to carry out a scheme to defraud a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact;
>
> (2) the false of fraudulent pretenses, representations, or promises were material;
>
> (3) the Defendant intended to defraud the financial institution; and
>
> (4) the financial institution was federally insured.

At trial, the government did not present any testimony or direct credible evidence that Ms. Bennett intended to defraud a financial institution. To prove that a bank was an intended victim, the government must show that "a financial institution [was] exposed to an actual or potential risk of loss" through the scheme to defraud. *United States v. Brandon*, 298 F.3d 307, 311 (4th Cir. 2002) (quoting *United States v. Colton*, 231 F.3d 890, 908 (4th Cir. 2000); see also, United States v. Young, 952 F.2d 1252, 1257 (10th Cir. 1991) (reasoning that a financial institution is exposed to a risk of loss when the defendant's criminal conduct exposes the

institution to civil litigation). The government failed to show beyond a reasonable doubt that Ms. Bennett intended to defraud Eagle Bancorp, Inc. ("EagleBank") when she applied and obtained a loan for DJBennett in the amount of $750,000.00 because EagleBank was never exposed to an actual or potential risk of loss. Rather the evidence at trial showed that Ms. Bennett fully repaid EagleBank. This Court should therefore enter judgment of acquittal as to Count XVI.

**5. The Evidence at Trial was factually and Legally Insufficient to Sustain a Conviction for False Statements on a Loan Application (Count XVII).**

Count XVII, charging Ms. Bennett with False Statements on a Loan Application, must be dismissed.

No rational juror could have found guilty beyond a reasonable doubt that Ms. Bennett made false statements on a loan application as alleged in Count XVII.

18 U.S.C. § 1014 requires the government to prove beyond a reasonable doubt that the defendant, unlawfully, willfully and knowingly made a false statement or report for the purpose of influencing the action of "an institution the accounts of which are insured by the Federal Deposit Insurance Corporation. In a False Statement prosecution under § 1014, the government must prove beyond a reasonable doubt, as an essential element of the offense, that the statement was false, that it was made by the defendant, and that the defendant knew the statement to be false at the time it was made. *United States v. Watts*, 72 F. Supp. 2d 106, 109 (E.D.N.Y. 1999).

A review of the testimony regarding Count XVII amply demonstrates that there is not a scintilla of direct evidence supporting the government's claim that Ms. Bennett made the false statements and/or that she knew the statements to be false at the time they were made. In fact, the government presented direct evidence showing that Mr. Mascho was responsible for the filing of the loan application and entertained direct communications with the bank at the time of

the filing. The first and only communication the government presented between Ms. Bennett and the bank was in 2016, one year after the bank granted the loan. This Court should therefore grant judgment of acquittal on Count XVII of the Superseding Indictment.

### C. IN THE ALTERNATIVE, THE COURT SHOULD ORDER A NEW TRIAL

In the alternative, the Court should vacate the judgment on all counts and grant a new trial because the interest of justice so requires. See Fed. R. Crim. P. 33(a); see also Fed. R. Crim. P. 29(d)(1) ("If the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed.").

The "court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). Courts have ordered new trials when, for example: (1) the verdict was against the weight of the evidence, see, e.g., *United States v. Robinson*, 303 F. Supp. 2d 231, 233 (N.D.N.Y. 2004); *United States v. Ferguson*, 49 F. Supp. 2d 321, 328-29 (S.D.N.Y. 1999), aff'd, 246 F.3d 129 (2d Cir. 2001), or (2) prosecutors made improper arguments during summation, see, e.g., *United States v. Rich*, 326 F. Supp. 2d 670, 680-82 (E.D. Pa. 2004); *United States v. Brodie*, 268 F. Supp. 2d 420, 425-35 (E.D. Pa. 2003); *United States v. Washington*, 263 F. Supp. 2d 413, 431-40 (D. Conn. 2003); *United States v. Schneider*, 157 F. Supp. 2d 1044, 1064-65 (N.D. Iowa 2001).

As argued above under Rule 29, there was insufficient evidence adduced at trial to support the jury's verdict. At a minimum, the verdict was against the weight of the evidence, warranting a new trial under Rule 33. See, e.g., *United States v. Pauling*, 256 F. Supp. 3d 329, 340 (S.D.N.Y. 2017) ("Unlike Rule 29, however, under which the Court viewed the evidence in the light most favorable to the prosecution, Rule 33 permits the Court to weigh the evidence

objectively. Having done so, the Court harbors significant doubt that the Government proved [an element of the offense].").

This case, like *Pauling*, presents significant doubt as to the actual guilt of Ms. Bennett. Accordingly, a new trial should be granted.

## CONCLUSION

The evidence at trial was factually and legally insufficient to establish all elements of the offense for each of Counts I thru XVII of the Superseding Indictment. Further, the factual and legal insufficiency of the evidence presented by the Government failed to prove beyond a reasonable doubt Ms. Bennett's guilt as to any of the Counts of the Superseding Indictment. Accordingly, Ms. Bennett respectfully requests this Honorable Court enter an Order setting aside the jury's verdict and entering a judgment of acquittal as to all Counts or, in the alternative, enter an Order granting a new trial.

Date: October 31, 2018

Respectfully submitted,

/s/ Dennis E. Boyle

Dennis E. Boyle (MD Bar No. 07216)
Blerina Jasari (NY Bar No. 5433867)
Adrian F. Snead (NY Bar No. 5068069)
Whiteford, Taylor & Preston LLP
1800 M St., NW, Suite 450N
Washington, DC 20036
dboyle@wtplaw.com
bjasari@wtplaw.com
asnead@wtplaw.com
Telephone: (202) 659-6800
Facsimile: (202) 331-0573

*Counsel for Defendant*